ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS (168593)
DANIELLE S. MYERS (259916)
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
darrenr@rgrdlaw.com
dmyers@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

[Additional counsel appear on signature page.]

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLENE ALONZO, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>  vs.<br><br>DEXCOM INC., et al.,<br><br>                Defendants. | Case No. 3:24-cv-01485-RSH-VET<br><br><u>CLASS ACTION</u><br><br>NATIONAL ELEVATOR INDUSTRY PENSION FUND'S OPPOSITION TO COMPETING LEAD PLAINTIFF MOTIONS<br><br>DATE:     November 25, 2024<br>JUDGE:   Hon. Robert S. Huie<br>CTRM:    3B, 3rd Floor<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

4854-3990-5014.v1

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................ 1

II.   ARGUMENT ..................................................................................................... 1

  A.   The DexCom Investor Group's Losses Should Not Be Aggregated ...................................................................................... 2

  B.   The DexCom Investor Group Has Not Demonstrated Its Adequacy ......................................................................................... 5

  C.   Unlike the Other Movants and the Vast Majority of the Putative Class, the DexCom Investor Group's Losses Arose Exclusively from Non-Open Market Option Contracts ............................................. 7

  D.   The Pension Fund Should Be Appointed Lead Plaintiff ................... 13

III.  CONCLUSION ................................................................................................. 14

3:24-cv-01485-RSH-VET

4854-3990-5014.v1

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Andrada v. Atherogenics, Inc.*,
2005 WL 912359 (S.D.N.Y. Apr. 19, 2005)......................................................12

*Applestein v. Medivation Inc.*,
2010 WL 3749406 (N.D. Cal. Sept. 20, 2010).............................................10, 12

*Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*,
2012 WL 2872787 (D. Idaho July 12, 2012) .....................................................10

*Burns v. UP Fintech Holding Ltd.*,
2024 WL 387261 (C.D. Cal. Jan. 30, 2024).....................................................2, 5

*Cook v. Allergn PLC*,
2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019) .......................................10, 11, 12

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020).......................................10, 11, 12

*Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*,
2021 WL 913934 (D. Utah Mar. 10, 2021)...............................................9, 10, 12

*Haideri v. Jumei Int'l Holding Ltd.*,
2020 WL 5291872 (N.D. Cal. Sept. 4, 2020)....................................................... 6

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) .................................................................... 1, 2, 3

*In re Cloudera, Inc. Sec. Litig.*,
2019 WL 6842021 (N.D. Cal. Dec. 16, 2019) ................................................... 6

*In re Critical Path, Inc. Sec. Litig.*,
156 F. Supp. 2d 1102 (N.D. Cal. 2001) .............................................................. 9

*In re Elan Corp. Sec. Litig.*,
2009 WL 1321167 (S.D.N.Y. May 11, 2009)................................................... 10

*In re Mersho*,
6 F.4th 891 (9th Cir. 2021)............................................................... 1, 2, 3, 5

4854-3990-5014.v1

**Page**

*In re Origin Materials, Inc.*,
  2023 WL 8698363 (E.D. Cal. Dec. 15, 2023)......................................................6

*In re Peregrine Sys., Inc. Sec. Litig.*,
  2002 WL 32769239 (S.D. Cal. Oct. 11, 2002).....................................................9

*In re Priceline.com Inc.*,
  236 F.R.D. 89 (D. Conn. 2006) ..........................................................................7

*In re Stitch Fix, Inc. Sec. Litig.*,
  393 F. Supp. 3d 833 (N.D. Cal. 2019) ..........................................................4, 12

*Jaramillo v. Dish Network Corp.*,
  2023 WL 5312062 (D. Colo. Aug. 16, 2023) ............................................5, 9, 11

*Koffsmon v. Green Dot Corp.*,
  2021 WL 3473975 (C.D. Cal. Aug. 6, 2021).................................................3, 4, 6

*Koffsmon v. Green Dot Corp.*,
  2022 WL 170636 (C.D. Cal. Jan. 19, 2022)........................................................2

*Lako v. Loandepot, Inc.*,
  2022 WL 1314463 (C.D. Cal. May 2, 2022).........................................................5

