**BLEICHMAR FONTI & AULD LLP**

Lesley E. Weaver (SBN 191305)
lweaver@bfalaw.com
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

**LEVI & KORSINSKY, LLP**

Adam M. Apton (SBN 316506)
aapton@zlk.com
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 985-7290

*Counsel for Proposed Lead Plaintiff DexCom Investor Group,*
*and Proposed Co-Lead Counsel for the Class*

[*Additional Counsel on Signature Page*]

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLENE ALONZO, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>DEXCOM INC., KEVIN R. SAYER, and JEREME M. SYLVAIN,<br><br>Defendants. | Case No. 3:24-cv-01485-RSH-VET<br><br><u>CLASS ACTION</u><br>**THE DEXCOM INVESTOR GROUP'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF, APPROVAL OF ITS SELECTION OF CO-LEAD COUNSEL, AND CONSOLIDATION OF THE RELATED ACTIONS**<br><br>DATE: November 25, 2024<br>TIME: Per Chambers Rules, No Oral Argument Unless Separately Ordered By The Court<br>COURTROOM: 3B<br>JUDGE: Hon. Robert S. Huie |

*[caption continues on next page]*

OAKLAND COUNTY EMPLOYEES' RETIREMENT SYSTEM and OAKLAND COUNTY VOLUNTARY EMPLOYEES' BENEFICIARY ASSOCIATION, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

DEXCOM, INC., KEVIN R. SAYER, JEREME M. SYLVAIN, and SEAN CHRISTENSEN,

Defendants.

Case No. 3:24-cv-01804-AJB-BLM

CLASS ACTION

MATTHEW CARNES, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

DEXCOM INC., KEVIN R. SAYER, and JEREME M. SYLVAIN,

Defendants.

Case No. 3:24-cv-01809-RBM-DDL

CLASS ACTION

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT ................................................................. 1

II.   ARGUMENT.......................................................................................... 3

    A.    The DexCom Investor Group Is The Presumptive Lead Plaintiff ...... 3

    B.    National Elevator Fails to Rebut The Presumption ........................... 3

        1.    The DexCom Investor Group Is A Proper Group..................... 4

        2.    The DexCom Investor Group is Typical................................... 7

    C.    National Elevator's Motion Should Be Denied ............................... 10

III.  CONCLUSION.................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adobe Sys., Inc. Sec. Litig.*,
139 F.R.D. 150 (N.D. Cal. 1991)...............................................................................8

*Andrada v. Atherogenics, Inc.*,
2005 WL 912359 (S.D.N.Y. Apr. 19, 2005) .............................................................8

*Applestein v. Medivation Inc*,
2010 WL 3749406 (N.D. Cal. Sept. 20, 2010) ..........................................................8

*In re Aqua Metals Sec. Litig.*,
2018 WL 4860188 (N.D. Cal. May 23, 2018)............................................................3

*Borteanu v. Nikola Corp.*,
562 F. Supp. 3d 174 (D. Ariz. 2021) .........................................................................6

*Brown v. Acutus Med., Inc.*,
2022 WL 2820557 (S.D. Cal. July 19, 2022) (Huie, J.)............................................7

*Camp v. Qualcomm Inc.*,
2019 WL 277360 (S.D. Cal. Jan. 22, 2019) ..............................................................6

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ......................................................................................6

*China Agritech, Inc. v. Resh*,
138 S. Ct. 1800 (2018)...............................................................................................4

*Cook v. Allergn PLC*,
2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019)...........................................................8

*Di Scala v. ProShares Ultra Bloomberg Crude Oil*,
2020 WL 7698321 (S.D.N.Y. Dec. 28, 2020) ...........................................................8

*Ferreira v. Funko, Inc.*,
2020 WL 3246328 (C.D. Cal. June 11, 2020).............................................1, 4, 5, 10

*Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*,
2021 WL 913934 (D. Utah Mar. 10, 2021) ...............................................................8

ii

*Hall v. Medicis Pharm. Corp.*,
  2009 WL 648626 (D. Ariz. Mar. 11, 2009)...............................................................3, 9

