# EXHIBIT A

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
Jonathan D. Uslaner (Bar No. 256898)
12481 High Bluff Drive, Suite 300
San Diego, California 92130
Telephone: (858) 793-0070
Facsimile: (858) 793-032
jonathanu@blbglaw.com

*Counsel for Proposed Lead Plaintiff Toronto Transit Commission*
*Pension Fund Society and Proposed Lead Counsel for the Class*

**LABATON SUCHAROW LLP**
Christopher J. Keller
Eric J. Belfi
Marisa N. DeMato
Francis P. McConville
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
mdemato@labaton.com
fmcconville@labaton.com

*Counsel for Proposed Lead Plaintiff National Elevator*
*Industry Pension Fund and Proposed Lead Counsel for the Class*

[Additional counsel appear on the signature page.]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DAVID KIPLING, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>FLEX LTD., MICHAEL M. MCNAMARA, and CHRISTOPHER E. COLLIER,<br><br>Defendants. | Case No.  5:18-cv-02706-LHK<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION OF NATIONAL ELEVATOR INDUSTRY PENSION FUND AND TORONTO TRANSIT COMMISSION PENSION FUND SOCIETY FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:  September 26, 2019<br>Time: 1:30 p.m.<br>Courtroom: 8 – 4th Floor<br>Judge: Hon. Lucy H. Koh |

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
CASE NO. 5:18-cv-02706-LHK

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...............................................................................................ii

NOTICE OF MOTION AND MOTION .............................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................2

I.     STATEMENT OF THE ISSUES TO BE DECIDED.................................................2

II.    PRELIMINARY STATEMENT ............................................................................2

III.   OVERVIEW OF THE PENDING ACTION...........................................................5

     A.    Overview of the Flex Securities Action...............................................5

     B.    Prior Lead Plaintiff Proceedings.........................................................7

IV.   ARGUMENT .........................................................................................................8

     A.    The Elevator Pension Fund and the Pension Fund Society Should Be Appointed Lead Plaintiff .........................................................8

          1.    The PSLRA Standard for Appointing Lead Plaintiff...............8

     B.    The Elevator Pension Fund and the Pension Fund Society Are the "Most Adequate Plaintiff" ........................................................8

          1.    The Elevator Pension Fund and the Pension Fund Society Satisfied the PSLRA's Procedural Requirements.....................................8

          2.    The Elevator Pension Fund and the Pension Fund Society Have the Largest Financial Interest in the Outcome of the Action..................................................9

          3.    The Elevator Pension Fund and the Pension Fund Society Otherwise Satisfy Rule 23's Typicality and Adequacy Requirements ................................................9

              (a)    The Elevator Pension Fund's and the Pension Fund Society's Claims Are Typical of Those of the Class ..................10

              (b)    The Elevator Pension Fund and the Pension Fund Society Will Fairly and Adequately Protect the Interests of the Class..................10

          4.    The Elevator Pension Fund and the Pension Fund Society Are Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA ................................................11

     C.    The Elevator Pension Fund's and the Pension Fund Society's Choice of Lead Counsel is Well-Qualified to Represent the Class ....................14

CONCLUSION.................................................................................................................17

# TABLE OF AUTHORITIES

CASES                                                                                                                           PAGE(S)

*In re Aqua Metals Sec. Litig.*,
No. 17-cv-07142-HSG, 2018 WL 4860188 (N.D. Cal. May 23, 2018) ..................................13

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ......................................................................................8, 15

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
No. 12-CV-06039-LHK, 2013 WL 2368059 (N.D. Cal. May 29, 2013) ................................10

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
No. 5:11-CV-04003-LHK, 2012 WL 78780 (N.D. Cal. Jan. 9, 2012) ...................4, 10, 11, 13

*In re Cohen v. U.S. Dist. Ct.*,
586 F.3d 703 (9th Cir. 2009) ..................................................................................................15

*Krieger v. Atheros Commc'ns, Inc.*,
No. 11-CV-00640-LHK, 2011 WL 6153154 (N.D. Cal. Dec. 12, 2011) ................................10

*Perlmutter v. Intuitive Surgical, Inc.*,
No. 10-cv-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011) ....................................12

*In re Versata, Inc., Sec. Litig.*,
No. C 01-1439 SI, 2001 WL 34012374 (N.D. Cal. Aug. 20, 2001)...........................12, 13, 14

STATUTES AND RULES

15 U.S.C. § 78u-4(a), *et seq.* ............................................................................................ *passim*

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

OTHER AUTHORITIES

H.R. Rep. No. 104-369 (1995) (Conf. Rep.), *reprinted in* 1995 U.S.C.C.A.N. 730 ..............12, 15

