1  COOLEY LLP
   KOJI F. FUKUMURA (189719)
2  (kfukumura@cooley.com)
   HEATHER M. SPEERS (305380)
3  (hspeers@cooley.com)
   DYLAN K. SCOTT (332796)
4  (dscott@cooley.com)
   10265 Science Center Drive
5  San Diego, CA 92121-1117
   Telephone:  +1 858 550 6000
6  Facsimile:   +1 858 550 6420

7  *Attorneys for Defendants Dexcom Inc., Kevin Sayer, Jereme Sylvain, and Teri Lawver*

8

9  UNITED STATES DISTRICT COURT

10  SOUTHERN DISTRICT OF CALIFORNIA

11

12  IN RE: DEXCOM, INC. CLASS ACTION SECURITIES LITIGATION

    Lead Case No. 24-cv-01485-RSH-VET

    **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS LEAD PLAINTIFF'S CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

    Ctrm:     3B, 3rd Floor
    Judge:    Honorable Robert S. Huie
    Hearing:  April 17, 2025

    PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ...................................................................................................1
II.  THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO PLEAD FALSITY WITH THE REQUISITE PARTICULARITY.................1
     A.   The Opposition Introduces Ambiguity About Which Statements Are Allegedly False and Why.................................................................1
     B.   Most Challenged Statements Are Inactionable as a Matter of Law.................................................................................................2
     C.   Plaintiff's Overall Impression Argument Is Factually Unsupported and Legally Inadequate to Plead Falsity Under the PSLRA. .................................................................................................4
     D.   No Challenged Statement Was False or Misleading in Context. .........5
     E.   No Challenged Statement Was Misleading by Omission.....................5
          1.   Defendants Are Not Asserting Truth-on-the-Market. ................5
          2.   Defendants Did Not Omit Required Disclosures. .....................6
III. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO PLEAD A STRONG INFERENCE OF SCIENTER.....................................8
IV.  CONCLUSION ....................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

## Cases

*In re Adobe Inc. Securities Litigation*,
  2025 WL 936416 (S.D.N.Y. Mar. 27, 2025) ........................................................ 3

*In re AnaptysBio, Inc.*,
  2021 WL 4267413 (S.D. Cal. Sept. 20, 2021) ..................................................... 7

*Axar Master Fund, Ltd. v. Bedford*,
  308 F. Supp. 3d 743 (S.D.N.Y. 2018) ................................................................. 3

*Bondali v. YUM! Brands, Inc.*,
  620 F. App'x 483 (6th Cir. 2015) ........................................................................ 4

*Chen v. China Green Agriculture Inc.*,
  2021 WL 4481045 (S.D.N.Y. Sept. 30, 2021) .................................................. 10

*In re Cloudera, Inc.*,
  121 F.4th 1180 (9th Cir. 2024) ....................................................................... 1, 4

*Eminence Capital LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ............................................................................ 1

*In re Fairway Group Holdings Corp. Securities Litigation*,
  2015 WL 4931357 (S.D.N.Y. Aug. 19, 2015) .................................................... 3

*Galestan v. OneMain Holdings, Inc.*,
  348 F. Supp. 3d 282 (S.D.N.Y. 2018) ................................................................. 2

*In re Golden Heaven Group Holdings Ltd. Securities Litigation*,
  2025 WL 714171 (C.D. Cal. Mar. 3, 2025) ........................................................ 2

*In re Green Dot Corp. Securities Litigation*,
  2024 WL 1356253 (C.D. Cal. Mar. 29, 2024) .................................................... 2

*Hadian v. Fate Therapeutics, Inc.*,
  2024 WL 4246083 (S.D. Cal. Sept. 19, 2024) ............................................... 7, 10

*Hong v. Extreme Networks, Inc.*,
  2017 WL 1508991 (N.D. Cal. Apr. 27, 2017) .................................................. 10

