UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: DEXCOM, INC. CLASS ACTION SECURITIES LITIGATION | Case No.: 24-cv-1485-RSH-VET<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS LEAD PLAINTIFF'S CONSOLIDATED COMPLAINT**<br><br>[ECF No. 29] |

Before the Court is a motion to dismiss, filed by defendants Dexcom Inc. ("Dexcom"), Kevin Sayer ("Sayer"), Jereme Sylvain ("Sylvain"), and Teri Lawver ("Lawver"). ECF No. 29. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the motion presented appropriate for resolution without oral argument. For the reasons below, the Court grants Defendants' motion.

**I.    BACKGROUND**

    **A.    Lead Plaintiff's Allegations**

Lead Plaintiff National Elevator Industry Pension Fund brings this putative securities class action against Dexcom and its current and former senior executives, Sayer (Chief Executive Officer), Sylvain (Chief Financial Officer) and Lawver (former Chief

Commercial Officer), on behalf of all persons or entities who purchased or otherwise acquired Dexcom securities between April 28, 2023 and July 25, 2024 ("Class Period"). Lead Plaintiff is a multiemployer defined pension plan that purchased a significant number of shares of Dexcom stock during the Class Period. Plaintiff's Consolidated Complaint ("Compl.") alleges as follows.

### 1. CGMs

Dexcom is a medical device company headquartered in San Diego that designs, develops, and sells continuous glucose monitoring ("CGM") devices. Compl. ¶¶ 2, 18. CGM devices utilize sensors inserted just below a user's skin to provide regular glucose readings to a compatible mobile device or dedicated monitor. *Id.* ¶ 2. The devices assist individuals with diabetes in managing their blood glucose levels. *Id.* Of relevance here, CGMs are used by persons falling within different categories: (1) individuals with Type 1 diabetes; (2) individuals with Type 2 diabetes that require intensive insulin treatment; (3) individuals with Type 2 diabetes who use basal insulin, a long-acting insulin typically delivered once a day; (4) individuals with Type 2 diabetes who do not use insulin therapy; (5) individuals with prediabetes; and (6) others without diabetes. *Id.* ¶ 30.

### 2. Insulin Intensive versus Type 2 Basal Market

The CGM market space is dominated by Dexcom and its competitor, Abbott Laboratories ("Abbott"). *Id.* ¶ 4. Dexcom's most current CGM system is known as the "G7" while Abbott's is the "FreeStyle Libre 3." *Id.* The market is influenced by several factors, including the prescribers of CGMs, and fulfillment channels. *Id.* ¶¶ 34–37. Diabetes patients are generally treated by endocrinologists, primary care physicians, or through diabetes clinics. *Id.* ¶ 34. After prescription, CGMs are then sold through two primary channels: pharmacies and durable medical equipment suppliers ("DMEs"). *Id.* ¶ 37. Type 2 Basal patients are more commonly treated by primary care physicians who were less familiar with DMEs. *Id.* ¶¶ 36, 37. The CGM market is also influenced by the availability of reimbursement from government health care programs. *Id.* ¶ 38. Prior to

2023, while Medicare provided coverage for CGMs for Type 1 and Type 2 insulin intensive patients, it did not cover CGMs for Type 2 Basal patients. *Id.* ¶ 39.

Historically, Dexcom has focused on its "heritage" business of providing CGMs to Type 1 and Type 2 insulin intensive patients. *Id.* ¶ 42. In contrast, Abbott has been ahead of Dexcom in providing CGMs to Type 2 Basal patients. *Id.* ¶¶ 43–44. This is largely attributable to two advantages Abbott has possessed. First, Abbott has a strong presence with primary care physicians due to its wide portfolio of consumer healthcare products. *Id.* ¶ 6. Second, despite the lack of Medicare coverage, Abbott targeted Type 2 Basal patients by making its CGMs more affordable to users who could pay out-of-pocket. *Id.* ¶¶ 6, 41. It did so by selling CGMs at a lower price and offering a rebate program. *Id.* Consequently, prior to April 2023, Abbott held a significant lead in market share over Dexcom in the Type 2 Basal Market. *Id.* ¶ 44.

### 3. *Dexcom Promotes Opportunities in Type 2 Basal Market*

In April 2023, the Centers for Medicare & Medicaid Services ("CMS")[1] expanded medical coverage for CGMs to Type 2 Basal patients. *Id.* ¶¶ 7, 45. In response, Dexcom began to promote this expansion as an opportunity for the company to capture a greater share of the Type 2 Basal market, emphasizing to investors Dexcom's expanded sales force and strong relationships with DMEs. *Id.* ¶¶ 7, 47.

