COOLEY LLP
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
HEATHER M. SPEERS (305380)
(hspeers@cooley.com)
DYLAN K. SCOTT (332796)
(dscott@cooley.com)
CRISTINA M. FERRUOLO (339442)
(cferruolo@cooley.com)
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone: +1 858 550 6000
Facsimile: +1 858 550 6420

*Attorneys for Defendants Dexcom, Inc., Kevin Sayer, Jereme Sylvain, and Teri Lawver*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: DEXCOM, INC. CLASS ACTION SECURITIES LITIGATION | Lead Case No. 24-cv-01485-RSH-VET<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS LEAD PLAINTIFF'S FIRST AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>Ctrm: 3B, 3rd Floor<br>Judge: Honorable Robert S. Huie<br>Hearing: July 16, 2025<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................................1
II.  THE AC FAILS TO PLEAD FALSITY ...........................................................1
     A.   Plaintiff Fails to Allege Why Each Challenged Statement Is False .................................................................................................1
     B.   Most of the Statements Are Inactionable as a Matter of Law .............2
     C.   All of Plaintiff's Reasons for Falsity Fail............................................5
     D.   No Challenged Statement Was False or Misleading in Context ..........8
III. THE AC FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER ............................................................................................................9
IV.  CONCLUSION ...................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bodri v. GoPro, Inc.*,
 252 F.Supp.3d 912 (N.D. Cal. 2017) ................................................................. 5

*Bondali v. YUM! Brands, Inc.*,
 620 F.App'x 483 (6th Cir. 2015) ........................................................................ 2

*In re Cloudera, Inc.*,
 121 F.4th 1180 (9th Cir. 2024) ........................................................................... 8

*In re Dermtech, Inc. Securities Litigation*,
 2025 WL 1618193 (S.D. Cal. 2025) ................................................................... 4

*In re Dothill Systems Corp. Securities Litigation*,
 2009 WL 734296 (S.D. Cal. Mar. 18, 2009) ...................................................... 6

*Gammel v. Hewlett-Packard Co.*,
 905 F.Supp.2d 1052 (C.D. Cal. 2012) ................................................................ 5

*Glazer Capital Management, L.P. v. Forescout Technologies, Inc.*,
 63 F.4th 747 (9th Cir. 2023) ............................................................................... 4

*In re Green Dot Corp. Securities Litigation*,
 2024 WL 1356253 (C.D. Cal. Mar. 29, 2024) .................................................... 9

*Hadian v. Fate Therapeutics, Inc.*,
 2024 WL 4246083 (S.D. Cal. Sept. 19, 2024) .................................................... 7

*In re Intel Corp. Securities Litigation*,
 2019 WL 1427660 (N.D. Cal. Mar. 29, 2019) .................................................... 6

*In re iPass, Inc. Securities Litigation*,
 2006 WL 496046 (N.D. Cal. Feb. 28, 2006) ...................................................... 5

*Karinski v. Stamps.com, Inc.*,
 2020 WL 281716 (C.D. Cal. Jan. 17, 2020) ....................................................... 3

*In re Leapfrog Enterprise, Inc. Securities Litigation*,
 200 F. Supp. 3d 987 (N.D. Cal. 2016) ................................................................ 7

*Ley v. Visteon Corp.*,
 543 F.3d 801 (6th Cir. 2008) .............................................................................. 2

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002) ................................................................................ 9

*Lomingkit v. Apollo Education Group, Inc.*,
  275 F.Supp.3d 1139 (D. Ariz. 2017) ....................................................................... 2

*Markette v. XOMA Corp.*,
  2017 WL 4310759 (N.D. Cal. Sept. 28, 2017) ........................................................ 3

*McCullough v. Xerox Corp.*,
  2015 WL 7258462 (N.D. Cal. Nov. 17, 2015) ........................................................ 2

*In re NextCard, Inc. Securities Litigation*,
  2005 WL 6342406 (N.D. Cal. Feb. 7, 2005) ........................................................... 6

