COOLEY LLP
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
HEATHER M. SPEERS (305380)
(hspeers@cooley.com)
DYLAN K. SCOTT (332796)
(dscott@cooley.com)
CRISTINA M. FERRUOLO (339442)
(cferruolo@cooley.com)
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone:  +1 858 550 6000
Facsimile:  +1 858 550 6420

*Attorneys for Defendants Dexcom, Inc., Kevin Sayer, Jereme Sylvain, and Teri Lawver*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: DEXCOM, INC. CLASS ACTION SECURITIES LITIGATION | Lead Case No. 24-cv-01485-RSH-VET<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Ctrm:     3B, 3rd Floor<br>Judge:    Honorable Robert S. Huie<br>Hearing:  November 14, 2025<br><br>PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ............................................................................................. 1
II.  BACKGROUND ............................................................................................... 2
III. LEGAL STANDARDS ..................................................................................... 3
IV.  ARGUMENT .................................................................................................... 4
     A.   Teri Lawver Should Be Dismissed With Prejudice. ............................. 4
     B.   Both Remaining Challenged Statements Should Be Dismissed With Prejudice. .................................................................................. 7
V.   CONCLUSION ............................................................................................... 10

TABLE OF AUTHORITIES
Page(s)
Cases
*Abdo v. Fitzsimmons*,
  2017 WL 6994539 (N.D. Cal. Nov. 3, 2017) ..................................................................... 6

*In re AGS, Inc. Securities Litigation*,
  2024 WL 581124 (D. Nev. Feb. 12, 2024), *aff'd sub nom.*
  *Oklahoma Police Pension & Ret. Sys. v. PlayAGS, Inc.*, 2025 WL
  927296 (9th Cir. Mar. 27, 2025) ..................................................................................... 3

*In re Coinstar Inc. Securities Litigation*,
  2011 WL 4712206 (W.D. Wash. Oct. 6, 2011) ................................................................ 5

*Dworkin v. Hustler Magazine Inc.*,
  867 F.2d 1188 (9th Cir. 1989) ......................................................................................... 3

*In re eHealth, Inc. Securities Litigation*,
  2023 WL 6390593 (N.D. Cal. Sept. 28, 2023) .............................................................. 4, 5

*Elec. Workers Pension Fund, Local 103, I.B.E.W. v. HP Inc.*,
  2021 WL 4199273 (N.D. Cal. Sept. 15, 2021) ................................................................. 9

*In re Energy Recovery Inc. Securities Litigation*,
  2016 WL 324150 (N.D. Cal. Jan. 27, 2016) .................................................................. 5, 6

*In re Fed Ex Corporation Securities Litigation*,
  517 F. Supp. 3d 216 (S.D.N.Y. 2021) .............................................................................. 9

*In re International Rectifier Corporation Securities Litigation*,
  2008 WL 4555794 (C.D. Cal. May 23, 2008) .................................................................. 5

*In re Intel Corporation Securities Litigation*,
  2023 WL 2767779 (N.D. Cal. Mar. 31, 2023), *aff'd*, 2024 WL
  1693340 (9th Cir. Apr. 19, 2024) ..................................................................................... 7

*Janus Capital Group, Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011) ......................................................................................................... 5

*Middlesex Retirement System v. Quest Software Inc.*,
  527 F. Supp. 2d 1164 (C.D. Cal. 2007) ........................................................................... 6

# TABLE OF AUTHORITIES
(continued)

Page(s)

*In re NextCard, Inc. Securities Litigation*,
  2005 WL 6342406 (N.D. Cal. Feb. 7, 2005) ................................................... 7

*In re Novatel Wireless Securities Litigation*,
  830 F. Supp. 2d 996 (S.D. Cal. 2011) ............................................................. 4

*In re NVIDIA Securities Litigation*,
  768 F.3d 1046 (9th Cir. 2014) ...................................................................... 10

*Oklahoma Firefighters Pension & Retirement System v. Xerox Corporation*,
  300 F. Supp. 3d 551 (S.D.N.Y. 2018) ............................................................ 7