*Micholle v. Ophthotech Corp.*,
  2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ....................................................12

*Pardi v. Tricida, Inc.*,
  2021 WL 1381271 (N.D. Cal. Apr. 2, 2021) ........................................................6

*Patel v. Reata Pharms., Inc.*,
  549 F. Supp. 3d 559 (E.D. Tex. 2021) ..........................................................11, 12

*Ragan v. AppHarvest, Inc.*,
  2021 WL 5909116 (S.D.N.Y. Dec. 13, 2021)....................................................8, 9

*Saye v. NIO Inc.*,
  2022 WL 17666398 (S.D.N.Y. Dec. 14, 2022)...................................................12

- iii -                                          3:24-cv-01485-RSH-VET

**Page**

*Teroganesian v. Sw. Airlines Co.*,
   2023 WL 4565464 (S.D. Tex. July 17, 2023) ......................................................12

*Villare v. ABIOMED, Inc.*,
   2020 WL 3497285 (S.D.N.Y. June 29, 2020).........................................................8

*Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*,
   2021 WL 533518 (S.D. Cal. Feb. 12, 2021) ..................................................4, 6

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
   §78u-4(a)(3)(B) ...................................................................................................1
   §78u-4(a)(3)(B)(i)...............................................................................................1
   §78u-4(a)(3)(B)(iii) .....................................................................................2, 13
   § 78u-4(a)(3)(B)(iii)(I) .......................................................................................2
   §78u-4(a)(3)(B)(iii)(II) .....................................................................................13

Federal Rules of Civil Procedure
   Rule 23....................................................................................................... 2, 5
   Rule 23(a) ............................................................................................................7

3:24-cv-01485-RSH-VET

4854-3990-5014.v1

## I.    INTRODUCTION

Four applicants seek appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]  Only one qualifies as such: the National Elevator Industry Pension Fund.

Indeed, while the self-styled DexCom Investor Group claims to have collectively suffered just over $3 million in losses, they are a lawyer-grouped collection of unaffiliated investors who did not purchase DexCom Inc. common stock on the open market, but rather exclusively sold private option contracts which later required them to acquire DexCom stock at above-market prices after the fraud was revealed.  So situated, they do not qualify as the presumptive lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(B).  Likewise, the Oakland County Group and Mr. Thampy both suffered smaller losses than the Pension Fund and thus cannot trigger the presumption. Accordingly, all the competing motions should be denied.

## II.    ARGUMENT

Pursuant to the PSLRA's simple process, the court determines which applicant is the "most adequate plaintiff," which is defined as "the plaintiff 'most capable of adequately representing the interests of class members.'"  *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) (quoting 15 U.S.C. §78u-4(a)(3)(B)(i)); *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002) (same).  The "district court must identify which movant has the largest alleged losses and then determine whether that movant has made a prima facie showing of adequacy and typicality . . . based on only the movant's pleadings and declarations."  *Mersho*, 6 F.4th at 899,  "If the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must

---

[1]    The movants are: (1) Thilo Sautter, CUROS Vermögensverwaltungs GmbH, Gang Bao, Sunway Trading USA Inc., and the C-Liu Irrevocable Trust (the "DexCom Investor Group"); (2) the National Elevator Industry Pension Fund; (3) Oakland County Voluntary Employees' Beneficiary Association and Oakland County Employees' Retirement System; and (4) K. George Thampy.  *See* Doc. Nos. 10, 11, 9, 8, respectively.  Unless otherwise noted, all emphasis is added and citations are omitted.

- 1 -                          3:24-cv-01485-RSH-VET

repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Cavanaugh*, 306 F.3d at 730.

Once the Court has identified the presumptive lead plaintiff, the process "'turns adversarial'" and "[t]he presumption may be rebutted 'only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class; or [ ] is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Mersho*, 6 F.4th at 899.  To rebut the presumption, there must be "proof that the presumptive lead plaintiff is not adequate." *Id*.  "If the presumption is not rebutted, the presumptively most adequate plaintiff must be selected as lead plaintiff." *Id*.