*Jaramillo v. Dish Network Corp.*,
  2023 WL 5312062 (D. Colo. Aug. 16, 2023)...................................................................8

*McIntire v. China MediaExpress Holdings, Inc.*,
  38 F. Supp. 3d 415 (S.D.N.Y. 2014) .............................................................................10

*In re Mersho*,
  6 F.4th 891 (9th Cir. 2021) ...............................................................................3, 4, 5, 10

*Micholle v. Ophthotech Corp.*,
  2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018)..................................................................8

*Oakland Cnty. Voluntary Emps. Beneficiary Ass'n v. Generac Holdings Inc.*,
  2023 WL 9511520 (E.D. Wis. May 30, 2023) .............................................................2, 9

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  199 F.R.D. 119 (S.D.N.Y. 2001) .....................................................................................8

*Pampena v. Musk*,
  2023 WL 3082341 (N.D. Cal. Apr. 24, 2023).......................................................1, 3, 4, 5

*Patel v. Reata Pharms., Inc.*,
  549 F. Supp. 3d 559 (E.D. Tex. 2021)..............................................................................8

*Perrin v. Sw. Water Co.*,
  2009 WL 10654690 (C.D. Cal. Feb. 13, 2009) .............................................................4, 5

*In re Priceline.com Inc.*,
  236 F.R.D. 89 (D. Conn. 2006) ........................................................................................9

*Reiger v. Altris Software, Inc.*,
  1998 WL 1986953 (S.D. Cal. Sept. 14, 1998).................................................................5

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
  571 F. Supp. 2d .1315 (N.D. Ga. 2007)..........................................................................10

*In re Sepracor Inc.*,
  233 F.R.D. 52 (D. Mass. 2005).........................................................................................8

*Ventrillo v. Paycom Software, Inc.*,
  2024 WL 1750658 (W.D. Okla. Apr. 23, 2024)............................................................2, 8

iii

*West Palm Beach Police Pension Fund v. DFC Glob. Corp.*,
2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) ................................................2, 5, 7

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(i) ...............................................................................7

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ......................................................................1, 3

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).......................................................................1

TABLE OF AUTHORITIES

CASE NOS. 3:24-CV-01485-RSH-VET; 3:24-CV-01804-AJB-BLM; 3:24-CV-01809-RBM-DDL

## I. PRELIMINARY STATEMENT

The DexCom Investor Group is entitled to be appointed Lead Plaintiff pursuant to the strict mandates of the PSLRA. There is no dispute that it collectively asserts the largest financial interest in this matter. And its detailed Joint Declaration provides ample evidence of the DexCom Investor Group's sophistication, cohesiveness, and ability to oversee counsel, which demonstrates that it will be an excellent steward for the putative Class.[1]

The only movant to oppose the DexCom Investor Group's motion is National Elevator, which claims a loss roughly 25% less than that of the DexCom Investor Group. However, National Elevator's opposition fails because it misstates the law, ignores the record, and offers no "proof" to rebut the presumption in favor of the DexCom Investor Group. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

First, National Elevator contends that the DexCom Investor Group should not be appointed because it is not a proper "group" under the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Not so. The DexCom Investor Group is a small and cohesive partnership consisting of two sophisticated investors and their associated entities that is precisely of the type courts in the Ninth Circuit routinely appoint as Lead Plaintiff. *See e.g., Ferreira v. Funko, Inc.*, 2020 WL 3246328, at *6 (C.D. Cal. June 11, 2020) (appointing group of three unrelated investors as "[c]ourts in the Ninth Circuit often appoint lead plaintiffs consisting of three or more individual investors"). The only "proof" in the record, the Joint Declaration, demonstrates that the DexCom Investor Group is capably overseeing counsel and the litigation, and that its collaboration will inure significant benefits to the proposed Class. *See Pampena v. Musk*, 2023 WL 3082341, at *4 (N.D. Cal. Apr. 24, 2023) (appointing group of four unrelated investors who submitted declaration showing the group "had

---

[1] Capitalized terms are defined in the DexCom Investor Group's opening and opposition briefs, unless otherwise indicated. *See* ECF Nos. 10-1, 14.

initial discussions" and "understand their responsibilities").