# NOTICE OF MOTION AND MOTION

TO:     ALL PARTIES AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that Lead Plaintiff movants National Elevator Industry Pension Fund ("Elevator Pension Fund") and Toronto Transit Commission Pension Fund Society ("Pension Fund Society"), through their counsel, hereby move this Court in Courtroom 8 – 4th Floor of the Honorable Lucy H. Koh, at the United States District Court for the Northern District of California, located at the San Jose Courthouse, 280 South 1st Street, San Jose, California 95113, on September 26, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard, for the entry of an Order:  (1) appointing the Elevator Pension Fund and the Pension Fund Society as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), *et seq.*; (2) approving the Elevator Pension Fund's and the Pension Fund Society's selection of Labaton Sucharow LLP ("Labaton Sucharow") and Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Lead Counsel for the Class (the "Motion"); and (3) granting such other and further relief as the Court may deem just and proper.

This Motion is made on the grounds that the Elevator Pension Fund and the Pension Fund Society believe they are the "most adequate plaintiff" under the PSLRA, and should therefore be appointed Lead Plaintiff.  Specifically, the Elevator Pension Fund and the Pension Fund Society believe they have the "largest financial interest" in the relief sought by the Class in this litigation by virtue of, among other things, the significant losses that they suffered on their investments in Flex Ltd. ("Flex" or the "Company") securities.  The Elevator Pension Fund and the Pension Fund Society are the paradigmatic Lead Plaintiff envisioned by Congress in enacting the PSLRA because they are sophisticated institutional investors with a substantial financial stake in the litigation that will provide effective monitoring and supervision of counsel.  The Elevator Pension Fund and the Pension Fund Society also otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because their claims are typical of other Class members' claims and because they will fairly and adequately represent the Class.

This Motion is based upon this Notice of Motion, the accompanying Memorandum of Points and Authorities in support thereof, the Declaration of Jonathan D. Uslaner ("Uslaner Decl.") filed herewith, the pleadings and other filings herein, and such other written or oral argument as may be permitted by the Court.

WHEREFORE, the Elevator Pension Fund and the Pension Fund Society respectfully request that the Court: (1) appoint them as Lead Plaintiff in the above-captioned action pursuant to the PSLRA; (2) approve their selection of Labaton Sucharow and Bernstein Litowitz to serve as Lead Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  STATEMENT OF THE ISSUES TO BE DECIDED**

1.  Whether the Court should appoint the Elevator Pension Fund and the Pension Fund Society as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and

2.  Whether the Court should approve of the Elevator Pension Fund's and the Pension Fund Society's selection of Labaton Sucharow and Bernstein Litowitz as Lead Counsel for the Class, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

**II.  PRELIMINARY STATEMENT**

Presently pending before this Court is a federal securities class action (the "Action") brought on behalf a class consisting of all purchasers other than Defendants (defined herein) (the "Class"), who purchased Flex's publicly traded securities, including common stock and exchange-traded options on such common stock, during the period from January 26, 2017 to October 25, 2018, inclusive (the "Class Period").  The Action charges Flex and certain of its officers and/or directors (collectively, "Defendants") with violations of the Securities Exchange Act of 1934 (the "Exchange Act").[1]

---

[1]  In addition to the Company, the Action names the following individuals as defendants: (1) Michael M. McNamara ("McNamara"), the Company's former Chief Executive Officer ("CEO"); (2) Christopher E. Collier ("Collier"), the Company's Chief Financial Officer; (3) Kevin Kessel ("Kessel"), the Company's Vice President of Investor Relations and Corporate

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which "person or group of persons" has the "largest financial interest" in the relief sought in this litigation, and also whether that movant has made a *prima facie* showing that it is a typical and adequate Class representative under Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The Elevator Pension Fund and the Pension Fund Society respectfully submit that they should be appointed Lead Plaintiff because they have the "largest financial interest" in this litigation and have made the requisite showing of typicality and adequacy required by the standards of the PSLRA. As set forth in detail below, the Elevator Pension Fund and the Pension Fund Society collectively incurred **$5,185,409.16** in losses as a result of their transactions in Flex securities during the Class Period.[2] In light of this significant loss, the Elevator Pension Fund and the Pension Fund Society have a substantial financial interest in the relief sought by this litigation—an interest believed to be greater than that of any competing movant.

In addition to asserting the largest financial interest in this litigation, the Elevator Pension Fund and the Pension Fund Society also meet the typicality and adequacy requirements of Rule 23 as required by the PSLRA, because their claims are typical of those of absent Class members, and because they will fairly and adequately represent the interests of the Class. The Elevator Pension Fund and the Pension Fund Society are a cohesive pairing of sophisticated investors with a substantial financial stake in the litigation and have the ability to direct the litigation separate and apart from their counsel.