*In re iPass, Inc. Securities Litigation*,
  2006 WL 496046 (N.D. Cal. Feb. 28, 2006) ....................................................... 4

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Janbay v. Canadian Solar, Inc.*,
   2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ........................................................ 8

*Karinski v. Stamps.com, Inc.*,
   2020 WL 281716 (C.D. Cal. Jan. 17, 2020) ........................................................... 2

*Ley v. Visteon Corp.*,
   543 F.3d 801 (6th Cir. 2008), *abrogated on other grounds by*
   *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011) ............................ 6, 7

*Lipton v. Pathogenesis Corp.*,
   284 F.3d 1027 (9th Cir. 2002) ................................................................................ 9

*Lopes v. Fitbit, Inc.*,
   2020 WL 1465932 (N.D. Cal. Mar. 23, 2020) ....................................................... 9

*Macomb County. Employees' Retirement System v. Align Technology, Inc.*,
   39 F.4th 1092 (9th Cir. 2022) ................................................................................. 2

*Markette v. XOMA Corp.*,
   2017 WL 4310759 (N.D. Cal. Sept. 28, 2017) ....................................................... 3

*Menon v. Maxeon Solar Technologies, Ltd.*,
   2025 WL 1223559 (N.D. Cal. Apr. 28, 2025) ........................................................ 7

*NECA-IBEW Health and Welfare Fund v. Pitney Bowes, Inc.*,
   2013 WL 1188050 (D. Conn. Mar. 23, 2013) ........................................................ 4

*In re NextCard, Inc. Securities Litigation*,
   2005 WL 6342406 (N.D. Cal. Feb. 7, 2005) .......................................................... 5

*Nguyen v. Endologix, Inc.*,
   962 F.3d 405 (9th Cir. 2020) .................................................................................. 1

*In re Seadrill Ltd. Securities Litigation*,
   2016 WL 3461311 (S.D.N.Y. June 20, 2016) ........................................................ 6

*Oklahoma Firefighters Pension and Retirement System v. Xerox Corp.*,
   300 F. Supp. 3d 551 (S.D.N.Y. 2018) ................................................................ 5, 8

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iii

**REPLY ISO DEFS' MOTION TO DISMISS**
**CASE NO. 24-CV-01485-RSH-VET**

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Osher v. JNI Corp.*,
  302 F. Supp. 2d 1145 (S.D. Cal. 2003) ............................................................... 5

*In re Pivotal Securities Litigation*,
  2020 WL 4193384 (N.D. Cal. Jul. 21, 2020) ...................................................... 3

*Prodanova v. H.C. Wainwright & Company, LLC*,
  993 F.3d 1097 (9th Cir. 2021) ............................................................................ 8

*Shnayder v. Allbirds, Inc.*,
  2024 WL 2125598 (N.D. Cal. May 10, 2024) .................................................... 2

*In re Splash Technology Holdings, Inc. Securities Litigation*,
  2000 WL 1727377 (N.D. Cal. Sept. 29, 2000) .................................................... 3

*Western Pennsylvania Electrical Employees Pension Fund v. Mentor Graphics, Corp.*,
  2018 WL 4524107 (D. Or. May 29, 2018) ......................................................... 9

*In re Wet Seal, Inc. Securities Litigation*,
  518 F. Supp. 2d 1148 (C.D. Cal. 2007) .............................................................. 4

*Zhou v. Desktop Metal, Inc.*,
  120 F.4th 278 (1st Cir. 2024) ............................................................................. 4

**Statutes**

15 U.S.C.
  §78u-4(b)(1) .................................................................................................. 1, 4
  §78u-4(b)(2)(A) ................................................................................................. 8
  §78u-4(b)(3)(A) ................................................................................................. 4

## I. INTRODUCTION

Securities fraud claims are governed by the PSLRA, which sets a uniquely high pleading bar, requiring "an unprecedented degree of specificity and detail." *Eminence Cap. v. Aspeon*, 316 F.3d 1048, 1052 (9th Cir. 2003). The standards for pleading falsity and scienter are "exacting," *In re Cloudera*, 121 F.4th 1180, 1187 (9th Cir. 2024), "present[ing] no small hurdle for the securities fraud plaintiff," *Nguyen v. Endologix*, 962 F.3d 405, 414 (9th Cir. 2020).