Unbeknownst to investors, however, Dexcom allegedly faced three obstacles negatively impacting its ability to capture market share. *Id.* ¶¶ 8, 48. First, Dexcom's sales force lacked established relationships with primary care physicians. *Id.* ¶ 48. Second, Dexcom lacked a similar rebate program to Abbott's prior to the Medicare expansion and had therefore not achieved the market penetration and brand loyalty Abbott possessed. *Id.* Finally, Dexcom's transition to using pharmacies as its primary fulfillment channel rather

---

[1] CMS is the federal agency that administers the federal Medicare and Medicaid program. *See* https://www.usa.gov/agencies/centers-for-medicare-and-medicaid-services (last accessed May 14, 2025).

than DMEs hindered its ability to compete. *Id.* ¶¶ 37, 48. These disadvantages caused Dexcom to lag behind Abbott in the Type 2 Basal market for the remainder of 2023. *Id.* ¶ 50. According to Plaintiff, Dexcom purportedly hid these disadvantages to investors, instead painting a picture of early success. *Id.* ¶¶ 50–53.

### 4. Dexcom Expands and Reorganizes Sales Force

In late 2023, after consistently losing ground to Abbott, Dexcom expanded and reorganized its sales force. *Id.* ¶ 54. At the same time, however, Dexcom continued to put forward a positive message as to its performance in the Type 2 Basal market. *Id.* ¶¶ 54–56. On April 25, 2024, during an earnings call, Dexcom raised the midpoint of its revenue guidance. *Id.* ¶ 57. At the same time, Defendants discussed the sales force expansion Dexcom had undertaken and continued to claim they were "taking share" in the Type 2 Basal market. *Id.* ¶¶ 58–59. On June 5, 2025, during a conference, Defendants stated they were "happy" with their full year revenue guidance. *Id.* ¶ 62.

### 5. Decline in Dexcom Stock Price

On July 25, 2024, Dexcom reduced its full-year revenue guidance by $300 million. *Id.* ¶ 12. In contrast to their earlier statements, Defendants conceded Dexcom was "not doing wonderful in the basal space" and its sales force expansion was a reactive move to stem loss in market share. *Id.* ¶ 64. The news caused Dexcom's stock price to drop by more than 40%. *Id.* ¶ 12.

**B.    Procedural Background**

This consolidated action combines three securities class actions against Defendants: *Alonzo v. Dexcom Inc., et al.*, 24cv1485-RSH-VET, *Oakland County Employees' Retirement Systems et al. v. Dexcom Inc., et al.*, 24cv1804-RSH-VET and *Carnes v. Dexcom Inc., et al.*, 24cv1809-RSH-VET ("Related Actions").

On December 13, 2024, the Court consolidated the Related Actions and appointed the National Elevator Industry Pension Fund as Lead Plaintiff and Robbins Geller as Lead Counsel pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"). ECF No. 19 at 15–16.

On January 27, 2025, pursuant to the Court's direction, Lead Plaintiff filed a Consolidated Complaint—the operative pleading in this case. ECF No. 27. The Consolidated Complaint asserts claims for: (1) violation of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder; and (2) violation of § 20(a) of the Exchange Act. Compl. ¶¶ 170–185. On March 13, 2024, the Defendants filed the instant motion to dismiss. ECF No. 29. Plaintiff filed an opposition, and Defendants filed a reply. ECF Nos. 32; 34.

## II. LEGAL STANDARD

Securities fraud complaints, like this one, "face heightened pleading requirements." *Okla. Firefighters Pension & Ret. Sys. v. Nektar Therapeutics (In re Nektar Therapeutics Sec. Litig.)*, 34 F.4th 828, 835 (9th Cir. 2022). At the pleading stage, a complaint stating claims "under § 10(b) and Rule 10b-5 must satisfy the dual pleading requisites of Federal Rule of Civil Procedure 9(b) and the PSLRA." *Nat'l Elevator Indus. Pension Fund v. VeriFone Holdings, Inc. (In re VeriFone Holdings, Inc. Sec. Litig.)*, 704 F.3d 694, 701 (9th Cir. 2012). "These requirements present no small hurdle for the securities fraud plaintiff." *Id.*; *see Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 765 (9th Cir. 2023) ("[T]he PSLRA imposes formidable pleading requirements to properly state a claim and avoid dismissal under Rule 12(b)(6).") (internal quotation marks omitted).

## III. ANALYSIS

Plaintiff alleges Defendants made fourteen false and misleading statements between April 27, 2023 and June 5, 2024 in violation of § 10(b) of the Exchange Act and Rule 10b-5. Compl. ¶¶ 67–104. Each "statement" consists of a paragraph or multiple paragraphs of text with select portions bolded and italicized. Compl. ¶¶ 67, 69, 71, 73, 75, 77, 79, 81, 83, 85, 89, 91, 93. Defendant contends Plaintiff's Consolidated Complaint should be dismissed as it is unclear which specific statements Plaintiff alleges are false and misleading. ECF No. 34 at 6–7. The Court agrees.