*Omnicare, Inc. v. Laborers District Council Construction Industry
  Pension Fund*, 575 U.S. 175 (2015) .................................................................... 3, 8

*Prodanova v. H.C. Wainwright & Co., LLC*,
  993 F.3d 1097 (9th Cir. 2021) ................................................................................ 9

*Reese v. Malone*,
  747 F.3d 557 (9th Cir. 2014) ............................................................................ 9, 10

*Macomb County Employees' Retirement System v. Align Technology, Inc.*,
  39 F.4th 1092 (9th Cir. 2022) ................................................................................. 3

*SEB Investment Management AB v. Wells Fargo & Co.*,
  742 F.Supp.3d 1003 (N.D. Cal. 2024) .................................................................. 10

*Silveria v. McDonough*,
  2022 WL 187839 (9th Cir. Jan. 20, 2022) ............................................................ 10

*Valor Systems, Inc. v. TransX Systems, Inc.*
  2024 WL 3086681 (C.D. Cal. May 22, 2024) ........................................................ 3

*Waterford Township Police v. Mattel, Inc.*,
  321 F.Supp.3d 1133 (C.D. Cal. 2018) .................................................................. 10

*Wochos v. Tesla, Inc.*,
  985 F.3d 1180 (9th Cir. 2021) ............................................................................ 4, 5

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iii

**REPLY ISO DEFS' MOTION TO DISMISS AC**
**CASE NO. 24-CV-01485-RSH-VET**

## I.  INTRODUCTION[1]

Plaintiff's Opposition tells a story about a company boasting of unqualified success and total domination, while behind the scenes, its business crumbled and its market share evaporated. But that story is fiction. Dexcom never portrayed unqualified success and never professed to dominate the basal market. Even so, it achieved record revenues and growth during the class period, including in the basal market. While Plaintiff harps on the refrain that Dexcom was losing basal share, the AC shows the opposite: Dexcom's basal share *tripled* during the class period.

Like most innovative companies, Dexcom has never been complacent. So, while it performed well throughout 2023, when it saw an opportunity to improve, it did so—by expanding and restructuring its sales force. Despite Plaintiff's hyperbole, nothing about this "2024 sales force expansion," nor any other well-pled fact in the AC, suggests Dexcom's sales force was "crippled" before the change.

Dexcom did experience challenges eventually. As sales reps adjusted to their new roles following the expansion, Dexcom's distributor relationships faltered, and its new-customer numbers lagged behind expectations. But there are no *contemporaneous* facts showing those issues arose before Defendants made any of the challenged statements. This absence is dispositive. And larding the complaint with more allegations based on hindsight cannot cure this defect. As a result, the case should be dismissed in its entirety, with prejudice.

## II.  THE AC FAILS TO PLEAD FALSITY

### A.  Plaintiff Fails to Allege Why Each Challenged Statement Is False

The AC fails to allege why each challenged statement is misleading. Doc. No. 39-1 at 15 (identifying five statements). Plaintiff argues this is irrelevant because there is "no[] mandate that every sentence be parsed…" Doc. No. 41 at 12. But that is exactly what the Court ordered: "Plaintiff must *separately address each statement*

---

[1] Unless otherwise noted, terms herein have the same meaning as in Defendants' Motion to Dismiss (Doc. No. 39-1); "¶" refers to the AC; all emphasis is added and internal citations, quotation marks, and alterations are omitted.

in the larger passage, explaining why ***that statement*** was false or misleading when made." Doc. No. 36 at 10. Plaintiff's refusal supports dismissal of these statements. *See Lomingkit v. Apollo Educ. Grp.*, 275 F.Supp.3d 1139, 1150-51 (D. Ariz. 2017).

Nor is there merit to Plaintiff's contention that falsity is evident when "viewed in context." Doc. No. 41 at 12. Plaintiff does not add "context"; it asks the Court to ignore the actual words Defendants said in favor of Plaintiff's proffered "overall impression." *Id.* at 12-13, 26. But courts "do not forego a statement-by-statement analysis of objective falsity in favor of analyzing the overall impression made by a set of statements." *Bondali v. YUM! Brands*, 620 F.App'x 483, 491 (6th Cir. 2015).