*Pampena v. Musk*,
  705 F. Supp. 3d 1018 (N.D. Cal. 2023) .......................................................... 9

*Petrie v. Electronic Game Card, Inc.*,
  761 F.3d 959 (9th Cir. 2014) .......................................................................... 3

*Purple Mountain Trust v. Wells Fargo & Co.*,
  432 F. Supp. 3d 1095 (N.D. Cal. 2020) .......................................................... 5

*Venoco, LLC v. Plains Pipeline, L.P.*,
  2019 WL 3308759 (C.D. Cal. Apr. 23, 2019), *aff'd*, 814 F. App'x 318 (9th Cir. 2020) ............................................................................................ 3

*Yang v. Dar Al-Handash Consultants*,
  250 F. App'x 771 (9th Cir. 2007) ................................................................... 4

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iii

MEMO ISO DEFS' MOTION FOR JOP
CASE NO. 24-CV-01485-RSH-VET

## I. INTRODUCTION[1]

On September 9, the Court issued an Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Lead Plaintiff's Consolidated Amended Complaint ("Order"). As a result of that Order, the only claims that remain in this case are based on two statements made by Jereme Sylvain (Dexcom's Chief Financial Officer), in which he asserted that Dexcom was "taking share" in the basal market in February and April 2024. This narrowing of the case has crystallized two issues that are appropriate for early resolution through a motion for judgment on the pleadings.

***First***, there is no longer any basis for Teri Lawver (Dexcom's former Chief Commercial Officer) to remain a defendant in this action. The operative complaint ("AC") does not allege that Ms. Lawver made either of the two remaining challenged statements. And there are no well-pled facts that Ms. Lawver exercised control over Mr. Sylvain with respect to those remaining statements. Without any direct involvement or control, there is no legal or factual foundation for maintaining claims against Ms. Lawver, and she should be dismissed from the case, with prejudice.

***Second***, the allegations that the Court relied upon to support its finding are not supported by the underlying documents that form the basis of those allegations. The Court found it plausible that Dexcom was not "taking share" because it credited Plaintiff's conclusion that Abbott's market share remained consistent from January to April 2024. That conclusion is attributed to two sources—Abbott's statements, and IQVIA market share data—each incorporated by reference into the AC. Neither source, however, contradicts that Dexcom was "taking share" in the basal market during this period. Abbott's statements do not even address total basal market share; they speak only to the win rate of ***new*** basal prescriptions. And the IQVIA data flatly contradicts Plaintiff's allegation; it shows Abbott's total basal market share ***decreased*** over this period, while Dexcom's ***increased***. Because the pleadings and

---

[1] Unless otherwise noted, "¶" refers to Doc. No. 37 (the "AC"), emphasis is added, and internal quotation marks, citations, and alterations are omitted.

incorporated materials foreclose Plaintiff's theory as a matter of law, judgment on the pleadings is warranted.

## II.     BACKGROUND

On May 28, 2025, Plaintiff filed a 162-page AC challenging 14 statements across a 14-month period. Doc. No. 37. On June 11, 2025, Defendants moved to dismiss the entire AC for failure to state a claim ("Motion to Dismiss"). Doc. No. 39. Defendants' Motion to Dismiss addressed, among other things, Plaintiff's three bases for falsity (sales force, DME business, and basal market share) across all 14 challenged statements. Doc. No. 39-1 at 19–23.

On September 9, 2025, the Court issued its Order, dismissing with prejudice twelve of the fourteen challenged statements. Doc. No. 47. The two remaining statements are challenged based on the same theory of falsity—*i.e.*, that Dexcom was not "taking share" in the basal market as of February and April 2024. *Id*. Crediting Plaintiff's allegation that "Abbott secured seven out of ten prescriptions in the newly covered Type 2 Basal market in January 2024, and this share remained unchanged in April 2024," the Court held "Plaintiff has plausibly alleged that Dexcom was not in fact, 'taking share' in the newly covered Type 2 Basal market via reference to prescription data at the time Sylvain made his statement." *Id.* at 27 (citing ¶237); *see also id.* at 29.