### A. The DexCom Investor Group's Losses Should Not Be Aggregated

"The PSLRA contemplates the possibility that a 'group of persons' might be the most adequate plaintiff to represent the class." *Burns v. UP Fintech Holding Ltd.*, 2024 WL 387261, at *3 (C.D. Cal. Jan. 30, 2024) (citing 15 U.S.C. §78u-4(a)(3)(B)(iii)).  However, "'the Ninth Circuit has left open the question of whether a group can satisfy the largest financial interest' requirement by aggregating losses." *Id.*; *Cavanaugh*, 306 F.3d at 731 n.8 ("While a 'group of persons' can collectively serve as a lead plaintiff, 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), we are not asked to determine whether a group can satisfy the 'largest financial interest' requirement by aggregating losses.").  That said, a "majority of courts in this circuit have 'refused to appoint as lead plaintiff groups of unrelated individuals, brought together for the sole purpose of aggregating their claims in an effort to become the presumptive lead plaintiff.'" *Koffsmon v. Green Dot Corp.*, 2022 WL 170636, at *1 (C.D. Cal. Jan. 19, 2022) (collecting cases).  In fact, "[m]any district courts have considered the lack of a pre-litigation relationship as part of their adequacy analysis at step two because it may indicate that members may not work together well to vigorously prosecute the

3:24-cv-01485-RSH-VET

4854-3990-5014.v1

litigation or they might not be able to control counsel." *Mersho*, 6 F. 4th at 901. And although "some courts have appointed a group of investors lead plaintiff even in the absence of a pre-existing relationship between the investors[,] . . . [i]n many such cases, . . . courts have based their approval upon the fact that one individual member of the proposed group, even standing alone, had a greater financial interest than any other proposed lead plaintiff." *Koffsmon v. Green Dot Corp.*, 2021 WL 3473975, at *3 (C.D. Cal. Aug. 6, 2021).

Here, none of the DexCom Investor Group members individually has a greater financial interest than the Pension Fund:

| Entity | Loss |
| --- | --- |
| **National Elevator Industry Pension Fund** | **$2,612,043** |
| *CUROS Vermögensverwaltungs GmbH* | *$1,336,633* |
| *Gang Bao* | *$1,036,575* |
| *Thilo Sautter* | *$302,351* |
| *C-Liu Irrevocable Trust* | *$284,928* |
| K. George Thampy | $221,400 |
| Oakland County Voluntary Employees' Beneficiary Association | $219,515 |
| Oakland County Employees' Retirement System | $97,066 |
| *Sunway Trading USA Inc.* | *$89,951* |

DexCom Investor Group

*Compare* Doc. No. 11-5 *with* Doc. No. 10-7; *see also* Doc. Nos. 9-4, 8-6; *cf. Cavanaugh*, 306 F.3d at 728 (noting that "[e]ach member of the Cavanaugh group claimed to have lost more money on Copper Mountain stock than the other two candidates combined").

4854-3990-5014.v1

Even when the financial interests of the previously affiliated entities within the DexCom Investor Group are viewed collectively, none possess a financial interest larger than the Pension Fund:

| Entity | Loss |
|---|---|
| National Elevator Industry Pension Fund | $2,612,043 |
| CUROS Vermögensverwaltungs GmbH | $1,336,633 |
| Thilo Sautter | $302,351 |
| Total: | $1,638,984 |
| Gang Bao | $1,036,575 |
| C-Liu Irrevocable Trust | $284,928 |
| Sunway Trading USA Inc. | $89,951 |
| Total: | $1,411,454 |