Significantly, National Elevator itself explicitly recognized in prior litigation the material benefits that groups of investors like the DexCom Investor Group provide to absent Class members. It sought and secured Lead Plaintiff appointments as part of unrelated groups represented by multiple law firms, just like the DexCom Investor Group. That National Elevator took these contrary positions in prior cases is inconsistent with its arguments now and further counsels in favor of the DexCom Investor Group's appointment. *See West Palm Beach Police Pension Fund v. DFC Glob. Corp.,* 2014 WL 1395059, at *8 (E.D. Pa. Apr. 10, 2014) (appointing group of investors over individual movant that "advocated in favor of aggregation of losses in a motion seeking to be appointed lead counsel in another case").

Second, National Elevator claims that the DexCom Investor Group's sales of put options render it atypical, despite the class definition explicitly including sales of put options. This makes no sense. National Elevator fails to cite a single case where a court found a movant was atypical because it sold put options, and those same transactions were specifically part of the class definition considered by the Court. *See Ventrillo v. Paycom Software, Inc.*, 2024 WL 1750658, at *5 (W.D. Okla. Apr. 23, 2024) (appointing put options seller where "class definition [] explicitly includes persons or entities who sold put options during the class period").

Recognizing the weakness of its position, National Elevator seeks to excise put sellers from the Class definition altogether and remove thousands of investors from the protection of this case. *See* ECF No. 15 at 8-9. In other words, purely for its own individual benefit, National Elevator seeks to disenfranchise members of the same Class it seeks to represent. National Elevator's attempts to harm the Class only undermines its motion because "[t]his self-serving behavior is precisely the type of rebuttable evidence [] that would prohibit this Court from appointing [a movant] lead plaintiff." *Oakland Cnty. Voluntary Emps. Beneficiary Ass'n v. Generac Holdings Inc.*, 2023 WL 9511520, at *3 (E.D. Wis. May 30, 2023).

In any event, even if put sellers were not explicitly included in the Class definition, numerous courts have found that put sellers can represent the claims of stockholders. *See Hall v. Medicis Pharm. Corp.*, 2009 WL 648626, at *4 (D. Ariz. Mar. 11, 2009) ("many courts have appointed options traders as lead plaintiffs to represent the interests of common stockholders"). In sum, the DexCom Investor Group's motion should be granted.

## II. ARGUMENT

### A. The DexCom Investor Group Is The Presumptive Lead Plaintiff

The DexCom Investor Group is the presumptive "most adequate plaintiff." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). It has the "largest financial interest" in this matter based on the $3.1 million in losses it incurred. *See* ECF No. 14 at 1. What's more, the DexCom Investor Group has made more than a *prima facie* showing of adequacy and typicality. *Id*. at 6-9.

Nothing more is required for the DexCom Investor Group to trigger the strong presumption that it is the most adequate plaintiff. Caselaw holds that challenges to the adequacy of a group are appropriately considered when movants seek to rebut the presumption, as opposed to establishing the *prima facie* case. *See In re Aqua Metals Sec. Litig.*, 2018 WL 4860188, at *4 (N.D. Cal. May 23, 2018) (considering challenges to proposed group's cohesiveness at step three of the analysis); *see also Pampena*, 2023 WL 3082341, at *3-4 (movant failed to "challeng[e] the presumptive adequacy of the Group" given sworn "joint declaration"). Either way, the DexCom Investor Group has established that it is more than typical and adequate.

### B. National Elevator Fails to Rebut The Presumption

This presumption may be rebutted "only upon proof" that the presumptive Lead Plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses[.]" *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021). This is a high bar. "[S]peculation" is insufficient. *Id.* at 902. National Elevator

3

fails to offer any proof that the DexCom Investor Group is atypical or inadequate.