Indeed, the Elevator Pension Fund and the Pension Fund Society are precisely the type of sophisticated institutional investors that Congress intended to empower to lead securities class

Communications; and (4) Michael Dennison, the Company's former President of Consumer & Technologies Group.

[2]    Copies of the PSLRA-required Certifications are attached as Exhibit A to the accompanying Uslaner Decl., which sets forth all transactions of the Elevator Pension Fund and the Pension Fund Society in Flex securities during the Class Period. In addition, a chart reflecting the calculation of the Elevator Pension Fund and the Pension Fund Society's losses as a result of their Class Period transactions in Flex securities is attached as Exhibit B to the Uslaner Decl.

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION    3
CASE NO. 5:18-cv-02706-LHK

actions.  As set forth in greater detail in the Joint Declaration of Robert O. Betts, Jr. and Sean Hewitt in Support of the Elevator Pension Fund's and the Pension Fund Society's Motion (the "Joint Declaration," attached as Exhibit C to the Uslaner Decl.), both institutions fully understand the Lead Plaintiff's obligations to the Class under the PSLRA, and are willing and able to undertake the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this Action.  In fact, prior to seeking a role as Lead Plaintiff, representatives of the Elevator Pension Fund and the Pension Fund Society held a joint conference call on May 31, 2019, to discuss the merits of the claims against Defendants, the significant losses the funds incurred, as well as the funds' common goals in maximizing the recovery for all Flex investors.  Courts in the Ninth Circuit, including this Court, appoint small, cohesive groups of institutional investors— like the Elevator Pension Fund and the Pension Fund Society—that have "demonstrated they will vigorously prosecute the action on behalf of the class." *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, No. 5:11-CV-04003-LHK, 2012 WL 78780, at *5 (N.D. Cal. Jan. 9, 2012) (Koh, L.).

The Elevator Pension Fund and the Pension Fund Society have also demonstrated their adequacy through their selection of Labaton Sucharow and Bernstein Litowitz as Lead Counsel on behalf of the Class.  Both firms are, by all accounts, nationally recognized securities class action law firms with established track records of achieving substantial recoveries for the benefit of injured investors, and have the expertise and resources necessary to handle litigation of this complexity and scale.

Accordingly, based on the Elevator Pension Fund's and the Pension Fund Society's significant financial interest and their demonstrated commitment and ability to oversee this Action in a cohesive and coordinated fashion, the Elevator Pension Fund and the Pension Fund Society respectfully request that the Court appoint them Lead Plaintiff and otherwise grant their Motion.

## III.   OVERVIEW OF THE PENDING ACTION

### A.   Overview of the Flex Securities Action

Flex is a Singaporean corporation with executive offices in San Jose, California, which during the Class Period, was primarily in the business of providing packaged consumer electronics and industrial products for original equipment manufacturers. The Company's stock is traded on the NASDAQ under the ticker symbol "FLEX."

In October 2015, Flex announced a partnership with Nike Inc. ("Nike") to enhance Nike's shoe manufacturing process, including automating and modernizing the very labor-intensive process by which Nike manufactured sneakers. The contract was monumentally important to the Company. Defendants claimed, and the market believed, that Nike would soon be one of Flex's "top ten" customer contracts. The Nike contract was part of Flex's strategic pivot at that time to what it called its "Sketch-to-Scale" strategy, which was an effort to identify new customer opportunities that involved Flex earlier and more frequently in product design, development, and manufacturing. Market analysts repeatedly expressed positive investor sentiment on the importance of what Nike meant to the Company's valuation. A key aspect of Flex's "Sketch-to-Scale" contract with Nike was that it would become one of Nike's manufacturing partners—designing, building, and operating automated processes for manufacturing shoes.

The Action alleges that throughout the Class Period, Defendants falsely and consistently assured the market that: (1) the Company's internal controls over financial reporting, including those related to customer contracts, were adequate and proper, and (2) the most crucial contract in the Company's pipeline, a massive and very expensive contract with Nike to automate sneaker manufacturing, was repeatedly hitting key milestones while timely proceeding on a steady trajectory to profitability. Defendants, however, failed to disclose or warn the market of material facts showing that the Nike contract was failing operationally and not commercially viable, instead pointing to purported accomplishments and a timely trajectory to breaking even. For example, in early January 2018, Defendant McNamara reiterated that the Company's

breakeven/profitability date was "still our target … still have a line of sight to that," while Defendant Collier affirmed that "there's a lot of different evidential proof points that show that our trajectory is pretty firm."  Likewise, in February 2018, Defendant Kessel stated that "we haven't made any changes to our view on Nike … Q4 is where we're focusing on breaking even as we exit the year."  In reality, Defendants knew that its Nike project had already veered off that trajectory.