Plaintiff's Opposition attempts to downplay these standards. Instead of identifying particularized facts to support a statement-by-statement falsity analysis, Plaintiff takes snippets of statements across the class period and intersperses its own narrative to manufacture an overarching "impression" that is pure fiction. Plaintiff also accuses Defendants of taking statements out of context but fails to identify a single example where omitted language changed the meaning. And where Defendants provide *additional* context, Plaintiff calls it extraneous and tells the Court to disregard it. But the source documents Plaintiff used to draft its Complaint are anything but extraneous. Plaintiff cannot cherry-pick content from them to wield as a sword and then prevent Defendants from using those same documents as a shield. Finally, the Opposition repeatedly mischaracterizes Defendants' arguments, leaves others unaddressed, and makes sweeping conclusions with no legal support.

In short, it underscores Plaintiff's failure to meet the PSLRA's distinctively high pleading bar for falsity and scienter. Defendants' Motion should be granted.

## II.   THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO PLEAD FALSITY WITH THE REQUISITE PARTICULARITY.

### A.   The Opposition Introduces Ambiguity About Which Statements Are Allegedly False and Why.

The Complaint cites 14 disclosures—several spanning multiple paragraphs—that allegedly contain false or misleading statements. Given the PSLRA's mandate to "*specify each statement* alleged to have been misleading" ***and*** the "reasons *why* the statement is misleading," 15 U.S.C. §78u-4(b)(1), Defendants presumed Plaintiff

meant to challenge only those statements within the 14 disclosures for which the Complaint provided a corresponding reason for falsity. MTD 11 n.2 ("If Plaintiff means to challenge other portions, it fails because it does not state the reasons why such portions were false or misleading."). Plaintiff now suggests it challenges other statements within those disclosures, Opp. 12, but fails to identify *which* other statements, or *why* those statements are allegedly misleading. This lack of clarity renders the Complaint puzzle-pled: an independent basis for dismissal. *See Shnayder v. Allbirds*, 2024 WL 2125598, at *1 (N.D. Cal. May 10, 2024) (dismissing complaint because "[t]he parties' briefing reflects a lack of clarity as to which statements, or portions of statements, are allegedly false or misleading").[1]

### B. Most Challenged Statements Are Inactionable as a Matter of Law.

Eleven challenged statements are inactionable puffery and opinion. MTD 7-8; App. A. Of those, two are also protected under the PSLRA safe harbor for forward-looking statements. MTD 9-11; App. A. Each basis supports dismissal.

**Puffery.** Plaintiff does not dispute that courts have dismissed as puffery statements like those challenged here.[2] Instead, Plaintiff claims Defendants' puffery analysis omitted "key portions" of the challenged statements that "strip them of their context" and supposedly undercut the puffery classification. Opp. 13-14. But Plaintiff fails to explain how more "context" would transform them from vague to concrete.[3] *E.g., Macomb Cnty. Emps.' Ret. Sys. v. Align Tech.*, 39 F.4th 1092, 1099 (9th Cir.

---

[1] Appendices A and B were meant to avoid this ambiguity. Plaintiff's attacks on them, Opp. 6 n.3, are baseless. *See* Defendants' RJN Reply.

[2] Plaintiff cites cases challenging similar statements, but many do not analyze whether those specific statements are puffery. *E.g., In re Golden Heaven Grp. Sec. Litig.*, 2025 WL 714171, at *6 (C.D. Cal. Mar. 3, 2025) ("well positioned"); *In re Green Dot Corp. Sec. Litig.*, 2024 WL 1356253, at *4 (C.D. Cal. Mar. 29, 2024) ("gain traction" and "continue to do extremely well"); *Galestan v. OneMain*, 348 F. Supp. 3d 282, 304 (S.D.N.Y. 2018) ("[w]e remain comfortable with…guidance").