"In the securities fraud context, the term 'puzzle pleading' refers to a pleading that requires a defendant and the court to 'match up' the statements that form the basis of the

1 plaintiff's claims with the reasons why those statements are misleading." *In re Cisco Sys. Inc. Sec. Litig.*, No. C 11-1568 SBA, 2013 WL 1402788, at *5 (N.D. Cal. Mar. 29, 2013). "[P]uzzle pleadings fail to set forth a short and plain statement of their claims in violation of Rule 8(a), to make each allegation simple, concise and direct in violation of Rule 8 and to fulfill the more exacting pleading requirements of the Private Securities Litigation Reform Act of 1995 (PSLRA) for violations of the Exchange Act." *Primo v. Pac. Biosciences of Cal., Inc.*, 940 F. Supp. 2d 1105, 1112 (N.D. Cal. 2013).

Here, Plaintiff's Consolidated Complaint does not make clear which "statements" it alleges are false and misleading. As one example, Plaintiff challenges a statement made by Sylvain on June 7, 2023, enumerated in the Consolidated Complaint as Statement No. 3, in response to an analyst question as to whether Dexcom "ha[s] the capacity to bring on a significant number of those [Type 2 Basal] patients if you haven't maybe added reps in a period of time." Compl ¶ 71.

Sylvain answered:

> Yes. So great question. And so far, I'll tell you anecdotally, it's gone very well. There's been a lot of interest in it. The challenge, of course, is it's generally sold through the DME and so it will take a little bit of time to quantify it. But anecdotally, people have been very excited about basal coverage.
>
> In terms of capacity, **when we doubled the size of the sales force, the focus was calling on high decile prescribers of all insulin, including basal.** And so **the inroads have been made there**. So from a coverage perspective, while we may want to expand coverage a little bit from the sales force, it wouldn't be a material step change in how we're going. It'd be normal as part of our thoughts around investments. **So we do have a sizable sales force**.

*Id.* (emphasis in original).

Upon initial review, Plaintiff's use of bold and italics on only certain portions of this passage appears intended to direct the attention of Defendants and the Court to the allegedly false and misleading statements. Nevertheless, the allegations in the Consolidated Complaint are directed only to Sylvain's response that "the focus" of Dexcom's sales force

expansion "was calling on high decile prescribers of all insulin, including basal" and that Dexcom had a "sizable sales force." *Id.* It is not clear if Plaintiff is also challenging Sylvain's statement that Dexcom had "doubled the size" of its sales force or that "inroads" had been made. Plaintiff's use of emphasis does not appear to be "a reliable guide to determining which statements are alleged to be false, as bolded statements sometimes do not turn out to be actionable, while non-bolded statements sometimes are actionable." *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1074 (N.D. Cal. 2001); *see United Ass'n Nat'l Pension Fund v. Carvana Co.*, No. CV-22-02126-PHX-MTL, 2024 WL 863709, at *10 (D. Ariz. Feb. 29, 2024) ("[M]erely bolding and italicizing swaths of text does not assist the Court in determining which statements are allegedly misleading or why.").

This issue is evident in numerous other challenged statements. As another example, Plaintiff challenges a statement made by Sayer during Dexcom's October 26, 2023 earnings conference call, enumerated in the Consolidated Complaint as Statement No. 8:

> As a reminder, Medicare coverage went live in mid-April for people with type 2 diabetes using basal insulin only as well as certain non-insulin individuals that experience hypoglycemia. Collectively, these 2 populations represent nearly 7 million people in the U.S. with approximately half being of Medicare age.
>
> Encouragingly, commercial coverage continues to build for this group. We have established market-leading levels of basal-only reimbursement as payers clearly recognize the potential for better outcomes driven by DexCom. This further supports our industry low out-of-pocket cost for our customers. With a full quarter of broad coverage now under our belt, ***we continue to be very encouraged by early prescribing trends for this cohort***. We noted last quarter that we experienced an immediate uptick in new patient starts once coverage went live, and we have seen a clear continuation of this trend since that time. In fact, we delivered another record Medicare new patient start quarter in Q3 as physicians have quickly adjusted their prescribing patterns to match the new reimbursement landscape.

> While early, ***basal adoption trends look very similar to those we previously experienced once broad coverage became available for intensively managed type 2 diabetes.*** We view this as a very positive sign of things to come. Importantly, when you combine this broader coverage with our leading sensor technology, ***we feel incredibly confident in our market position.*** Since the launch of G7, ***we have gained share across all reimbursed channels and patient segments*** in the U.S. and that trend continued this quarter.