Moreover, Plaintiff's use of single-spaced bullet points for ***argument*** (here and elsewhere) violates the local rules and circumvents page limits.[2] *See McCullough v. Xerox*, 2015 WL 7258462, at *2 n.2 (N.D. Cal. Nov. 17, 2015) (warning that further "noncompliance with the local rules…such as single-spacing its arguments in pages-long blocks of text…will result in the Court striking [the] briefs").

Even if considered, Plaintiff's arguments fail. Take, for example, the October 2023 statement, "[w]e noted last quarter that we experienced an immediate uptick in new patient starts once coverage went live." ¶156. No contrary fact is alleged. Rather, Plaintiff argues it was misleading because Dexcom did not measure its success against Abbott's. Doc. No. 41 at 12. But Dexcom was not obligated to "compare itself…to its competitors, whether favorably or unfavorably." *Ley v. Visteon*, 543 F.3d 801, 808 (6th Cir. 2008). The same logic applies to Plaintiff's other arguments.

### B.  Most of the Statements Are Inactionable as a Matter of Law

Twelve challenged statements are inactionable puffery and opinion. Doc. No. 39-1 at 15-18. Of those, one is also protected under the PSLRA safe harbor for forward-looking statements. *Id.* at 18-19. Each is an independent basis for dismissal.

**Puffery.** Plaintiff does not dispute that courts have dismissed as puffery statements like those challenged here. *See* No. 39-1 at 16-17 (citing cases). In fact,

---

[2] With single-spaced argument reformatted, the Opposition is 30 pages in length.

Plaintiff does not address three such statements at all, ¶¶135, 156, 290, thereby conceding the point. *Valor Sys. v. TransX Sys.*, 2024 WL 3086681, at *4 (C.D. Cal. May 22, 2024) ("Because Plaintiffs fail to address this argument, they concede it."). As to the rest, Plaintiff claims Defendants omitted portions of the challenged statements that "strip critical context." Doc. No. 41 at 13-14. But Plaintiff fails to explain how more "context" would transform them from vague to concrete.

Plaintiff's own case—*Karinski v. Stamps.com*, 2020 WL 281716, at *11 (C.D. Cal. Jan. 17, 2020)—proves the point. There, the court noted that **normally** a statement that USPS was "very happy with the relationship" would be inactionable puffery, but plaintiffs further alleged that "USPS teams repeatedly expressed their displeasure" with the company, which directly contradicted the statement that USPS was happy with the relationship. *Id.* Nothing remotely comparable is alleged here.

Indeed, Plaintiff's arguments are more like those rejected in *Macomb Cnty. Emps.' Ret. Sys. v. Align Tech.*, 39 F.4th 1092, 1099 (9th Cir. 2022). There, the plaintiff argued that statements describing China as "a great growth market" with "tremendous growth" were not puffery because their "context" showed growth in China had "diminished." *Id.* The Ninth Circuit rejected plaintiff's "context" argument, noting that "the company's sales were *still growing* in China, albeit at a diminished rate," and found the challenged statements "plainly fit beneath the umbrella of puffery." *Id.* (emphasis original). The Court should do the same here.

**Opinion.** The same statements that are puffery are also opinions because they "reflect the speaker's assessment of and judgment about the underlying circumstances." *Markette v. XOMA*, 2017 WL 4310759, at *4 (N.D. Cal. Sept. 28, 2017). Courts find similar statements to be opinions even when unaccompanied by prefatory phrases of "I think" or "I believe." Doc. No. 39-1 at 17 n.2 (citing cases).

Of the twelve challenged opinions, Plaintiff argues only one is actionable under *Omnicare*. Doc. No. 41 at 17 (citing ¶195). But Plaintiff misleadingly omits critical portions of both the challenged opinion and the statement that supposedly

undermined its veracity. *Id.* Dexcom opined that it was "doing well" "***where we have coverage***," and was "***working on…broader coverage***." ¶194. And later, Dexcom stated it was "getting very few prescriptions," in "***offices where we had no salespeople***." ¶304. In other words, Dexcom was (i) succeeding where it had sales coverage, and (ii) working to improve by expanding coverage in places where it was previously lacking. The latter does not make the former untrue.