The "prescription data" referenced here is from IQVIA. According to Plaintiff, IQVIA is a third party that provides data "regularly used within the pharmaceutical and medical device industries as a useful indicator of market trends – including by Defendants themselves, who relied on IQVIA data in their presentations to investors." ¶178 n.5. IQVIA script data is publicly available for purchase. *See id.* Dexcom, and Sylvain specifically, have referenced IQVIA's script data in earnings calls for several years, *id.*, including on both the February 8 and April 25, 2024, investor calls when Sylvain told investors that Dexcom was taking share in the basal market, ¶¶234, 255. Abbott also referenced IQVIA's script data in January and April

2024. *See, e.g.*, ¶¶237, 258.

Consistent with Abbott's statements, IQVIA data shows Abbott was winning approximately seven out of ten ***new*** basal scripts in January and April 2024. Doc. No. 52 at ¶258 (Abbott winning 65.3% of new basal scripts in January 2024 and 65.7% of new basal scripts in April 2024). However, that same data also shows ***Abbott's*** <u>***total***</u> basal market share ***<u>dropped</u>*** during this same period, while ***Dexcom's*** <u>***total***</u> basal market share <u>***increased***</u>. *Id.* (Abbott's ***total*** basal market share dropped from 71.2% in January 2024 to 69.8% in April 2024; Dexcom's ***total*** basal market share increased from 28.8% in January 2024 to 30.2% in April 2024).

## III.  LEGAL STANDARDS

"[A] motion for judgment on the pleadings is the functional equivalent of a motion to dismiss." *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 968 n.11 (9th Cir. 2014). "The principal difference…is the time of filing." *Dworkin v. Hustler Mag. Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989) (noting that otherwise, "the motions are functionally identical"). Whereas a motion to dismiss is made before filing a responsive pleading, a motion for judgment on the pleadings is filed "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c).

That Defendants filed a previous motion to dismiss under Rule 12(b)(6) is not a bar to filing a Rule 12(c) motion for failure to state a claim. *See Venoco, LLC v. Plains Pipeline, L.P.*, 2019 WL 3308759, at *5 (C.D. Cal. Apr. 23, 2019) (Rule 12 "plainly permits" filing a 12(c) motion raising a failure to state a claim defense after moving to dismiss under 12(b)(6)), *aff'd*, 814 F. App'x 318 (9th Cir. 2020); *In re AGS, Inc. Sec. Litig.*, 2024 WL 581124, at *3 (D. Nev. Feb. 12, 2024) ("Rules 12(c) and 12(h) extend the life of a failure-to-state-a-claim defense after the filing of an answer"), *aff'd sub nom. Oklahoma Police Pension & Ret. Sys. v. PlayAGS, Inc.*, 2025 WL 927296 (9th Cir. Mar. 27, 2025).

In ruling on a motion for judgment on the pleadings, the Court "should not blindly accept the allegations in the pleadings as true if these allegations are

contradicted by uncontested facts set forth in (1) exhibits to the nonmoving party's pleading, (2) documents that are referred to in the non-moving party's pleading, or (3) facts that are included in materials that can be judicially noticed." *Yang v. Dar Al-Handash Consultants*, 250 F. App'x 771, 772 (9th Cir. 2007); *see also In re eHealth, Inc. Sec. Litig.*, 2023 WL 6390593, at *2 (N.D. Cal. Sept. 28, 2023) ("For the purposes of a Rule 12(c) motion…[c]ourts must consider the 'complaint in its entirety,' as well as 'documents incorporated into the complaint by reference[ ] and matters of which a court may take judicial notice.'"); *In re Novatel Wireless Sec. Litig.*, 830 F. Supp. 2d 996, 1009 (S.D. Cal. 2011) ("Documents attached to, incorporated by reference in, or integral to the complaint…may be properly considered under Rule 12(c) without converting the motion into one for summary judgment.").