*Compare* Doc. No. 11-5 *with* Doc. No. 10-7.  In situations like this, courts "decline[] to aggregate the claims of each group member" because "[a]lthough aggregation of unrelated investors is not per se prohibited, the Court is moved by the policy underpinning the PSLRA to prevent attorney-driven securities litigation." *Wasa Med. Holdings v. Sorrento Therapeutics, Inc.*, 2021 WL 533518, at *5 (S.D. Cal. Feb. 12, 2021); *Koffsmon*, 2021 WL 3473975, at *3 (declining to allow several smaller investors "to aggregate their interests to exceed those of, and against the opposition of, a single, large, institutional investor with financial interests greater than those of any other single investor" particularly where the court was not "aware of, any instance in which a court in this circuit has aggregated the financial interests of a group of smaller investors under similar circumstances"); *In re Stitch Fix, Inc. Sec. Litig.*, 393 F. Supp. 3d 833, 835-36 (N.D. Cal. 2019) (same).  Consequently, the Court should decline to aggregate the losses suffered by the previously unaffiliated members of the DexCom Investor Group where that aggregation would displace the single institution with the largest loss (the Pension Fund).

"Ultimately, the Court need not decide the scope of [the DexCom Investor

- 4 -                                    3:24-cv-01485-RSH-VET

4854-3990-5014.v1

Group's] losses" because even if they "could establish that they had the greatest losses, their status as put option sellers (and the fact that they obtained [DexCom] common stock exclusively because the option purchasers exercised these options) raises typicality and adequacy concerns and subjects them to unique defenses that preclude their appointment." *Jaramillo v. Dish Network Corp.*, 2023 WL 5312062, at *3 (D. Colo. Aug. 16, 2023).

**B.     The DexCom Investor Group Has Not Demonstrated Its Adequacy**

Even if the Court permitted the disparate members of the DexCom Investor Group to "aggregate their claims despite having no prelitigation relationship so that they collectively have the greatest financial interest in this litigation," the Court should find the DexCom Investor Group "cannot be appointed lead plaintiffs because they fail to satisfy Rule 23's adequacy requirement under step two of the analysis for appointment of lead plaintiff(s)." *Burns*, 2024 WL 387261, at *4.  Specifically, the DexCom Investor Group "fail[s] to make a prima facie showing that Rule 23's adequacy requirement is satisfied because their joint declaration regarding their interest in prosecuting this action fails to establish a prelitigation relationship and includes only boilerplate statements that they would work together as co-lead plaintiffs." *Compare id. with* Doc. No. 10-3.

When assessing whether a joint declaration satisfies a group's adequacy showing, courts consider whether the statements "indicate that members may not work together well to vigorously prosecute the litigation or they might not be able to control counsel." *Mersho*, 6 F. 4th at 901; *Lako v. Loandepot, Inc.*, 2022 WL 1314463, at *6 (C.D. Cal. May 2, 2022) (finding group failed to make a prima facie showing that they satisfied Rule 23's adequacy requirements, reasoning the filing of a joint declaration by the group was not sufficient to demonstrate adequacy and the "sparse information regarding the individual members of the group," together with "boilerplate assurances that its members would work together to oversee the litigation," and failure to

4854-3990-5014.v1

- 5 -                          3:24-cv-01485-RSH-VET

"provide any information regarding whether the members had a pre-litigation relationship" "cast doubt" on the group's "ability to fairly and adequately protect the interests of the class and vigorously prosecute the action").

Here, the DexCom Investor Group's lack of cohesion (and thus adequacy) is evident in three ways. First, the DexCom Investor Group's own Joint Declaration candidly admits that the group members "learned that other investors were in consultation about the case" from their lawyers. Doc. No. 10-3 at ¶8; *Pardi v. Tricida, Inc.*, 2021 WL 1381271, at *2 (N.D. Cal. Apr. 2, 2021) (rejecting group on identical grounds); *Wasa Med. Holdings*, 2021 WL 533518, at *5 (same).[2] Second, in the event of a dispute, they "agree that the group member with the larger financial interest" will be the sole decider, entirely undermining the stated rationale for the group in the first place (*i.e.*, "the importance of joint decision-making" and "the sharing of experience and resources, as well as the diversity of representation and viewpoints"). Doc. No. 10-3 at ¶¶5, 11. Third, "the Joint Declaration provides no explanation why the [DexCom Investor Group] has chosen to retain two separate law firms" as proposed lead counsel. *Koffsmon*, 2021 WL 3473975, at *3; *In re Origin Materials, Inc.*, 2023 WL 8698363, at *2 (E.D. Cal. Dec. 15, 2023) (finding group "failed to establish that its members will operate cohesively in prosecuting the case" where there was "nothing in the record" explaining how the members "became acquainted or what their relationship is" and the members "do not even share the same counsel, instead proposing that two law firms serve as lead counsel").