### 1.     The DexCom Investor Group Is A Proper Group

The PSLRA, the Supreme Court, and the Ninth Circuit expressly permit a "group of persons" to be appointed Lead Plaintiff, particularly when they are "small and manageable" and exhibit an ability to oversee counsel and the litigation, as here. *Perrin v. Sw. Water Co.*, 2009 WL 10654690, at \*2-3 (C.D. Cal. Feb. 13, 2009); *Mersho*, 6 F.4th at 903 n.4 ("the statutory language" is "clear" that "groups can serve as a lead plaintiff"); *Ferreira*, 2020 WL 3246328, at \*6 ("the Supreme Court has noted that claims aggregation is more the rule than exception under the PSLRA, stating '[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups[.]'" (citing *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018)).

As set forth in the Joint Declaration, the DexCom Investor Group is a small, cohesive group of two sophisticated investors and their associated entities that established effective mechanisms for communicating and making informed decisions, selected well-qualified counsel, and is highly motivated to secure the best possible result for the putative Class. *See* ECF No. 10-3. The members of the DexCom Investor Group each went through their own deliberative process when deciding to seek Lead Plaintiff appointment, and came together on their own volition in recognition of the benefits that a Lead Plaintiff group can provide to absent Class members. *See id.* ¶¶5-9. Prior to filing its motion, the DexCom Investor Group participated in a joint conference call to discuss, among other things, their commitment to oversee counsel and prosecute this litigation. *Id.* ¶10.

Based on similar evidence, numerous courts in this Circuit have found small and cohesive groups just like the DexCom Investor Group to be adequate Class representatives. *See Pampena*, 2023 WL 3082341, at \*4 (crediting joint declaration where members "had initial discussions, understand their responsibilities . . . , and 'established protocols to communicate with counsel and with each other'"); *Ferreira*, 2020 WL 3246328, at \*7 (finding group "capable of performing the lead

4

plaintiff function" because its joint declaration "describes [their] experience and sophistication," and "asserts they understand the role and responsibilities of a lead plaintiff"); *Perrin,* 2009 WL 10654690, at *3 (appointing group where its members "submitted a Joint Declaration agreeing to 'work together to ensure the maximum recovery on behalf of the proposed class'").

This is true even when the group consists of investors who individually assert a lesser financial interest than that of a single investor, contrary to National Elevator's claims otherwise. *See Perrin*, 2009 WL 10654690, at *3-4 (appointing group of four unrelated individual investors over "single entity [that had] the largest financial stake as against any other single entity"); *Ferreira*, 2020 WL 3246328, at *5-9 (appointing group of three unrelated individual investors over single movant with larger loss than any group member); *Reiger v. Altris Software, Inc.*, 1998 WL 1986953, at *4 (S.D. Cal. Sept. 14, 1998) (rejecting argument in favor of institution's "single largest loss" because the statutory presumption applies to "the person or group of persons"); *DFC*, 2014 WL 1395059, at *4-5 (appointing group of unrelated investors even though it "would displace the 'single institutional investor with the largest individual loss'").

Faced with the sworn Joint Declaration, National Elevator claims that the DexCom Investor Group should not be considered together as it was "brought together for the sole purposes of aggregating their claims in an effort to become the presumptive lead plaintiff." *See* ECF No. 15 at 2-6. That is pure speculation and contradicts the proof in the record as discussed above. *See Pampena*, 2023 WL 3082341, at *4 ("In *Mersho*, the Ninth Circuit held that the district court erred . . . [because] the only evidence it acknowledged—the Petitioners' joint declaration—contradict[ed] such conclusions'").

Next, National Elevator contends that the DexCom Investor Group is precluded from serving as Lead Plaintiff because its members lack a prelitigation relationship. However, "the critical test is whether the group can fairly and

5

adequately protect the interests of the class" which "can be met even where the group members lack a prelitigation relationship." *Borteanu v. Nikola Corp.*, 562 F. Supp. 3d 174, 184 (D. Ariz. 2021). Indeed, the text of the PSLRA "contains no requirement mandating that the members of a proper group be 'related' in some manner." *Id.* (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 266 (3d Cir. 2001)).