The truth about the Company's internal problems began to emerge on April 26, 2018, when the Company first disclosed weaknesses in internal controls.  Flex disclosed that it was investigating a whistleblower allegation that the Company improperly accounted for certain obligations in a customer contract and certain related reserves, and that the U.S. Securities and Exchange Commission had been informed.  The Company also admitted that it would conduct an internal accounting investigation tied to its customer contracts.  On this news, Flex's stock price fell $3.61 per share or 21.7 percent, to close at $13.03 on April 27, 2018.  Meanwhile, the Company continued to paint the picture of steadiness to breakeven on the Nike contract.  For example, Defendant McNamara boasted to the market on April 26, 2018 that a "unique automation system" had been developed with Nike and released into production on April 11, 2018.

By October 25, 2018, Defendants finally disclosed the truth concerning Flex's management and execution of the Nike contract.  First, Flex admitted to material weaknesses in its internal controls over financial reporting as they pertained to customer contracts generally—a fact that only came to light because a whistleblower forced Flex to disclose it.  Second, Flex disclosed winding down its Nike manufacturing operations after failing to sustainably manage the contract and being "unable to reach a commercial and viable solution with Nike"—ultimately agreeing to close its Guadalajara operations by December 31, 2018—after the Company invested hundreds of millions of dollars in what was CEO McNamara's personal project.  Then, on the same day the Nike project was terminated, and just months after confirming internal control material weaknesses, Defendant McNamara abruptly retired with, as one market analyst

pointedly observed, no "obvious choices for a replacement from the existing senior management." As a result of Defendants' misstatements and omissions, Flex's stock price fell $3.82 per share, or 35.0 percent, on October 26, 2018.

## B.      Prior Lead Plaintiff Proceedings

On May 8, 2018, Plaintiff David Kipling filed a complaint alleging that Flex and certain officers perpetrated an accounting fraud related to a customer contract, which rendered the Company's financial statements materially false and misleading, during the period of January 26, 2017 to April 26, 2018.  On the same day, counsel for Mr. Kipling published a notice of the pendency of the action to alert investors of the potential accounting fraud at Flex and to notify them of the July 9, 2018 lead plaintiff deadline.

On July 9, 2018, three separate investors filed competing motions vying to be appointed lead plaintiff, and on October 1, 2018, the Court appointed Bristol County Retirement System ("Bristol County") to represent the class of injured investors in the Action.

Shortly after the lead plaintiff was selected, on October 25, 2018, the Company disclosed that it was terminating its partnership to automate shoe manufacturing for Nike.  As noted above, Flex also announced that its CEO, Defendant McNamara would resign.  On November 28, 2018, court-appointed lead plaintiff Bristol County amended the complaint and expanded the initial class period to include the October 25, 2018 disclosure.  Specifically, the amended complaint alleged that the Company was defrauding investors in connection with a partnership with Nike by continuously touting that its contract with Nike to automate sneaker manufacturing was repeatedly hitting key milestones and timely proceeding on a steady trajectory to profitability.

Due to these new revelations, a revised fraud theory, and an expanded class period in the amended complaint, on January 8, 2019, Iron Workers Local 580 Joint Funds filed a motion to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure and the PSLRA, 15 U.S.C. § 78u-4(a)(3)(A), for purposes of vacating the Court's October 1, 2018 order appointing Bristol County and to reopen the lead plaintiff process.  On April 3, 2019, the Court vacated its earlier lead plaintiff selection and ordered the re-publication of notice of the amended complaint by

April 12, 2019, in order to reopen the lead plaintiff process.  On April 5, 2019, counsel for lead plaintiff Bristol County published a notice pursuant to the PSLRA, triggering the deadline for investors' motion for appointment as lead plaintiff on June 4, 2019.

Accordingly, the Elevator Pension Fund and the Pension Fund Society respectfully submit this application for appointment as Lead Plaintiff in the reopened litigation, pursuant to the Court's April 3, 2019 order.

## IV.    ARGUMENT

### A.    The Elevator Pension Fund and the Pension Fund Society Should Be Appointed Lead Plaintiff

The Elevator Pension Fund and the Pension Fund Society respectfully submit that they are the presumptively "most adequate plaintiff" because they have complied with the PSLRA's procedural requirements, hold the largest financial interest of any qualified movant, and otherwise satisfy Rule 23's typicality and adequacy requirements.

#### 1.    The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA sets forth the procedure for selecting the Lead Plaintiff in class actions arising under the federal securities laws and provides a presumption in favor of the movant that has the "largest financial interest" in the relief sought by the Class and satisfies the relevant requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) ("The [PSLRA] provides a simple . . . process for identifying the lead plaintiff pursuant to these criteria.").  As set forth below, the Elevator Pension Fund and the Pension Fund Society believe they are the "most adequate plaintiff" and are entitled to be appointed as Lead Plaintiff.