[3] Plaintiff's own case—*Karinski v. Stamps.com*, 2020 WL 281716, at *11 (C.D. Cal. Jan. 17, 2020)—is instructive. There, the court noted that while normally the statement that USPS was "very happy with the relationship" would be inactionable puffery, the specific allegations about USPS investigating Stamps.com's reseller business changed the analysis. *Id.* No similar allegations are made here.

1  2022) ("tremendous growth" and "great growth market" inactionable despite
2  "context" showing growth rate had "diminished").

3  **Opinion.** Plaintiff also claims none of the challenged statements are opinions
4  because they do not begin with "I believe" or "I think." Opp. 15-16. Plaintiff
5  misstates the law: "statements of opinion need not be qualified with the language 'I
6  think' or 'I believe' to constitute mere opinions." *In re Adobe Sec. Litig.*, 2025 WL
7  936416, at *10 (S.D.N.Y. Mar. 27, 2025); *see Axar Master Fund v. Bedford*, 308 F.
8  Supp. 3d 743, 755 (S.D.N.Y. 2018) ("Plaintiffs appear to be under the mistaken
9  impression that statements that are not tempered in any way as expressions of belief
10 cannot constitute statements of opinion. But *Omnicare* may not be construed so
11 simplistically."). The eleven statements are opinions because they "inherently reflect
12 the speaker's assessment of and judgment about the underlying circumstances."
13 *Markette v. XOMA*, 2017 WL 4310759, at *4 (N.D. Cal. Sept. 28, 2017).[4] And
14 Plaintiff's one-sentence conclusion that Defendants "omitted material facts going to
15 the basis of the opinion," Opp. 16, fails to rebut Defendants' arguments, MTD 8-9.

16 **Forward-looking.** Plaintiff claims Statements 5 and 14 are not forward-
17 looking because they concern Dexcom's current position and performance. Opp. 16-
18 17. Plaintiff is wrong. "A *present-tense* statement can qualify as a forward-looking
19 statement as long as the truth or falsity of the statement cannot be discerned until
20 some point in time after the statement is made." *In re Splash Tech. Sec. Litig.*, 2000
21 WL 1727377, at *6 (N.D. Cal. Sept. 29, 2000). Statement 5 declares Dexcom's goal
22 to "extend [its] leadership" and optimism that it was "well-positioned" to do so, the
23 truth of which can only be tested in the future. ¶75. Statement 14 reaffirms "full year
24 guidance," noting it was "happy" with it and "comfortable" with analysts' forecasts.

---

[4] Courts routinely find similar statements to be opinions. *E.g.*, *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *14 (N.D. Cal. Jul. 21, 2020) ("pleased with our outlook," "feeling good" about pipeline, and "comfortable with the current expectations"); *In re Fairway Grp. Sec. Litig.*, 2015 WL 4931357, at *19-20 (S.D.N.Y. Aug. 19, 2015) ("strong infrastructure" that "gave it the ability to grow"); *Markette*, 2017 WL 4310759, at *4 ("developments are encouraging").

¶93. Both are forward-looking. *E.g.*, *In re Wet Seal Sec. Litig.*, 518 F. Supp. 2d 1148, 1167-69 (C.D. Cal. 2007) ("position us well"); *NECA-IBEW v. Pitney Bowes*, 2013 WL 1188050, at *17 (D. Conn. Mar. 23, 2013) ("comfortable with our guidance").