Compl. ¶ 81 (emphasis in original). Statement No. 8 encompasses three paragraphs of text. In the paragraphs immediately following the statement, however, Plaintiff alleges only that Sayer's representations that Defendants were "very encouraged by early prescribing trends" and Dexcom was continuing to "gain[] share across all reimbursed channels and patient segments" were false and misleading. *Id.*

Once again, this does not encompass *all* the language that Plaintiff bolded and emphasized. It remains unclear whether Plaintiff is also alleging that Sayer's statements that "basal adoption trends look very similar to those we previously experienced once broad coverage became available for intensively managed type 2 diabetes" and that Defendants felt "incredibly confident in our market position" are false and misleading. *Id.* Plaintiff's use of bold and italicized text again does not serve as a reliable indicator of which specific statements within these three paragraphs are being challenged.

Nor is this problem confined to multi-paragraph statements. For example, Plaintiff challenges a statement made by Sylvain during a January 8, 2024 conference, enumerated in the Consolidated Complaint as Statement No. 10, in response to an analyst question regarding Dexcom's announcement of acquiring new patients as to whether there was "[a]ny way to size how much was basal versus nonbasal because our doc checks remain just so enthusiastic about CGM for these patients now with reimbursement." *Id.* ¶ 85.

Sylvain responded:

> Yes. So as we think about those patients, and we'll get the full final patients numbers in soon. ***We know it's trending that way.*** You're seeing – you're right. You're seeing a very strong adoption in the basal population, that unmet need is significant. ***And so you continue to see***

        ***outperformance in basal***, but you're also seeing a really strong performance continuing in the intensive markets, both type 1 and type 2.

*Id.* ¶ 86 (emphasis in original). In the paragraphs immediately following, Plaintiff contends only that Sylvain's statement Dexcom was "continu[ing] to see outperformance in basal" was false and misleading, but does not reference the other highlighted portion of the paragraph—"[w]e know it's trending that way." *Id.* Once again, the Court is left uncertain as to why certain portions of Statement No. 10 were both highlighted and discussed, while other portions were merely highlighted without further explanation.

      Rather than lend clarity, Plaintiff's opposition to Defendants' motion to dismiss introduces additional ambiguity. In opposition, Plaintiffs argue that Defendants have "distorted" Statement Nos. 3, 8 and 10 above (and other statements) by claiming only the italicized portions are being challenged "while omitting the full statements." ECF No. 32 at 21. This explanation—without any further meaningful detail—does not direct Defendants or the Court as to what precisely Plaintiff is challenging, if not the italicized portions.

      In short, "plaintiffs have left it up to defendants and the court to try to figure out exactly what the misleading statements are, and to match the statements up with the reasons they are false or misleading." *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 842 (N.D. Cal. 2000). "By failing to articulate exactly which statements Plaintiff asserts to be false or misleading, Plaintiff in effect insulates the Complaint from review, *e.g.*, for defenses like puffery or PSLRA's Safe Harbor." *Lu v. Align Tech., Inc.*, 417 F. Supp. 3d 1266, 1275 (N.D. Cal. 2019).

      For these reasons, the Court holds Plaintiff has failed to plead its claims in compliance with Rule 8 and the PSLRA. *See Lifschitz v. NextWave Wireless Inc.*, No. 08CV1697-LAB (WMC), 2010 WL 11512356, at *4 (S.D. Cal. Mar. 5, 2010) ("[T]he Court agrees with the characterization of Plaintiffs' complaint as a puzzle-pleading, and would rather operate from a complaint that's not a puzzle in determining the more operative

question whether Plaintiffs have actually alleged the elements of a violation of section 10(b) of the Securities Exchange Act.").

## IV. CONCLUSION

For the above reasons, the Court **GRANTS** Defendants' motion to dismiss **WITH LEAVE TO AMEND**. *See Knappenberger v. City of Phx.,* 566 F.3d 936, 942 (9th Cir. 2009) ("Leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts.") (internal quotation marks omitted).

If Lead Plaintiff chooses to file a First Amended Consolidated Complaint, Plaintiff must do so within **fourteen (14) days** of the date of this Order. Plaintiff should clearly "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C.S. § 78u-4. To the extent Plaintiff is contending an entire passage is false and misleading, Plaintiff must separately address each statement in the larger passage, explaining why that statement was false or misleading when made and how the statement was made with the requisite scienter.

Defendants' time to respond to the operative pleading will begin to run on the earlier of the date Plaintiff files a First Amended Consolidated Complaint or **fourteen (14) days** from the date of this Order.

**IT IS SO ORDERED.**

Dated: May 14, 2025

Hon. Robert S. Huie
United States District Judge