**Forward-looking.** One of the statements (which Plaintiff did not dispute was inactionable puffery or opinion) is ***also*** protected by the PSLRA safe harbor. Doc. No. 39-1 at 18-19 (¶290, Statement N). Plaintiff claims this statement—about guidance—is not forward-looking because it is phrased in the present tense. Doc. No. 41 at 17. Plaintiff is wrong. Statements "declaring or reaffirming" future goals, are inherently forward-looking, even if they implicate the present. *Wochos v. Tesla*, 985 F.3d 1180, 1191-92 (9th Cir. 2021). That is precisely what Statement N does: it reaffirms "full year guidance" noting Dexcom was "happy" with it and "comfortable" with analysts' forecasts. ¶290. Plaintiff's cursory dismissal of binding authority in a footnote fails to show Statement N is anything but a "reiteration of uncertain, future goals," like the protected statements in *Wochos*. Doc. No. 41 at 19 n.5. And the sole case Plaintiff relies on is inapt. *Id.* at 17 (citing *In re Dermtech Sec. Litig.*, 2025 WL 1618193, at *6 (S.D. Cal. 2025)). There, the court found the safe harbor inapplicable because the challenged guidance ***included incorrect revenue figures that required restatement***. *Dermtech*, 2025 WL 1618193, at *5-6. Nothing similar is alleged here.

Next, Plaintiff insists the cautionary language was "generic" because it was consistent before and during the class period. Doc. No. 41 at 17-18 (citing *Glazer Cap. Mgmt. v. Forescout Techs.*, 63 F.4th 747, 780 (9th Cir. 2023)). But *Glazer* involved an extreme situation: days after the counterparty told the CEO that it was considering backing out of the merger, the company issued a press release expressing confidence in the deal accompanied by the same generic warning that the deal may not be consummated. 63 F.4th at 780. Here, Plaintiff identifies no similar event that

necessitated an update. Nor is there merit to Plaintiff's contention that warnings were not meaningful because they omit Plaintiff's pejorative descriptors. Doc. No. 41 at 17; *Bodri v. GoPro*, 252 F.Supp.3d 912, 931 (N.D. Cal. 2017) (cautionary language need not "warn of the exact risk that transpires").

Finally, Plaintiff argues the statement was made with "actual knowledge" of falsity.[3] Doc. No. 41 at 18. But it misses the mark: it cites no facts showing Sylvain "knew" the forecast was "***impossible***" to achieve. *Wochos*, 985 F.3d at 1192. In fact, Plaintiff confuses the timeline, arguing the sales force restructuring supports actual knowledge. Doc. No. 41 at 18. But Dexcom disclosed the restructuring months before this statement. Doc. No. 39-1 at 12. And everything else Plaintiff cites are just *post hoc* reflections that do not even support scienter, let alone "actual knowledge." *See iPass Sec. Litig.*, 2006 WL 496046, at *8 (N.D. Cal. Feb. 28, 2006) ("actual knowledge" standard is "***stricter*** than the standard for establishing scienter").

### C. All of Plaintiff's Reasons for Falsity Fail

Plaintiff identifies no reason for falsity beyond the three addressed in Defendants' Motion. Doc. No. 39-1 at 19-23. None supports falsity.

**Sales Force.** Plaintiff insists that because Dexcom's sales force had room to improve, it was "fundamentally unable to compete in the basal market." Doc. No. 41 at 19. On this basis, Plaintiff argues four challenged statements were misleading. *Id.* at 19-22 (addressing ¶¶76, 104, 114, 195).[4] Plaintiff is wrong for several reasons.