Where, as here, Plaintiff's allegations are based on "information and belief," the PSLRA requires Plaintiff to "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). "Granting judgment on the pleadings is appropriate where a complaint fails to satisfy the pleading standards of the PSLRA." *eHealth*, 2023 WL 6390593, at *2.

## IV.    ARGUMENT

The Court's Order revealed two additional bases upon which the AC fails to state a claim, neither of which was squarely addressed in Defendants' Motion to Dismiss. **First**, no well-pled fact supports a claim under Section 10(b) or 20(a) against Ms. Lawver. **Second**, no well-pled fact supports that either remaining challenged statement was false when made.

### A.    Teri Lawver Should Be Dismissed With Prejudice.

The AC asserts claims against Ms. Lawver under Sections 10(b) and 20(a). Following the Court's dismissal of all but two alleged misstatements, Ms. Lawver is no longer a proper defendant in this action. She did not make either of the remaining statements, nor did she exercise control over them.

It is black-letter law that only the "maker" of a statement can be liable under Section 10(b). *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142–43 (2011) ("One 'makes' a statement by stating it…it is the speaker who takes credit—or blame—for what is ultimately said."). Ms. Lawver did not make either of the remaining challenged statements. Nor did she participate in the earnings calls in which those statements were made in response to analyst questions. *See* ¶¶234, 255; Doc. Nos. 39-11 at 3, 39-13 at 3. Accordingly, the Section 10(b) claim against Ms. Lawver should be dismissed with prejudice. *See eHealth*, 2023 WL 6390593, at *9 (dismissing claims against a defendant who did not make the challenged statements); *In re Coinstar Inc. Sec. Litig.*, 2011 WL 4712206, at *10 (W.D. Wash. Oct. 6, 2011) (same).

"Section 20(a) provides derivative liability for those who control others found to be primarily liable under the [Exchange] Act." *In re Energy Recovery Inc. Sec. Litig.*, 2016 WL 324150, at *25 (N.D. Cal. Jan. 27, 2016). Thus, to state a Section 20(a) claim against Ms. Lawver, Plaintiff must allege facts demonstrating that she had "**actual power or control**" over Dexcom or Mr. Sylvain—the maker of the alleged misstatements. *Id.*; *see also In re Int'l Rectifier Corp. Sec. Litig.*, 2008 WL 4555794, at *22 (C.D. Cal. May 23, 2008) ("Plaintiffs cannot simply base their claims on boilerplate allegations; they must provide some **factual support** that defendants were in a position to control a primary violator."). The AC contains no such facts.

First, the *only* allegations of Lawver's control over Dexcom are boilerplate conclusions that can be found in nearly every securities fraud complaint. *See, e.g.*, ¶393 ("By reason of their senior management positions as officers and/or directors of Dexcom, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Dexcom to engage in the unlawful acts and conduct complained of herein."). They are plainly insufficient. *See, e.g.*, *Purple Mountain Tr. v. Wells Fargo & Co.*, 432 F. Supp. 3d 1095, 1106–07 (N.D. Cal. 2020) (allegation

that "[b]y virtue of their positions and their power to control public statements about [the Company], the Individual Defendants had the power and ability to control the actions of [the Company] and its employees" found insufficient to allege control-person liability). And to the extent Plaintiff's theory is that Dexcom is a primary violator via Sylvain's statements on February 8 and April 25, Lawver was not present at either call, Doc. Nos. 39-11 at 3, 39-13 at 3, and therefore had no control over statements made on Dexcom's behalf, even indirectly.

Second, there is no allegation that Ms. Lawver controlled *any* statement made by Mr. Sylvain—much less that she controlled the statements at issue here, which were made in response to analyst questions during earnings calls in which Ms. Lawver was not even a participant. In fact, the only allegations of control concern the individual defendants' control over Dexcom's statements and vice versa; there is no allegation the individual defendants controlled statements made by one another. *See* ¶¶25, 393; *see also Energy Recovery*, 2016 WL 324150, at *26 (dismissing §20(a) claim against Chief Marketing Officer where there was "no allegation that she directed or exercised control over [the individual defendant] who allegedly made the false and misleading statements").