Accordingly, even if the Court was inclined to permit the unaffiliated members of the DexCom Investor Group to aggregate their losses to claim they possess the greatest financial interest in the litigation collectively, the DexCom Investor Group

---

[2]  *See also Haideri v. Jumei Int'l Holding Ltd.*, 2020 WL 5291872, at *4 (N.D. Cal. Sept. 4, 2020) ("There is no indication that they, on their own initiative, assembled themselves into a group prior to interaction with counsel."); *In re Cloudera, Inc. Sec. Litig.*, 2019 WL 6842021, at *6 (N.D. Cal. Dec. 16, 2019) (collecting cases rejecting plaintiffs on similar grounds).

4854-3990-5014.v1

itself fails to satisfy Rule 23(a)'s adequacy requirement as required to be deemed the presumptive lead plaintiff.

### C. Unlike the Other Movants and the Vast Majority of the Putative Class, the DexCom Investor Group's Losses Arose Exclusively from Non-Open Market Option Contracts

Though the DexCom Investor Group members facially claim to have collectively suffered a larger loss than the Pension Fund, the Group cannot be appointed as lead plaintiff because the constituent members' losses are based *entirely* on option contracts or shares they were obligated to purchase pursuant thereto at predetermined prices well above the market price.[3]  In fact, *all* of the DexCom Investor Group's common stock was acquired pursuant to put option contracts *after* the price of DexCom's stock price declined dramatically on July 25, 2024:



---

[3]  "A put option 'gives the holder [(buyer)] the right to sell an asset at a certain price [(the strike price)] within a specific period of time.'" *In re Priceline.com Inc.*, 236 F.R.D. 89, 98 (D. Conn. 2006).  "Upon the sale of a put option, the seller, or writer, becomes obligated to purchase the asset at the strike price if the holder exercises the option." *Id.*  Each contract entitles the put buyer to "put" (or assign) 100 shares of stock to the put seller at the predetermined strike price.  *See* https://www.investopedia.com/terms/p/putoption.asp (accessed Nov. 4, 2024).

4854-3990-5014.v1

Confirming just how atypical these transactions were, but for the October 9, 2024 filing of the *Carnes* complaint – by one of the Group's proposed lead counsel on behalf of a plaintiff who purchased 7 shares of DexCom stock (not options) and suffered a loss barely in excess of this Court's filing fee – no member of the DexCom Investor Group would have been a class members or eligible to file a lead plaintiff motion.  As filed on August 21, 2024 by one of the DexCom Investor Group's proposed lead counsel, the complaint defined the class as investors "who purchased or acquired DexCom securities between January 8, 2024 to July 25, 2024." *Alonzo*, Doc. No. 1 at ¶1.  It was only on October 9, 2024 – just 7 court days before lead plaintiff motions were due – that the same counsel who filed the initial complaint, filed the additional *Carnes* complaint which purported to redefine the class by appending to the class of common stock purchasers those who "sold DexCom put option contracts during the Class Period." *Carnes*, Doc. No. 1 at ¶1.  Tellingly, the later-filed *Carnes* complaint is not even internally consistent in how it defined the class because it later states that the case is brought "on behalf of a Class, consisting of all those who purchased or otherwise acquired DexCom's common stock during the Class Period" without reference to the definition in ¶1 which purports to include put option contract sellers.  *Compare id.* ¶1 *with* ¶49.