Here, there can be no dispute that the DexCom Investor Group is capable of adequately representing the interests of the proposed Class. It strains credulity to claim that Mr. Sautter, a partner of a private equity fund, and Mr. Bao, who earned an M.B.A. and runs his own business (and who have collectively incurred over $3 million in losses) lack sufficient incentive or sophistication to prosecute this case and have somehow relegated oversight of this matter. *See* ECF No. 10-3 ¶¶3-5; *Nikola*, 562 F. Supp. 3d at 186 ("[t]his Court finds that [the proposed group's] makeup of three experienced, individual investors supports their argument for lead plaintiff status"); *Sneed v. AcelRx Pharms.*, Inc., 2021 WL 5964596, at *5 (N.D. Cal. Dec. 16, 2021) (appointing two "sophisticated investors who understand the responsibilities of being a lead plaintiff").[2]

Then, National Elevator attempts to criticize the DexCom Investor Group's stated procedures for resolving disputes. *See* ECF No. 15 at 6. However, the DexCom Investor Group's decision-making mechanisms support, rather than detract from, its adequacy. *Nikola*, 562 F. Supp. 3d at 187 (crediting joint declaration that provides "that if they could not reach a consensus, that decisions would be made through a majority vote").

---

[2] It is curious that National Elevator would question the DexCom Investor Group's ability to oversee this litigation given the errors in National Elevator's own submission, inflating its losses by about $300,000 or 10%. *See* ECF No. 14 at 10-11. This further supports the appointment of the DexCom Investor Group. *See Camp v. Qualcomm Inc.*, 2019 WL 277360, at *1-4 (S.D. Cal. Jan. 22, 2019) (denying motion where movant inflated losses).

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
CASE NOS. 3:24-CV-01485-RSH-VET; 3:24-CV-01804-AJB-BLM; 3:24-CV-01809-RBM-DDL

Finally, National Elevator's contention that the Joint Declaration does not explain why the DexCom Investor Group chose to retain two firms is hypocritical and wrong. *See* ECF No. 10-3 at ¶¶9, 12 (discussing efficiency, experience, and resource-related benefits). The DexCom Investor Group submitted sworn evidence as to its ability to oversee counsel while National Elevator has two law firms representing it in this case and has submitted no such proof. *See* ECF No. 15 at 14.

What's more, National Elevator's own prior conduct contradicts its arguments here—as it has previously sought appointment as part of unrelated groups of investors with multiple law firms. National Elevator has expressly stated that serving as part of a group of unrelated investors (with multiple law firms) provides "substantial benefit[s]" to absent Class members as "working together would allow for the sharing of experiences and resources." *See* Declaration of Lesley E. Weaver ("Weaver Decl."), Ex. A at 13. In another case, National Elevator sought appointment with four other investors with whom National Elevator did not share a relationship because "the appointment of more than one investor to serve as lead plaintiff has the added benefit of eliminating unnecessary delays in the litigation should a single lead plaintiff be later found inadequate." Weaver Decl. Ex. B at 4-5. It is more than a bit artificial for National Elevator to tout the benefits that groups can provide when it is involved, but then disavow those same benefits when it suits its interests. *See DFC,* 2014 WL 1395059, at *8.

### 2.    The DexCom Investor Group is Typical

The PSLRA states that the presumptive Lead Plaintiff is the movant that is "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). Here, the "class members" specifically include those that sold put options, as well as those that bought stock. *Carnes*, ECF No. 1 at ¶1. As this Court recognized, to satisfy the typicality requirement, the representative's claims must be "reasonably co-extensive with those of absent class members, although they need not be substantially identical.'" *Brown v. Acutus Med., Inc.*,

2022 WL 2820557, at *2 (S.D. Cal. July 19, 2022) (Huie, J.).  Thus, by virtue of the Class definition, the DexCom Investor Group's claims are typical.