### B.    The Elevator Pension Fund and the Pension Fund Society Are the "Most Adequate Plaintiff"

#### 1.    The Elevator Pension Fund and the Pension Fund Society Satisfied the PSLRA's Procedural Requirements

The Elevator Pension Fund and the Pension Fund Society filed this motion to serve as Lead Plaintiff in a timely manner.  Pursuant to the Court's April 3, 2019 order, on April 5, 2019, counsel for previously-appointed lead plaintiff Bristol County caused notice regarding the

reopened lead plaintiff process to be published on *PR Newswire*, a widely circulated, national, business-oriented news reporting service. *See* Uslaner Decl., Ex. D, Notice. Thus, as permitted by the PSLRA, any person or group of persons may apply to be appointed Lead Plaintiff within sixty (60) days after publication of the notice, *i.e.*, on or before June 4, 2019. The Elevator Pension Fund and the Pension Fund Society filed their motion within the required period.

### 2. The Elevator Pension Fund and the Pension Fund Society Have the Largest Financial Interest in the Outcome of the Action

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with "the largest financial interest in the relief sought by the class," so long as the movant "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

During the Class Period, the Elevator Pension Fund and the Pension Fund Society collectively suffered substantial losses of **$5,185,409.16** as a result of their transactions in Flex securities. *See* Uslaner Decl., Ex. B, Loss Analysis. The Elevator Pension Fund and the Pension Fund Society are presently unaware of any other movant with a larger financial interest in the outcome of the Action. Consequently, and because they also satisfy Rule 23's typicality and adequacy requirements, the Elevator Pension Fund and the Pension Fund Society are entitled to the legal presumption that they are the most adequate plaintiff.

### 3. The Elevator Pension Fund and the Pension Fund Society Otherwise Satisfy Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, the Elevator Pension Fund and the Pension Fund Society satisfy the applicable requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). On a motion to serve as Lead Plaintiff, the moving plaintiff must make only a "preliminary showing that it satisfies the typicality and adequacy requirements of [Rule] 23." *Krieger v. Atheros Commc'ns, Inc.*, No. 11-CV-00640-LHK, 2011 WL 6153154, at *3 (N.D. Cal. Dec. 12, 2011) (Koh, L.) (citation omitted); *see also Juniper Networks*, 2012 WL 78780, at *4 ("Th[e] showing [at the lead plaintiff stage] need not

be as thorough as would be required on a motion for class certification.").  Here, the Elevator Pension Fund and the Pension Fund Society unquestionably satisfy both requirements.

          **(a)**    **The Elevator Pension Fund's and the Pension Fund Society's Claims Are Typical of Those of the Class**

The Elevator Pension Fund's and the Pension Fund Society's claims are typical of the claims of other purchasers of Flex securities.  "In determining whether typicality is satisfied, a Court inquires 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, No. 12-CV-06039-LHK, 2013 WL 2368059, at *4 (N.D. Cal. May 29, 2013) (Koh, L.) (citation omitted).  Here, the claims of the Elevator Pension Fund, the Pension Fund Society, and all other Class members arise from the same course of events, and their legal arguments to prove Defendants' liability are identical.  Like all other Class members, the Elevator Pension Fund and the Pension Fund Society (1) purchased Flex securities during the Class Period (2) at prices artificially inflated by Defendants' materially false and misleading statements and omissions, and (3) were damaged when the truth was revealed.  *See id*.  (finding typicality requirement met when proposed lead plaintiff "purchased [the defendant's] common stock during the class period, allegedly in reliance upon [the d]efendants' purported false and misleading statements" and incurred harm as a result).  Thus, the Elevator Pension Fund and the Pension Fund Society satisfy the typicality requirement.

          **(b)**    **The Elevator Pension Fund and the Pension Fund Society Will Fairly and Adequately Protect the Interests of the Class**

The Elevator Pension Fund and the Pension Fund Society similarly satisfy the adequacy requirement of Rule 23.  Under Rule 23(a)(4), a representative party must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "The test for adequacy is whether the class representative and [its] counsel 'have any conflicts of interest with other class members' and whether the class representative and [its] counsel will 'prosecute the action vigorously on behalf of the class.'"  *Juniper Networks*, 2012 WL 78780, at *5 (citation omitted).  No

antagonism exists between the Elevator Pension Fund's and the Pension Fund Society's interests and those of the absent Class members; rather, the interests of the Elevator Pension Fund, the Pension Fund Society, and Class members are squarely aligned.  Indeed, there are no facts to suggest any actual or potential conflict of interest or other antagonism between the Elevator Pension Fund, the Pension Fund Society, and other Class members.  Moreover, because of their substantial financial stake in the litigation, Class members can be assured that the Elevator Pension Fund and the Pension Fund Society have the incentive to vigorously represent the Class' interests.