Next, Plaintiff insists these forward-looking statements are not protected by either prong of the safe harbor. As to the accompanying cautionary language, *see* MTD 9-10, Plaintiff declares it "meaningless" without analysis, Opp. 17. It simply concludes Defendants did not warn of "specific risks from the unprecedented April 2023 CGM coverage expansion," but does not explain what those risks were or how they supposedly differ from the risks disclosed. *Id.* As to "actual knowledge," Plaintiff misstates the standard, equating it with scienter, *id.*, when in fact the standard is "***stricter*** than the standard for establishing scienter." *In re iPass Sec. Litig.*, 2006 WL 496046, at *8 (N.D. Cal. Feb. 28, 2006); MTD 10.

### C. Plaintiff's Overall Impression Argument Is Factually Unsupported and Legally Inadequate to Plead Falsity Under the PSLRA.

An allegedly misleading "statement" is the building block of a securities fraud case. Indeed, the PSLRA mandates that Plaintiff identify "each statement" alleged to have been misleading and the reason it is misleading – on pain of dismissal. 15 U.S.C. §78u-4(b)(1), (b)(3)(A). Instead of isolating and addressing each challenged statement, Plaintiff now asks the Court to look instead to the *overall impression* purportedly gleaned from 14 statements made across the 15-month class period without focusing on or analyzing the actual words said. Opp. 3-4, 10. There is no legal basis for this approach. *In re Cloudera*, 121 F.4th at 1187-88 (noting import of analyzing specific words used). Thus, "for falsity, the Court must do a statement-by-statement analysis." MTD 7; *Zhou v. Desktop Metal*, 120 F.4th 278, 293 (1st Cir. 2024) (same); *Bondali v. YUM! Brands*, 620 F. App'x 483, 491 (6th Cir. 2015) (Courts "do *not* forego a statement-by-statement analysis of objective falsity in favor of analyzing the overall impression made by a set of statements.").

Under that proper analysis, Plaintiff's envisaged "impression" is revealed as

mere fiction. Plaintiff claims the challenged statements collectively gave the impression Dexcom had *surpassed* Abbott's dominating lead in basal market share. Opp. 3-5. But Plaintiff does not, and cannot, quote a single challenged statement making that claim. In fact, no challenged statement even mentions Abbott.[5] *See Okla. Firefighters Pension v. Xerox*, 300 F. Supp. 3d 551, 572 (S.D.N.Y. 2018) ("[T]he Court focuses on the statements themselves, not plaintiff's recasting of them.").

### D. No Challenged Statement Was False or Misleading in Context.

Plaintiff attacks Defendants' statement-by-statement analysis, MTD 11-16, claiming it "distort[s] the record." Opp. 11. Plaintiff provides only three examples, which it complains: (i) omitted the analyst question, and/or (ii) modified emphasis to identify those portions Defendants understood Plaintiff was challenging. *Id.* 12; MTD 11 n.2. But Plaintiff never explains how either of those changes matters, much less renders Defendants' arguments and legal authority invalid. MTD 11-16. Plaintiff's ***conclusion*** that Defendants offer implausible inferences is no substitute for actual analysis and legal support; neither of which can be found in the Opposition. *See In re NextCard Sec. Litig.*, 2005 WL 6342406, at *7 (N.D. Cal. Feb. 7, 2005) ("It is Plaintiffs' burden to connect the dots by clearly alleging particularized facts demonstrating why each statement was false or misleading when made.").

### E. No Challenged Statement Was Misleading by Omission.

Plaintiff's theory of falsity centers on alleged omissions. Opp. 8-11. Defendants analyzed those omissions under seven categories. MTD 16-20. Plaintiff makes several arguments in response; none has merit.