***First***, Plaintiff admits that Dexcom's basal market share ***increased from 10%*** pre-class period, ***to 30%*** of new scripts post-April 2023. Doc. No. 41 at 25. This admitted growth is irreconcilable with the notion Dexcom was unable to compete. *Gammel v. HP*, 905 F.Supp.2d 1052, 1077 (C.D. Cal. 2012) (rejecting argument "undermined by [] inconsistent allegations").

***Second***, none of the facts Plaintiff cites are "necessarily inconsistent" with the

---

[3] The actual knowledge prong is independent of cautionary language; the safe harbor applies if *either* is met. *See Wochos*, 985 F.3d at 1189-90.
[4] Defendants identified 11 statements, but the Opposition addresses only four.

challenged statements. *In re Dothill Sys. Sec. Litig.*, 2009 WL 734296, at *10 (S.D. Cal. Mar. 18, 2009). Plaintiff claims Dexcom's 2021 salesforce did not target prescribers of basal-only patients. Doc. No. 41 at 19. Dexcom never said otherwise. Plaintiff claims Dexcom's sales force could reach only "25% of PCPs in early 2023." *Id.* Dexcom never said it could reach more. Plaintiff claims Dexcom was "getting very few prescriptions" in offices where it did not have coverage. *Id.* That is not inconsistent with the challenged statements: Defendants stated the obvious, that Dexcom was doing well where it **did have a sales presence**. *E.g.,* ¶194 ("we do very well **where we have coverage and penetration**"). Plaintiff claims Dexcom began planning another expansion in 2023. Doc. No. 41 at 19. That is not inconsistent with being well-positioned; it merely shows there was room for improvement.

**Third**, Dexcom repeatedly disclosed its sales force had room for improvement. *See* Doc. No. 39-1 at 20. Plaintiff argues this is a truth-on-the-market defense. Doc. No. 41 at 19-21. Not so. The disclosures do not correct a misimpression (which is what truth-on-the-market is for), they show **there was no misimpression** because Dexcom disclosed its sales force's shortcomings in real time. Doc. No. 39-1 at 19-21; *see In re Intel Sec. Litig.*, 2019 WL 1427660, at *13 n.18 (N.D. Cal. Mar. 29, 2019) ("Defendants assert that the statements themselves, read in context, are simply not false or misleading…**This is not a truth-on-the-market defense**.")

**Fourth**, in several single-spaced bullets, Plaintiff quibbles with Dexcom's disclosures about its sales force's limitations. Doc. No. 41 at 20-21. But it provides no meaningful analysis. To start, Plaintiff claims the statement, "we don't have a specific PCP sales force," was inadequate because it was "about the geographic organization." *Id.* at 20 (first bullet). Plaintiff offers no explanation for that chasmic leap, and a plain reading of the statement does not support it.[5] *See In re NextCard Sec. Litig.*, 2005 WL 6342406, at *7 (N.D. Cal. Feb. 7, 2005) ("It is Plaintiffs' burden

---

[5] The same is true for Plaintiff's claim that the statement, "we've been kind of under-indexed in PCP," was unrelated to its sales force. Doc. No. 41 at 21 (third bullet).

to connect the dots by clearly alleging particularized facts…"). Plaintiff argues that disclosure was also inadequate because it was accompanied by positive commentary. Doc. No. 41 at 20 (first bullet). But Plaintiff does not allege those positive comments were misleading. *Id.* Next, Plaintiff argues the disclosure about "work to do in the PCP community" was "about work to educate, not work to expand." *Id.* at 20 (second bullet). But Plaintiff, itself, alleges that "PCPs…require product education and support in order to prescribe CGMs to their patients." ¶139; *see In re Leapfrog Enter., Sec. Litig.*, 200 F. Supp. 3d 987, 1005 (N.D. Cal. 2016) ("[T]he sparse allegations Plaintiffs do provide contradict Plaintiffs' theory."). Finally, Plaintiff insists disclosures about "investing on the commercial side to get broader" and the "limited size of our sales force" were too "vague." Doc. No. 41 at 21 (fourth bullet). Yet, it argues the opposite when the same words are used in challenged statements and *post hoc* "admissions." *Id.* at 14 (arguing "right commercial infrastructure" is not puffery); *id.* at 10 ("we needed a broader sales force" was clear *post hoc* admission of falsity).