Third, Ms. Lawver (CCO) and Mr. Sylvain (CFO) were peers. Those with equal or lower titles do not control those with equal or higher titles. *See Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1194 (C.D. Cal. 2007) (rejecting notion that defendant could "exercise control over either his peer Vice Presidents or his supervisors"); *Abdo v. Fitzsimmons*, 2017 WL 6994539, at *1, *20 (N.D. Cal. Nov. 3, 2017) (COO and others with lower titles did not control CEO).

Accordingly, the Section 20(a) claim against Ms. Lawver should be dismissed with prejudice.

### B. Both Remaining Challenged Statements Should Be Dismissed With Prejudice.

The only two statements that remain in this case were made in February and April 2024; in both, Mr. Sylvain stated that "script data" showed Dexcom was "taking share" in the basal market. ¶¶234, 255; Order at 26–28. The Court held that Plaintiff plausibly alleged Dexcom was not "taking share" in the basal market in February and April 2024 based on the allegation that "Abbott secured seven out of ten prescriptions in the newly covered Type 2 Basal market in January 2024, and this share remained unchanged in April 2024." Order at 27 (citing ¶237); *id.* at 29.

That allegation, however, is not about *total* market share. Abbott was addressing the percentage of *new* basal prescriptions it was winning. Doc. No. 52 at ¶¶237, 258; Doc. No. 39-15 at 11 (January 2024: "I mean you referenced IQVIA, Robbie. 7 out of 10 *new* scripts for this patient segment is Libre")[2]; Doc No. 52 at ¶¶237, 258 (April 2024: "I'm looking at the data, third party audited data, 7 out of every 10 *new* prescriptions for this basal population…are going to Libre.").

This distinction is critical. The challenged statements claim Dexcom was "taking *share*" in the basal market. They do not claim that Dexcom was winning a greater percentage of new prescriptions than Abbott; that is an entirely different metric. ¶¶234, 255; *see In re NextCard, Inc. Sec. Litig.*, 2005 WL 6342406, at *7 (N.D. Cal. Feb. 7, 2005) ("It is Plaintiffs' burden to connect the dots by clearly alleging particularized facts demonstrating why each statement was false or misleading when made."); *Oklahoma Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 572 (S.D.N.Y. 2018) ("[T]he Court focuses on the statements themselves, not plaintiff's recasting of them.").

Notably, it is entirely possible to achieve growth in *total market share* (the

---

[2] Plaintiff did not dispute that this exhibit was incorporated by reference into the AC. Accordingly, it is proper for the Court to consider on this motion. *See In re Intel Corp. Sec. Litig.*, 2023 WL 2767779, at *8 n.4 (N.D. Cal. Mar. 31, 2023) (objection to incorporating an exhibit waived where plaintiffs' "RJN briefing contain[ed] no argument about that exhibit") *aff'd*, 2024 WL 1693340 (9th Cir. Apr. 19, 2024).

subject of Sylvain's statements), without any growth in the win rate of *new* prescriptions (the subject of Abbott's statements relied upon for falsity). The following hypothetical illustrates this point: [3]

1. **Dexcom Begins with 10% Overall Basal Market Share:** Assume (as Plaintiff previously alleged, Doc. No. 27, ¶68(d)), that at the start of the class period Abbott held 90% basal market share and Dexcom held 10% basal market share. For ease of calculation, assume the basal market consists of 100 patients at this point. Abbott has 90; Dexcom has 10.

2. **Dexcom Wins ~30% of *New* Basal Patients:** Assume (as Plaintiff alleged, ¶48) that in April 2023, the basal market expands. Again, for ease of calculation, assume this expansion results in 10 new basal patients each month. Consistent with Plaintiff's allegations, Abbott wins 7 of every 10 new basal scripts, ¶¶234, 255; Doc. No. 39-15 at 11, while Dexcom wins 3 of every 10 new basal scripts.