Assuming arguendo that the class includes put option sellers, "numerous courts have cautioned that 'blindly accepting the longest class period without any inquiry' may encourage attempts by potential lead plaintiffs to manipulate the class period so that they have the largest financial interest" – exactly what appears to have transpired here. *Villare v. ABIOMED, Inc.*, 2020 WL 3497285, at *4 (S.D.N.Y. June 29, 2020) (citing cases); *Ragan v. AppHarvest, Inc.*, 2021 WL 5909116, at *7 n.4 (S.D.N.Y. Dec. 13, 2021) (finding that the "specter of gamesmanship on these facts causes the Court to question whether [Plymouth County] will 'fairly and adequately protect the interests of the class'" where court determined the "only reason" it made certain "allegations . . . appears to be to qualify itself to act as lead plaintiff").  Notably, the

4854-3990-5014.v1

*Carnes* complaint contains no allegations about options (including the price impact of defendants' alleged misstatements thereon) or the efficiency of the Chicago Board of Options Exchange (or CBOE).  Rather, the complaint simply alleges that "the market for DexCom's **common stock** was an efficient market."  *Carnes*, Doc. No. 1 at ¶43.  In fact, the *Carnes* complaint uses the phrase "put option contracts" just once (in ¶1); it uses the phrases "common stock" or stock no less than 29 times.  *See id.*, ¶4, 11, 36, 40, 41, 43, 44, 49, 50, 53(e), 57, 61, 62, 64, 68.  To be clear, if the Court were to determine that sellers of put options do not fall within the contours of the proposed class as defined by ¶49 of the *Carnes* complaint (or as defined in the first two complaints), the DexCom Investor Group would have no financial interest in the relief sought by this case.  *See Ragan*, 2021 WL 5909116, at *8 (finding that movant "has no relevant losses" because the expanded complaint "lacks any allegation that would support extending the class period to the date when Plymouth County made its purchases"); *Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*, 2021 WL 913934, at *3-*4 (D. Utah Mar. 10, 2021) (finding that movant "failed to support its proposed class period with *any* sufficient allegations of fact" and thus the court "may not consider the longer proposed period . . . in determining which proposed lead plaintiff has the largest financial interest in the litigation") (emphasis in original).

In any event, the atypical nature of the DexCom Investor Group's transactions is itself disqualifying.  *See In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1110 (N.D. Cal. 2001) ("Appointing as lead plaintiff one who acquired its shares in a private transaction invites lengthy litigation both at the class certification stage and thereafter of whether that plaintiff is subject to unique defenses."); *In re Peregrine Sys., Inc. Sec. Litig.*, 2002 WL 32769239, at *5 (S.D. Cal. Oct. 11, 2002) (rejecting as lead plaintiff movant that acquired its shares in a non-typical manner that would "subject them to unique defenses because they did not acquire their shares solely in reliance on the market price").  Indeed, "[p]arties who exclusively sell put options, or who only acquire common stock involuntarily when put options they have written are

3:24-cv-01485-RSH-VET

4854-3990-5014.v1

exercised – are simply differently situated from parties who engage in – and whose losses predominantly derive from – ordinary common-stock transactions." *Jaramillo*, 2023 WL 5312062, at \*5; *Gelt Trading*, 2021 WL 913934, at \*5 ("As the only movant who purchased options rather than stock, Tadi is subject to unique defenses regarding damages" and "may be subject to unique defenses regarding loss causation.").

In *Cook v. Allergn PLC*, 2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019), for instance, the court held that a movant was atypical of the class where approximately 60% of the movant's losses came from options trading. *Id.* at \*2. The *Cook* court recognized the common-sense notion that appointing the options investor as lead plaintiff "very likely 'would introduce factual issues irrelevant to stockholder class members, like strike price, duration, maturity, volatility, and interest rates, and . . . could subject the class to unique defenses, causing unnecessary conflict.'" *Id.* (quoting *In re Elan Corp. Sec. Litig.*, 2009 WL 1321167, at \*2 (S.D.N.Y. May 11, 2009)); *Bricklayers of W. Pa. Pension Plan v. Hecla Mining Co.*, 2012 WL 2872787, at \*4 (D. Idaho July 12, 2012) (same). Here, by contrast, 100% of the DexCom Investor Group's losses derive from options. *See* Doc. Nos. 10-6, 10-7.