Virtually every court to have considered the issue has held that when put options are specifically part of the Class definition, such investors are typical Class representatives when the Class also includes stockholders.  *See Paycom*, 2024 WL 1750658, at *5 (appointing as Lead Plaintiff put options seller where "class definition in this case explicitly includes persons [] who sold put options"); *In re Sepracor Inc.*, 233 F.R.D. 52, 56 (D. Mass. 2005) (appointing class representative that traded in options as it was "eligible to represent a class that includes purchasers of all [of company's] equity securities"); *In re Oxford Health Plans, Inc. Sec. Litig.*, 199 F.R.D. 119, 123 (S.D.N.Y. 2001) (certifying class representative that was a market maker in options); *In re Adobe Sys., Inc. Sec. Litig.*,139 F.R.D. 150, 155 (N.D. Cal. 1991) (appointing class representative that traded in options because "the value of options is directly related to the value of common stock").

None of the decisions cited by National Elevator addressed a class definition that, like here, explicitly included sellers of put options.[3]  This is not surprising.  It would be illogical to find that an investor in a security that is specifically part of the Class definition could be atypical by virtue of the simple fact of investing in that security.  Thus, National Elevator's reliance on cases like *Allergn* and *ProShares* is

---

[3] *See, e.g., Jaramillo v. Dish Network Corp.*, 2023 WL 5312062, at *2 (D. Colo. Aug. 16, 2023) ("purchased [] securities"); *Patel v. Reata Pharms., Inc.*, 549 F. Supp. 3d 559, 563 (E.D. Tex. 2021) ("purchased [] securities"); *Gelt Trading, Ltd. v. Co-Diagnostics, Inc.*, 2021 WL 913934, at *1 (D. Utah Mar. 10, 2021) ("purchased [] stock"); *Di Scala v. ProShares Ultra Bloomberg Crude Oil*, 2020 WL 7698321, at *4 (S.D.N.Y. Dec. 28, 2020) ("purchased [] UCO securities"); *Cook v. Allergn PLC*, 2019 WL 1510894, at *1 (S.D.N.Y. Mar. 21, 2019) ("purchased [] common stock"); *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *2 (S.D.N.Y. Mar. 13, 2018) ("purchased [] shares"); *Applestein v. Medivation Inc*, 2010 WL 3749406, at *1 (N.D. Cal. Sept. 20, 2010) ("purchased [] securities"); *Andrada v. Atherogenics, Inc.*, 2005 WL 912359, at *1 (S.D.N.Y. Apr. 19, 2005) ("purchased [] stock").

REPLY MEMORANDUM OF POINTS AND AUTHORITIES
CASE NOS. 3:24-CV-01485-RSH-VET; 3:24-CV-01804-AJB-BLM; 3:24-CV-01809-RBM-DDL

misplaced because there is nothing "unique" with respect to options investors in this putative Class, which specifically includes sellers of put options. ECF No. 15 at 10.

Even in cases where the class definition does not explicitly encompass options, courts in this Circuit and elsewhere have recognized that claims of options investors are typical of the entire Class. National Elevator's cited authority recognizes as much. *See* ECF No. 15 at 7 n.3; *In re Priceline.com Inc.*, 236 F.R.D. 89, 99 (D. Conn. 2006) ("the court is satisfied that [the put options trader's] interests . . . are sufficiently aligned with those of the class members"). Other decisions are in accord. *See Medicis*, 2009 WL 648626, at *4 (appointing options investor and recognizing that "many courts have appointed options traders as lead plaintiffs to represent the interests of common stockholders" finding "no defenses applicable to the common stock holders that are not also applicable to the options holders").