In addition, the Elevator Pension Fund and the Pension Fund Society have demonstrated their adequacy through their selection of Labaton Sucharow and Bernstein Litowitz as Lead Counsel to represent the Class in this action.  As discussed more fully below, Labaton Sucharow and Bernstein Litowitz are highly qualified and experienced in prosecuting securities class actions, and have repeatedly demonstrated an ability to conduct complex securities class action litigation effectively.  Accordingly, the Elevator Pension Fund and the Pension Fund Society satisfy the adequacy requirement.

### 4. The Elevator Pension Fund and the Pension Fund Society Are Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA

In addition to satisfying the requirements of Rule 23, the Elevator Pension Fund and the Pension Fund Society—large, sophisticated institutional investors—are precisely the type of investors Congress sought, through the enactment of the PSLRA, to empower to assume a more prominent role in securities litigation.  *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); *see also In re Versata, Inc., Sec. Litig.*, No. C 01-1439 SI, 2001 WL 34012374, at *6 (N.D. Cal. Aug. 20, 2001) ("Congress intended that the lead plaintiff procedures under the PSLRA would 'encourage institutional investors to take a more active role in securities class action lawsuits.'") (citation

omitted).  Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation.  *See* H.R. Conf. Rep. No. 104-369, *34-35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34.  To this end, many courts, including courts in this District have recognized that the legislative history reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions.  *See Perlmutter v. Intuitive Surgical, Inc.*, No. 10-cv-03451-LHK, 2011 WL 566814, at *13 (N.D. Cal. Feb. 15, 2011) (Koh, L.) ("appoint[ing] an institutional investor, . . . comports with the PSLRA's goal to increase the likelihood that institutional investors would serve as lead plaintiffs").  Here, the Elevator Pension Fund and the Pension Fund Society are well suited to fulfill this Congressional intent.

The Elevator Pension Fund and the Pension Fund Society have also demonstrated their commitment to working together cohesively in the prosecution of this Action.  *See* Joint Declaration.  *See* Uslaner Decl., Ex. C, Joint Declaration.  District courts within the Ninth Circuit have repeatedly recognized the propriety of appointing small groups of investors that are "fully capable of representing the class's interests effectively."  *In re Aqua Metals Sec. Litig.*, No. 17-cv-07142-HSG, 2018 WL 4860188, at *4 (N.D. Cal. May 23, 2018); *see also In re Versata*, 2001 WL 34012374, at *6-7 (appointing a group of sophisticated investors as lead plaintiff because they "possess[ed] both sophistication and business knowledge, as well as substantial individual losses which adds meaningful incentive for a vigorous prosecution of the action"); *Juniper Networks*, 2012 WL 78780, at *4 (appointing as lead plaintiff a group of two institutional investors).

Here, the Elevator Pension Fund and the Pension Fund Society are a small, cohesive group of sophisticated institutional investors that determined on their own volition to jointly seek appointment as Lead Plaintiff and litigate this Action independently of counsel and in the best interests of all Class members.  Prior to seeking Lead Plaintiff appointment, representatives of the Elevator Pension Fund and the Pension Fund Society consulted extensively with their

proposed Lead Counsel regarding the merits of the claims against Defendants, their losses caused by Defendants' fraud, and their proposed litigation strategy. Moreover, the Elevator Pension Fund and the Pension Fund Society were also made aware that proposed Lead Counsel had been investigating investors' claims for several months, and that their respective investigations identified several witnesses with information about Defendants' wrongdoing, which could be used to bolster investors' claims in an amended complaint that the Elevator Pension Fund and the Pension Fund Society would file if appointed as Lead Plaintiff.

Through the course of that consultation, and recognizing the benefits that could be realized by working together, the Elevator Pension Fund and the Pension Fund Society each expressed an interest in seeking to cooperate with another like-minded institutional investor in seeking appointment as Lead Plaintiff. The Elevator Pension Fund and the Pension Fund Society agreed that their partnership would benefit the representation of the Class in this Action. Based on the Elevator Pension Fund's and the Pension Fund Society's understanding that working together would allow for the sharing of experiences and resources, including their respective work to research and investigate investors' claims, they believed that their partnership would provide substantial benefit to the Class.