#### 1. Defendants Are Not Asserting Truth-on-the-Market.

Plaintiff mischaracterizes Defendants' arguments as "nothing more than a premature truth-on-the-market defense." Opp. 6. Plaintiff is wrong. Defendants cite the ***very same*** documents Plaintiff itself used to allege falsity. Plaintiff cannot wield

---

[5] Not to mention that Plaintiff itself admits the market knew—and frequently reported on—Abbott's leading market share in basal. *See Osher v. JNI Corp.*, 302 F. Supp. 2d 1145, 1159 (S.D. Cal. 2003) (disregarding inconsistent allegations).

the documents as a sword and then cry foul when Defendants use them as a shield. The point is ***there was no omission because Plaintiff's own allegations show the facts were disclosed***. MTD 16-20; *In re Seadrill Sec. Litig.*, 2016 WL 3461311, at *9–10 (S.D.N.Y. June 20, 2016) (observing "[t]here can be no omission" where "the Complaint and documents integral to [it] show" that "the allegedly omitted facts are disclosed").

### 2. Defendants Did Not Omit Required Disclosures.

**<u>Abbott's pricing, cash pay program, marketing.</u>** The Opposition concedes the facts about Abbott's pricing, cash pay, and marketing were "known" to the market. Opp. 8. Plaintiff, however, demands more; it claims Defendants were obligated to disclose not only the pertinent *facts* (as they did) but also convey the *conclusions* Plaintiff believes should be drawn from those facts—in this case, that these "known factors" presented a "significant competitive impediment" for Dexcom. *Id.* The securities laws require no such thing. *See Ley v. Visteon Corp.*, 543 F.3d 801, 808 (6th Cir. 2008) ("The federal securities laws do not ordain that the issuer of a security compare itself in myriad ways to its competitors, whether favorably or unfavorably."), *abrogated on other grounds by Matrixx Initiatives v. Siracusano*, 563 U.S. 27, 48-50 (2011).

**<u>PCP focus.</u>** Dexcom also disclosed limitations in its PCP reach. MTD 16-17 (citing disclosures in Sept. 2022, April 2023, July 2023, and Nov. 2023). Plaintiff addresses only the April 2023 statements—*i.e.*, admitting "we do have some work to do in the PCP community," and "[w]e have a lot of prescribers to go…particularly as you look at the basal opportunity we have ahead." Opp. 8. Plaintiff claims the former was inadequate because it was "framed as educational, not structural," but provides no clarity as to what that means or why that framing renders the disclosure inadequate. *Id.* As to the latter, Plaintiff insists it was "nullified by [Sayer's] assurance that Dexcom had already 'structured our sales force…to, in fact, go after' them." *Id.* Plaintiff fails to explain why this "nullified" anything, nor can Defendants

fathom how it could as there is no inconsistency between those statements.

**Dexcom's sales force.** Contrary to Plaintiff's assertion, Defendants' disclosures about Dexcom's sales force were not confined to "2021 and 2022." Opp. 8. In June 2023 and February 2024, Defendants disclosed plans to "expand" "the sales force." Ex. 10 at 11; Ex. 12 at 10. And in April 2024, Sayer addressed the "repositioning" implemented earlier that month. Ex. 13 at 8; *In re AnaptysBio,* 2021 WL 4267413, at *5 (S.D. Cal. Sept. 20, 2021) ("Omission theories are not viable when the Defendants clearly disclosed material information to investors."); *Menon v. Maxeon Solar Techs.*, 2025 WL 1223559, at *14 (N.D. Cal. Apr. 28, 2025) ("[W]hen making a voluntary disclosure, a company that reveals one fact is not required to reveal all others that, too, would be interesting, market-wise; instead, it is required only to reveal the facts necessary to make the existing statement not so incomplete as to mislead."). Regardless, Plaintiff's only gripe is that Defendants did not express doubt about the "sufficiency" and "ability" of Dexcom's sales force. Opp. 8. As discussed above, no such disclosure was required. *See Ley*, 543 F.3d at 808.