**DME Relationships.** The Opposition spotlights commentary about the state of Dexcom's DME relationships after the class period, as though this is in dispute. It is not; there is no question those relationships eventually deteriorated. The issue is when. The AC does not contain a single **contemporaneous** fact showing they had **already** deteriorated when Defendants made the challenged statements. *See Hadian v. Fate Therapeutics*, 2024 WL 4246083, at *32 (S.D. Cal. Sept. 19, 2024) (allegations were "mere fraud by hindsight" as "[e]ven the most fruitful relationships can encounter bumps along the road"). For example, Plaintiff points to a post-class period analyst report stating it was not just one DME "that suddenly shifted away this quarter," but many. Doc. No. 41 at 23. But that report confirms the shift was sudden and did not occur until Q2'2024. *Id*. And there is no well-pled fact it happened before April 25, 2024, when the last challenged statement about DMEs was made. *Id*.

**Basal Market Share.** Finally, Plaintiff argues Dexcom was "ceding" basal market share to Abbot during the class period. Doc. No. 41 at 26. But its own

pleadings show the opposite: that Dexcom *increased* basal market share from 10% to 30%. *Id.* at 25. Thus, it was unquestionably "taking share," refuting this theory of falsity. Doc. No. 39-1 at 22-23. Seeking to rehabilitate it, the Opposition tries two gambits to manufacture falsity from truth; neither succeeds.

*First*, Plaintiff argues that when Defendants said Dexcom was "taking share" in the growing basal segment, investors heard something else. Doc. No. 41 at 25. According to Plaintiff, statements about taking share "implie[d]" Dexcom was "making significant competitive inroads and successfully challenging the incumbent's dominance." *Id.* No challenged statement supports such hyperbole.

*Second*, Plaintiff insists that Dexcom's acceleration from 10% to 30% market share was not significant because the basal market had expanded. Doc. No. 41 at 25 n.9. That makes no sense. Gaining market share in a growing market translates to *even larger* absolute gains in basal patients and revenue. Thus, Plaintiff's market-expansion argument refutes, rather than supports, this alleged theory of falsity.

### D.   No Challenged Statement Was False or Misleading in Context

In lieu of legal analysis and argument, the Opposition provides a single-spaced chart purporting to show why the Court should ignore every word surrounding the challenged statements, except those that support Plaintiff's theory. Doc. No. 41 at 26-27. That is plainly not the law: "an investor reads each statement…in light of all its surrounding text, including hedges [and] disclaimers." *Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015).

Nor is there any merit to Plaintiff substituting in its interpretation of statements to support its falsity narrative. "Where, as here, a plaintiff claims that the words used in a statement have some special or nuanced meaning that differs from what the literal words suggest, the plaintiff must plead…sufficient facts to establish that the actual term used had the distinctive, and false, meaning" plaintiff attributes to it. *In re Cloudera*, 121 F.4th 1180, 1188 (9th Cir. 2024). Plaintiff makes no attempt to meet this standard. The chart it provides contains no facts, legal support, or actual analysis;

instead, it mischaracterizes Defendants' arguments and offers conclusory rebuttals.

## III. THE AC FAILS TO PLEAD A STRONG INFERENCE OF SCIENTER

"The strong inference standard presents no small hurdle," demanding "*specific facts* indicating no less than a degree of recklessness that strongly suggests actual intent." *Prodanova v. H.C. Wainwright*, 993 F.3d 1097, 1106, 1108 (9th Cir. 2021). Plaintiff's scienter allegations fail to meet this standard.

**Core operations.** Plaintiff calls it "absurd" that Defendants "would be ignorant of the failing sales infrastructure, cratering new patient starts, and massive loss of market share to Abbott." Doc. No. 41 at 28. But that is nothing more than unsupported hyperbole. Dexcom told investors its sales force could improve and implemented changes to make that happen; that does not mean the prior structure was "failing." *Supra* §II.C. And far from "cratering new patient" numbers or any "massive loss" in market share, Dexcom was winning 30% of new basal patients, up from 10% before the class period. *See* Doc. No. 41 at 25, 28.