3. **Dexcom's Overall Basal Market Share Grows:** Based on the above assumptions, which accept the truth of Plaintiff's allegations, simple math shows that in each month of the class period, Abbott's share of the basal market ticks down, while Dexcom's ticks up. For example, in the first month, Abbott's overall basal market share drops from 90% to 88%, while Dexcom's overall basal market share increases from 10% to 12%.[4] In the second month, Abbott's market share drops to 86%, while Dexcom's market share increases to 13%.[5] This pattern continues each month. As Dexcom consistently wins 30% of *new* basal scripts, its overall basal market share grows each month from

---

[3] The AC contains no allegations about Dexcom's or Abbott's customer retention rates, which is another factor that impacts total market share. Because the AC is silent on this factor, the hypothetical assumes 100% retention for both Dexcom and Abbott.
[4] Abbott's 88% = (90 original patients + 7 new patients) / (110 total patients); Dexcom's 12% = (10 original patients + 3 new patients) / (110 total patients).
[5] Abbott's 86% = (90 original patients + 7 new patients in month 1 + 7 new patients in month 2) / (120 total patients); Dexcom's 13% = (10 original patients + 3 new patients in month 1 + 3 new patients in month 2) / (120 total patients).

the starting point of 10% until it reaches 30%.

Not surprisingly, this is consistent with the IQVIA data—which is cited by both Dexcom and Abbott in their public statements and incorporated by reference into the AC.[6] Even as Abbott's share of *new* basal scripts held roughly constant between January and April 2024, its ***total basal market share*** steadily declined over this period, while Dexcom's steadily increased:

| **Total active retail basal market share per IQVIA[7]** | | |
|---|---|---|
| | **Abbott** | **Dexcom** |
| January 2024 | 71.2% | 28.8% |
| February 2024 | 70.7% | 29.3% |
| March 2024 | 70.2% | 29.8% |
| April 2024 | 69.8% | 30.2% |

Doc. No. 52 at ¶¶237, 258.

Thus, not only is there no well-pled fact to support falsity, but the IQVIA data incorporated by reference shows Sylvain's statements were true: Dexcom was, in fact, "taking share" in the basal market in February and April 2024, despite Abbott's relatively consistent win rate on *new* basal scripts during this period. *Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. HP Inc.*, 2021 WL 4199273, at *4 (N.D. Cal. Sept. 15, 2021) (dismissed alleged misstatements regarding market share increases where plaintiff failed to plead facts that market share did not increase); *In re Fed Ex Corp. Sec. Litig.*, 517 F. Supp. 3d 216, 229 (S.D.N.Y. 2021) ("[C]onsider[ing] the

---

[6] Defendants do not seek incorporation by reference to dispute that Abbott was winning ~70% of *new* Basal patients between January and April 2024 but to provide context on why that fact does not render Sylvain's statements false. *See Pampena v. Musk*, 705 F. Supp. 3d 1018, 1038–39 (N.D. Cal. 2023) ("These documents, however, do not dispute facts stated in a well-pleaded complaint, but instead provide a basis for Defendant's arguments that Plaintiffs inaccurately characterize the documents or portions of the documents.").

[7] Figures in this table are generated from IQVIA data available to Dexcom as of the date of this filing, and include application of Dexcom-specific definitions for what qualifies as "active retail basal market share."

documents that the Complaint incorporates by reference…Even accepting Plaintiff's allegations as true, the Court concludes that the challenged statements, when considered in their full context, would not mislead a reasonable investor.").

Accordingly, the two remaining statements (Statement J and K) should be dismissed with prejudice.

## V. CONCLUSION

For the reasons above, the entire AC should be dismissed with prejudice.[8] If any portion of the AC survives, Ms. Lawver should still be dismissed with prejudice.

Dated:   October 10, 2025         COOLEY LLP

By: */s/ Koji F. Fukumura*
Koji F. Fukumura

*Attorneys for Defendants Dexcom, Inc., Kevin Sayer, Jereme Sylvain, and Teri Lawver*

---

[8] If the Court grants dismissal of the two remaining statements, there is nothing left to support the Section 10(b) or 20(a) claim as to any Defendant. *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014).