Similarly, in *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020), the court reasoned that the options investor was potentially not "motivated by the same market incentives as class members who traded shares on the open market," and thus, his appointment as lead plaintiff raised the concern that issues unique to the options investor would "'threaten to become the focus of the litigation'" at the class-certification stage and otherwise. *Id.* at \*4; *accord Applestein v. Medivation Inc.*, 2010 WL 3749406, at \*4 (N.D. Cal. Sept. 20, 2010) (holding that the lead plaintiff movant's options trading had the potential to distract from the lawsuit's central issue: whether the defendant committed fraud on the market).

Here, while the DexCom Investor Group collectively claims to have suffered the greatest loss due to their option contracts and post-Class Period acquisition of

3:24-cv-01485-RSH-VET

stock at above-market prices, like in *Cook* and *Di Scala*, "the fact that [the DexCom Investor Group's] losses during the Class Period were based ***solely*** on option contracts renders [the DexCom Investor Group] atypical of the putative class." *Patel v. Reata Pharms., Inc.*, 549 F. Supp. 3d 559, 567 (E.D. Tex. 2021). "[E]ven if the Court were to conclude that [the DexCom Investor Group] satisfies typicality, thus making [it] the presumptive lead plaintiff, that presumption would be rebutted because [the DexCom Investor Group's] trading practices subject [it] to 'unique defenses' concerning damages." *Id.* at 568. This is particularly so here where the DexCom Investor Group's financial interest is entirely predicated on option contracts and the forced acquisition of DexCom stock after the Class Period at above-market prices.

As the *Jaramillo* court recognized, "[w]hile put option sellers and common stock purchasers may rely on the same general assumption that the underlying stock price will rise (or at least not decrease), . . . there are also significant differences that draw into question the adequacy of put sellers as class representatives." 2023 WL 5312062, at *5. "For example, put sellers operate on different time horizons than do common stock purchasers. Puts are time-limited; a put seller bets that a company's stock value will not decline to a specified strike price within the life of an option. Common stock purchasers do not operate under the same limitations." *Id.* As such, the *Jaramillo* court agreed "with the *Di Scala* and *Cook* courts that appointing movants whose losses overwhelmingly relate to options trades (and whose option-trading strategies may have been motivated by different market incentives than common stock traders) would introduce factual issues irrelevant to the class as a whole." *Id.* Because the losses exclusively related to their put sales, the court declined to appoint either movant that traded in put options as lead plaintiff.

To be clear, the issue is not whether put sellers are properly part of the class; rather, the issue is whether movants whose losses are exclusively tied to options contracts and who acquire 100% of the stock they claim losses on after the Class Period at above-market prices via option assignments will adequately and typically

3:24-cv-01485-RSH-VET

represent the class without being subject to unique defenses. District courts nationwide agree that movants who transact primarily in options raise issues of adequacy and typicality and will be subject to unique defenses that preclude their appointment as lead plaintiff.[4] Similarly, here, the DexCom Investor Group's contractual obligations compelled them to purchase DexCom stock at prices well above the market price.[5] That fact, combined with the fact that the DexCom Investor Group made no open-market purchases of DexCom common stock independent of the

[4] *See Teroganesian v. Sw. Airlines Co.*, 2023 WL 4565464, at *5 (S.D. Tex. July 17, 2023) (refusing to appoint movant with largest financial interest who suffered all losses in connection with put options); *Saye v. NIO Inc.*, 2022 WL 17666398, at *8 (S.D.N.Y. Dec. 14, 2022) (refusing to appoint movant that "traded exclusively in NIO call options"); *Patel*, 549 F. Supp. 3d at 567 (refusing to appoint movant with largest financial interest where majority of movant's losses related to options transactions and stock purchases related to those options transactions); *Di Scala*, 2020 WL 7698321 (same); *Stitch Fix*, 393 F. Supp. 3d at 836 (declining to appoint movant whose losses were entirely due to selling put options during the class period); *Cook*, 2019 WL 1510894, at *2 (finding movant atypical where more than 60% of losses resulted from options trading); *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (declining to appoint movants who traded "almost exclusively in put and call options," finding that their trading made them "atypical plaintiffs"); *Applestein*, 2010 WL 3749406, at *4 (finding that movant "should not be appointed" where he traded only in "contracts for securities, not the securities themselves"); *Andrada v. Atherogenics, Inc.*, 2005 WL 912359, at *5 (S.D.N.Y. Apr. 19, 2005) (finding options trader atypical and inadequate for lead plaintiff purposes, and noting absence of cases "in which an option holder was deemed to be an appropriate lead plaintiff for an entire securities fraud class action").