To salvage its argument, National Elevator posits that the Court should not credit the *Carnes* complaint (which included options in the class definition) and would have it abandon the claims of thousands of Class members that suffered millions in losses on those securities. According to National Elevator, *Carnes* was the product of "manipulat[ion]" or "gamesmanship." ECF No. 15 at 8. But National Elevator has it backwards. The filing of *Carnes* broadened the Class to help ensure that as many damaged investors as possible could secure a recovery. This is precisely what is expected of a thoughtful and experienced counsel. *See Generac*, 2023 WL 9511520, at *3 ("one would expect diligent lawyers to root out and plead every possible instance of fraud"). It is National Elevator's arguments that seek to undermine the interests of put sellers that is suggestive of gamesmanship. *Id.* (questioning why a movant would "reduc[e] the class size and limit[] the potential amount of damages"). Indeed, solely to suit its own interests, National Elevator seeks to disenfranchise thousands of putative Class members. This is anathema to its role as a fiduciary and severely undermines National Elevator's *bona fides*.

Again, National Elevator has not cited a single case where, at the Lead

9

Plaintiff stage of the litigation, a court has culled a class definition to excise investors that were explicitly included.[4]  To the extent that National Elevator nit-picks the *Carnes* complaint because it did not include information like "the efficiency of the Chicago Board of Options Exchange" (ECF No. 15 at 9), such contentions are baseless because "[t]he market price for options is directly responsive . . . to changes in the market price of the underlying stock, and to information affecting that price." *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 433 (S.D.N.Y. 2014).[5]

### C.    National Elevator's Motion Should Be Denied

National Elevator does not qualify as the "most adequate plaintiff."  *See Mersho*, 6 F.4th at 899.  As such, the Court should look no further than the DexCom Investor Group.  Even if the Court were to consider National Elevator, it would find that National Elevator is vulnerable to unique defenses because its loss analysis was replete with errors.  *See* ECF No. 14 at 10-11; *Ferreira*, 2020 WL 3246328, at *7 ("[e]ven were the Court inclined to agree with the arguments against [the group], [the competing movant's] claim to the largest financial interest is beset with flaws").

## III.   CONCLUSION

For the reasons discussed herein and in its prior briefing, the DexCom Investor Group respectfully requests that the Court grant its Motion and deny the competing motion.

---

[4] All of National Elevator's cited authority on this issue pertains to limiting the Class Period, a topic as to which there can be a factual dispute.  *See* ECF No. 15 at 8-9. Here, there can be no factual dispute that the putative Class includes put sellers.

[5] In a footnote, National Elevator contends that Mr. Bao's trading strategy was "peculiar."  ECF No. 15 at 12 n.5.  However, National Elevator does not contend that Mr. Bao is different than any other Class member that relied on the efficiency of the market price of DexCom securities.  *See In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d .1315, 1330 (N.D. Ga. 2007) (holding that "the put option seller generally relies—in like fashion to a stock purchaser—on the integrity of the price of the underlying stock").

Dated: November 18, 2024

Respectfully submitted,

**BLEICHMAR FONTI & AULD LLP**

*/s/ Lesley E. Weaver*

Lesley E. Weaver (SBN 191305)
lweaver@bfalaw.com
Adam C. McCall (SBN 302130)
amccall@bfalaw.com
1330 Broadway, Suite 630
Oakland, California 94612
Telephone: (415) 445-4003
Facsimile: (415) 445-4020

-and-

Javier Bleichmar (*pro hac vice* forthcoming)
jbleichmar@bfalaw.com
300 Park Avenue, Suite 1301
New York, New York 10022
Telephone: (212) 789-1340
Facsimile: (212) 205-3960

-and-

Ross Shikowitz (*pro hac vice* forthcoming)
rshikowitz@bfalaw.com
75 Virginia Road
White Plains, New York 10603
Telephone: (914) 265-2991
Facsimile: (212) 205-3960

**LEVI & KORSINSKY, LLP**

*/s/ Adam M. Apton*

Adam M. Apton (SBN 316506)
aapton@zlk.com
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Telephone: (213) 985-7290

*Counsel for Proposed Lead Plaintiff*

*DexCom Investor Group, and Proposed Co-Lead Counsel for the Class*

12

## **CERTIFICATE OF SERVICE**

I, Lesley E. Weaver, hereby certify that on November 18, 2024, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record registered in the CM/ECF system.

Executed on November 18, 2024, at Oakland, California.

*/s/ Lesley E. Weaver*
Lesley E. Weaver

13