Significantly, the Joint Declaration demonstrates that the Elevator Pension Fund and the Pension Fund Society have already taken measures to ensure the vigorous prosecution of this Action. Specifically, representatives of the Elevator Pension Fund and the Pension Fund Society held a telephonic meeting to discuss, among other things, the allegations in the litigation and the merits of the claims against Defendants; the PSLRA's lead plaintiff appointment process; the benefits of working together to prosecute the litigation, the benefits of sharing resources, and the manner in which they will jointly make decisions. Moreover, at the direction of the Elevator Pension Fund and the Pension Fund Society, proposed Lead Counsel Labaton Sucharow and Bernstein Litowitz have entered into a Joint Prosecution Agreement ("JPA") governing counsel's activities in this litigation, their reporting to and oversight by the Elevator Pension Fund and the Pension Fund Society, and the allocation of litigation responsibilities to ensure the zealous and

cost-effective prosecution of this Action.  To this end, the Elevator Pension Fund and the Pension Fund Society have directed proposed Lead Counsel to provide the JPA to the Court for *in camera* review should the Court deem such a review necessary.  Both the Elevator Pension Fund and the Pension Fund Society also fully understand the Lead Plaintiff's responsibility to select and retain competent counsel, and have negotiated appropriate attorneys' fees with counsel that are in line with prior fees awarded by courts in the Northern District of California in securities class actions under the PSLRA.

Accordingly, there can be no question that the Elevator Pension Fund and the Pension Fund Society have established their commitment to zealously and efficiently represent the interests of the Class as members of a Lead Plaintiff group.  *See, e.g.*, *In re Versata*, 2001 WL 34012374, at *6-7 (finding a group composed of sophisticated investors that submitted declarations "providing background information and articulating why [each] member is seeking lead plaintiff status as part of the asserted group" to be "sufficiently cohesive and structured to maximize its individual strengths and sophisticated business knowledge" and to have "exhibited a cooperative spirit").

**C.    The Elevator Pension Fund's and the Pension Fund Society's Choice of Lead Counsel is Well-Qualified to Represent the Class**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the class, subject to the court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  As such, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Cohen v. U.S. Dist. Ct.*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice.") (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001)); *Cavanaugh*, 306 F.3d at 733.  Courts should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the plaintiff class."  H.R. Conf. Rep. No. 104-369, at *35, *reprinted in* 1995 U.S.C.C.A.N. at 734; *see also Cavanaugh*, 306 F.3d at 734 ("Selecting a lawyer in whom a litigant has confidence is an important client prerogative and we will not lightly infer that Congress meant to take away this prerogative from

securities plaintiffs.  And, indeed, it did not.  While the appointment of counsel is made subject to the approval of the court, the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff.").

Here, the Elevator Pension Fund and the Pension Fund Society have selected Labaton Sucharow and Bernstein Litowitz, highly-qualified counsel, to serve as Lead Counsel for the proposed Class.  Labaton Sucharow and Bernstein Litowitz are among the preeminent securities class action law firms in the country and have a history of jointly litigating actions resulting in significant recoveries for investors.

For example, Labaton Sucharow has significant experience in prosecuting securities class actions and has excelled as lead counsel in numerous landmark securities class actions throughout the United States on behalf of defrauded investors.  Labaton Sucharow served as a lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors, and separately secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, & ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which it served as co-lead counsel.  In addition, Labaton Sucharow was a lead counsel in *In re Countrywide Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D. Cal.), which achieved a settlement of $624 million—one of the largest securities fraud settlements arising from the financial crisis of 2007 and 2008.  Other significant examples in which courts in this Circuit have recognized Labaton Sucharow as adequate and qualified class counsel in securities class actions include: *In re Broadcom Corp. Class Action Litigation*, No. 06-cv-05036 (C.D. Cal.) (recovering $173 million for investors); and *In re Mercury Interactive Corp. Securities Litigation*, No. 05-cv-3395 (N.D. Cal.) (recovering $117.5 million for investors).  Labaton Sucharow also presently serves as lead or co-lead counsel in numerous significant investor class actions, including *In re Goldman Sachs Group, Inc. Securities Litigation*, No. 10-cv-03461 (S.D.N.Y.), among others.  *See* Uslaner Decl., Ex. E, firm resume of Labaton Sucharow.