**DME relationships.** As for DMEs, the Opposition claims the "critical omission" was not that Dexcom had shifted from DME to pharmacy—Plaintiff admits that was disclosed—but rather that "this shift had alienated vital DME partners." Opp. 9. Plaintiff, however, identifies no contemporaneous facts to support the conclusory allegation that DME relationships were deteriorating *during the class period. See Hadian v. Fate Therapeutics*, 2024 WL 4246083, at *32 (S.D. Cal. Sept. 19, 2024) (finding allegations were "mere fraud by hindsight" as "[e]ven the most fruitful relationships can encounter bumps along the road").

**Basal market share.** Plaintiff challenges several statements that Dexcom was "taking share" in the basal space. ¶¶79, 87; *see also* ¶¶83, 85, 89 (similar). As demonstrated in Defendants' opening brief, Plaintiff's own allegations show this was true. MTD 20. So, Plaintiff pivots to claiming these admittedly accurate statements were "half-truths," rather than outright falsehoods, because "Dexcom gained no

*meaningful* share from Abbott." Opp. 10. But Plaintiff's own subjective assessment of "meaningful" is irrelevant; Dexcom never claimed it took "meaningful" share. Plaintiff cannot simply rewrite Defendants' statements to fit its narrative of falsity. *See Xerox*, 300 F. Supp. 3d at 572. And despite insisting "Defendants' statements about market share are precisely the type of misleading 'half-truths' that courts find actionable," Plaintiff fails to cite a single case supporting that assertion. Opp. 11.

### III. THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO PLEAD A STRONG INFERENCE OF SCIENTER.

"The strong inference standard presents no small hurdle," demanding "*specific facts* indicating no less than a degree of recklessness that strongly suggests actual intent." *Prodanova v. H.C. Wainwright*, 993 F.3d 1097, 1106, 1108 (9th Cir. 2021). Such allegations are required for *each alleged misstatement*. 15 U.S.C. §78u-4(b)(2)(A) (noting requirement applies to "each act or omission alleged"); *Janbay v. Canadian Solar*, 2012 WL 1080306, at *10 (S.D.N.Y. Mar. 30, 2012) ("The PSLRA requires the pleading of particularized facts that give rise to a strong inference that each defendant made each challenged statement with scienter."). Viewed individually and holistically, Plaintiff's scienter allegations fail to meet this standard.

**Core operations.** Plaintiff calls it "absurd" that Defendants "would not be aware of deficiencies in the Company's sales infrastructure that were causing significant downward trends in sales in this new market and the massive loss of market share to Abbott." Opp. 18. But the Complaint shows there was no "loss" of basal market share to Abbott. Abbott began the class period with 90% basal share and by early 2024, was winning only 70% of new scripts. ¶¶32, 68(d). Thus, by Plaintiff's own account, Dexcom was *taking* basal market share from Abbott, not losing it. MTD 20. Plus, the alleged downward sales trend started in Q2'24, ¶95, and ***Plaintiff pleads no facts that Defendants were aware of any "trend" when they spoke that quarter***, which is fatal to Plaintiff's argument. MTD 21-22 & n.7.

**Access to data.** Plaintiff insists that Defendants admitted to tracking data that

purportedly undermined their public statements. Opp. 18-19. Yet, Plaintiff fails to identify any specific data that was inconsistent with any challenged statement. That failure is fatal: to satisfy the PSLRA, Plaintiff must "**detail with particularity** the **contents** of such data." *Lipton v. Pathogenesis*, 284 F.3d 1027, 1036 (9th Cir. 2002).[6] This is particularly critical here because while Defendants admitted to having real-time access to *some* data, they expressly stated that there was a "4- to 6-week delay" on DME sales data. MTD 23. Plaintiff does not allege any fact to the contrary. *Id.* 22-23 & n.8. Nor does it identify other data contradicting Defendants' statements.