**Access to data.** Plaintiff appears to concede that Defendants did not have real-time access to DME data,[6] Doc. No. 39-1 at 29, arguing instead that Defendants tracked *other* data that undermined their public statements, Doc. No. 41 at 29. But all Plaintiff shows is that Defendants admitted they tracked data, *id.*; Plaintiff does not allege any particularized fact that the *contents* of that data contradicted any challenged statement. *Lipton v. Pathogenesis*, 284 F.3d 1027, 1036 (9th Cir. 2002). Nor could it, as the only non-DME data it cites concerns insurance coverage and patient sources, neither of which was allegedly misrepresented. Doc. No. 41 at 29.

**Hindsight reflection.** Plaintiff rehashes its allegations about after-the-fact statements, Doc. No. 41 at 30, but fails to show either "*contradicts* the substance of an earlier statement," as required to support scienter, Doc. No. 39-1 at 29.

**Temporal proximity**. Plaintiffs rely on *Reese v. Malone*, 747 F.3d 557 (9th

---

[6] *In re Green Dot* is distinguishable as the defendant there allegedly received reports with "near-real-time" updates. 2024 WL 1356253, at *5 (C.D. Cal. Mar. 29, 2024).

Cir. 2014), to argue that a revision to guidance within two months, without an "intervening cataclysmic event," supports a strong inference of scienter, Doc. No. 41 at 30-31. *Reese*, however, says nothing about an intervening event—"cataclysmic" or otherwise. 747 F.3d at 575. But even so, there was one here: the receipt of complete DME data between issuing/reaffirming the guidance and later reducing it. Doc. No. 39-1 at 30. Thus, the timing of the guidance reduction does not support scienter. *Id.*

**Executive departure**. Plaintiff argues that Lawver's departure six months after the alleged corrective disclosure supports scienter. Doc. No. 41 at 31 (citing *SEB Inv. v. Wells Fargo*, 742 F.Supp.3d 1003, 1023 (N.D. Cal. 2024)). Plaintiff is wrong; that timing does not support an inference of fraud. *See Waterford Twp. Police v. Mattel*, 321 F.Supp.3d 1133, 1155 (C.D. Cal. 2018) (retention of CFO "for ***five months*** after the alleged fraud was exposed ***undermines*** any inference that he was fired for fraudulent acts"). In fact, *SEB* illustrates the type of circumstances required to support scienter: internal complaints, presentation to board, and mandatory leave. 742 F.Supp.3d at 1023. Nothing similar is alleged here.

**Motive.** Plaintiff argues motive in four single-spaced bullets. They all fail.

*First*, Plaintiff claims Defendants lied to show Dexcom was capturing basal market share. Doc. No. 41 at 31. But Plaintiff's own allegations prove Dexcom ***did*** capture basal market share. *See id.* at 25; *supra* §II.C; Doc. No. 39-1 at 31.

*Second*, Plaintiff argues that Sayer's receipt of incentive compensation supports scienter, Doc. 41 at 32, but fails to address—much less show it meets—the requirements set forth in *Zucco*, Doc. No. 39-1 at 31.

*Third*, Plaintiff insists the timing and amount of stock sales support scienter, Doc. 41 at 31, but fails to address Defendants' arguments on both points.

## IV.   CONCLUSION

The AC should be dismissed with prejudice. Leave to amend should be denied because Plaintiff "points to no additional facts that would cure" the AC's pleading defects. *Silveria v. McDonough*, 2022 WL 187839, at *2 (9th Cir. Jan. 20, 2022).

| | | |
|---|---|---|
| Dated: | July 9, 2025 | COOLEY LLP |

By: */s/ Koji F. Fukumura*
    Koji F. Fukumura

*Attorneys for Defendants Dexcom, Inc., Kevin Sayer, Jereme Sylvain, and Teri Lawver*