[5] Group member Gang Bao's strategy was uniquely peculiar. As his Certification reveals, Mr. Bao (and Sunway Trading and the C-Liu Irrevocable Trust) sold out-of-the-money puts *and* calls for pennies on the dollar on the very last day of the Class Period which exposed them to millions of dollars in possible losses. Indeed, the vast majority of options Gang Bao, Sunway Trading, and C-Liu Irrevocable Trust sold were speculative bets that DexCom shares would not increase or decrease for just 24 hours before the options expired on July 26th. *See* Doc. No. 10-6. This is an advanced options strategy called a short strangle, indicating he was price-neutral and was actually selling volatility. *See id.* By selling both puts and calls on July 25, 2024 that expired the very next day, he was betting that DexCom stock would remain range-bound and he would profit as long as the stock did not move significantly down *or* up. Importantly, by employing this strategy, Mr. Bao would have lost just as much money if the stock moved as dramatically up as it did down. *See Gelt Trading*, 2021 WL 913934, at *5 ("Tadi, as a short-term options trader, could be required to show that, but for the corrective disclosures, the stock price would have appreciated by more than 7% by the following day in order to attain the strike price set by the options contracts. If the stock would not have reached the strike price, Tadi's result would have been the same: the options contracts would be worthless and expire on May 15. This would require specialized expert testimony that would not be relevant to the other class members.").

3:24-cv-01485-RSH-VET

put option contracts, introduces factual issues that diverge from those of the rest of the putative class.

Because the DexCom Investor Group cannot typically and adequately represent the class, it cannot be appointed lead plaintiff.

### D.    The Pension Fund Should Be Appointed Lead Plaintiff

With the DexCom Investor Group removed from contention, the Pension Fund has the largest financial interest and is otherwise typical and adequate, entitling the Pension Fund to the most adequate plaintiff presumption. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).

The Pension Fund is a multi-employer union pension plan managing more than $4 billion in assets for the benefit of more than 51,000 participants. Information about the Pension Fund is readily accessible to the public via its website. *See* https://www.neibenefits.org/. The Pension Fund has familiarity in serving as a fiduciary on behalf of thousands of people – a role it seeks to take on in this case by serving as lead plaintiff on behalf of harmed DexCom securities investors. Thus, by satisfying each PSLRA requirement, the Pension Fund is entitled to the presumption that it is the most adequate plaintiff.

To rebut the presumption in favor of the Pension Fund's appointment as lead plaintiff, the PSLRA requires the other movants to submit "proof" that the Pension Fund "will not fairly and adequately protect the interests of the class," or "is subject to unique defenses." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). None exists. The other motions should be denied because none of the competing movants can rebut the presumption that the Pension Fund is the most adequate plaintiff.

- 13 -                         3:24-cv-01485-RSH-VET

4854-3990-5014.v1

## III.   CONCLUSION

Only the Pension Fund satisfies all of the PSLRA's requirements for appointment as lead plaintiff.  As such, its motion should be granted and the competing motions should be denied.

DATED:  November 8, 2024

Respectfully submitted,

ROBBINS GELLER RUDMAN
  & DOWD LLP
DARREN J. ROBBINS
DANIELLE S. MYERS

s/ Danielle S. Myers
DANIELLE S. MYERS

655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
darrenr@rgrdlaw.com
dmyers@rgrdlaw.com

Proposed Lead Counsel for Proposed Lead Plaintiff

O'DONOGHUE & O'DONOGHUE LLP
JOHN M. McINTIRE
5301 Wisconsin Avenue, N.W., Suite 800
Washington, DC  20015
Telephone:  202/362-0041
imcintire@odonoghuelaw.com

Additional Counsel

4854-3990-5014.v1