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION   15
CASE NO. 5:18-cv-02706-LHK

Similarly, Bernstein Litowitz is among the preeminent securities class action law firms in the country.  Bernstein Litowitz served as lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-03288 (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the class. Bernstein Litowitz also served as co-lead counsel in *In re McKesson HBOC, Inc. Securities Litigation*, No. 99-cv-20743 (N.D. Cal.), in which it helped obtain a $960 million recovery from the issuer defendant—the single largest settlement of any securities class action within the courts of the Ninth Circuit—as well as $72 million from the defendant auditor and $10 million from an investment banking defendant.  More recently, Bernstein Litowitz served as lead counsel and obtained a $480 million recovery on behalf of the class in *Hefler v. Wells Fargo & Company*, No. 16-cv-5479 (N.D. Cal.).  In addition, Bernstein Litowitz obtained a plaintiffs' verdict following a four-week trial in *In re Clarent Corporation Securities Litigation*, No. 01-cv-3361 (N.D. Cal.), the second verdict in favor of investors since the 1995 passage of the PSLRA.  Other significant examples in which courts in this Circuit, including this Court, have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *In re 3Com Corp. Securities Litigation*, No. 97-cv-21083 (N.D. Cal.) (recovering $259 million for investors); *In re Allergan, Inc. Proxy Violation Securities Litigation*, No. 14-cv-02004 (C.D. Cal.) (recovering $250 million for investors); *In re Maxim Integrated Products Inc. Securities Litigation*, No. 08-cv-0832 (N.D. Cal.) (recovering $173 million for investors); and *In re Wells Fargo Mortgage-Backed Certificates Litigation*, No. 09-cv-1376 (N.D. Cal.) (Koh, J.) (recovering $125 million for investors).  *See* Uslaner Decl., Ex. F, firm resume of Bernstein Litowitz.

Moreover, not only are Labaton Sucharow and Bernstein Litowitz each well-qualified and experienced law firms in their own right, but they have a successful track record of working together cooperatively as co-lead counsel.  For example, Labaton Sucharow and Bernstein Litowitz served as co-lead counsel in several cases:  *In re Schering-Plough Corp./ENHANCE Sec. Litig.*, No. 08-cv-00397 (D.N.J.), in which they achieved a recovery of $473 million for the

class; *In re Facebook, Inc. IPO Securities and Derivative Litigation*, No. 12-md-02389 (S.D.N.Y.), which recovered $35 million for investors; and *In re Virtus Investment Partners Inc. Sec. Litig.*, No. 15-cv-01249 (S.D.N.Y.), in which investors obtained a $22 million recovery. Labaton Sucharow and Bernstein Litowitz currently serve as co-lead counsel in *In re SCANA Corporation Sec. Litig.*, No. 17-cv-02616 (D.S.C.), in which Judge Seymour denied Defendants' motions to dismiss on March 29, 2019, and the case will now proceed into discovery.

Accordingly, the Court may be assured that by granting this Motion and approving the Elevator Pension Fund's and the Pension Fund Society's selection of Labaton Sucharow and Bernstein Litowitz as Lead Counsel, the Class will receive the highest caliber of legal representation.

## CONCLUSION

For the foregoing reasons, the Elevator Pension Fund and the Pension Fund Society respectfully request that the Court: (1) appoint the Elevator Pension Fund and the Pension Fund Society as Lead Plaintiff; (2) approve their selection of Labaton Sucharow and Bernstein Litowitz as Lead Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

DATED:  June 4, 2019                              Respectfully submitted,

                                                  */s/ Jonathan D. Uslaner*

                                                  **BERNSTEIN LITOWITZ BERGER
                                                  & GROSSMANN LLP**
                                                  Jonathan D. Uslaner (Bar No. 256898)
                                                  12481 High Bluff Drive, Suite 300
                                                  San Diego, California 92130
                                                  Telephone: (858) 793-0070
                                                  Facsimile: (858) 793-032
                                                  jonathanu@blbglaw.com

                                                  – and –

                                                  Avi Josefson
                                                  Michael D. Blatchley
                                                  1251 Avenue of the Americas
                                                  New York, New York 10020
                                                  Telephone: (212) 554-1400

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION          17
CASE NO. 5:18-cv-02706-LHK

Facsimile: (212) 554-1444
avi@blbglaw.com
michaelb@blbglaw.com

*Counsel for Proposed Lead Plaintiff Toronto Transit Commission Pension Fund Society and Proposed Lead Counsel for the Class*

**LABATON SUCHAROW LLP**
Christopher J. Keller
Eric J. Belfi
Marisa N. DeMato
Francis P. McConville
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
mdemato@labaton.com
fmcconville@labaton.com

*Counsel for Proposed Lead Plaintiff National Elevator Industry Pension Fund and Proposed Lead Counsel for the Class*

**O'DONOGHUE & O'DONOGHUE LLP**
John M. McIntire
5301 Wisconsin Avenue, NW, Suite 800
Washington, DC 20015
Telephone: (202) 362-0041
Facsimile: (202) 362-2640
jmcintire@odonoghuelaw.com

*Additional Counsel for Proposed Lead Plaintiff National Elevator Industry Pension Fund*

NOTICE OF MOTION AND MOTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION   18
CASE NO. 5:18-cv-02706-LHK