**_Post-hoc_ "admissions."** Plaintiff attempts to recast innocuous, common-sense observations as revelations of fraud. But labeling them as such does not make them so. *Lopes v. Fitbit*, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020) ("An after-the-fact statement does not constitute an admission unless it contradicts the substance of an earlier statement and essentially states 'I knew it all along.'"). In September 2024, Sayer explained that "back in 2023," Dexcom decided to broaden its sales force because it had more success in offices where it had salespeople. Opp. 20 (citing ¶¶122-123). There is nothing revelatory about that statement. Dexcom conveyed the same message during the class period. *E.g.*, ¶83 ("broader"); MTD 22; *see W. Pa. Elec. Emps. Pension Fund v. Mentor Graphics*, 2018 WL 4524107, at *21 (D. Or. May 29, 2018) (no scienter based on "admissions" that are not "inconsistent" with challenged statements). Plaintiff also points to Sylvain's July 2024 statement that the salesforce reorganization (in April 2024) led "to a lot of disruption, particularly at the beginning of the quarter." Opp. 20-21 (citing ¶¶119-120). But Plaintiff cites no fact to suggest any Defendant knew about the impact of the disruption in real time.

**Temporal proximity**. Plaintiff claims the "stark contrast" between the April and June 2024 guidance statements and the July 2024 revision to that guidance supports scienter because Defendants purportedly failed to identify any intervening

---

[6] Plaintiff cites no support for the notion it need not plead specific details about the contents of the data because it alleges more than mere access. Opp. 19 n.16.

event justifying the change. Opp. 22 (citing cases with no intervening event). Plaintiff is mistaken; Defendants identified "Dexcom's receipt of complete DME data" as an intervening event. MTD 22. Thus, the timing here does not support scienter.[7]

**Executive departure**. Plaintiff concedes that an executive departure cannot support scienter unless "accompanied by suspicious circumstances." Opp. 22-23. But all Plaintiff points to is Lawver's role within the sales organization and her departure three months after Dexcom lowered guidance. *Id.* 22. Critically absent are any facts to suggest "wrongdoing or fraudulent activity associated" with her departure.[8] *Hong v. Extreme Networks*, 2017 WL 1508991, at *24 (N.D. Cal. Apr. 27, 2017).

**Motive.** None of Plaintiff's motive allegations adds to an inference of scienter.

*First*, Plaintiff claims Defendants lied to show Dexcom was capturing basal market share. Opp. 23. But Plaintiff's own allegations prove Dexcom *did* capture basal market share. *Id.* 10; MTD 20. Regardless, the "mere motive to maintain the appearance of corporate profitability" is not cognizable. *Chen v. China Green Agric.*, 2021 WL 4481045, at *5 (S.D.N.Y. Sept. 30, 2021); *see* MTD 23-24.

*Second*, Plaintiff points to Defendants' incentive compensation based, in part, on Dexcom's stock price. Opp. 24. This, too, is not cognizable. MTD 24. "[I]f the existence of performance-based compensation…were enough to establish scienter, [it] could be found for almost any executive." *Hadian*, 2024 WL 4246083, at *38.

*Third*, Plaintiff insists Defendants' stock sales were "unusual or suspicious." Opp. 23-24. But Plaintiff simply regurgitates its allegations without addressing Defendants' arguments. MTD 24-25. Plaintiff also claims Defendants raise factual disputes about the existence of 10b5-1 plans. Opp. 24. But there can be no factual dispute when Plaintiff admits the sales were made pursuant to such plans. ¶136.

## IV.   CONCLUSION

The Court should dismiss the Complaint with prejudice.

---

[7] Additionally, the lag here is too long to support scienter. *See* MTD 23.
[8] Plaintiff claims that Lawver's alleged misstatements qualify as "additional evidence of her wrongdoing," Opp. 22 n.20, but cites no case supporting such rationale.

| | | |
|---|---|---|
| Dated: | May 5, 2025 | COOLEY LLP |
| | | By: */s/ Koji F. Fukumura* |
| | | Koji F. Fukumura |
| | | *Attorneys for Defendants Dexcom Inc., Kevin Sayer, Jereme Sylvain, and Teri Lawver* |