1  ROBBINS GELLER RUDMAN
     & DOWD LLP
2  DANIEL S. DROSMAN (200643)
   W. MARK CONOVER (236090)
3  SARAH A. FALLON (345821)
   655 West Broadway, Suite 1900
4  San Diego, CA  92101
   Telephone:  619/231-1058
5  ddrosman@rgrdlaw.com
   mconover@rgrdlaw.com
6  sfallon@rgrdlaw.com

7  Lead Counsel for Lead Plaintiff

8  [Additional counsel appear on signature page.]

9              UNITED STATES DISTRICT COURT

10            SOUTHERN DISTRICT OF CALIFORNIA

11  In re DEXCOM, INC. CLASS ACTION )    Lead Case No. 24-cv-1485-RSH-VET
    SECURITIES LITIGATION           )
12                                  )    LEAD PLAINTIFF'S OPPOSITION
                                    )    TO DEFENDANTS' MOTION FOR
13                                  )    JUDGMENT ON THE PLEADINGS
                                    )
14  _____

15                                       DATE:      November 14, 2025
                                         CTRM:      3B, 3rd Floor
16                                       JUDGE:     Honorable Robert S. Huie

17

18

19

20

21

22

23

24

25

26

27

28

4930-1431-1798.v1

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................ 1

II.     BACKGROUND ................................................................................ 3

        A.      The Court Has Already Sustained the Core of Plaintiff's Case .......... 3

        B.      Defendants Engaged in Procedural Maneuvering to Get a "Do Over" ............................................................................................ 4

        C.      Defendants' Improper Motion Relies on Flawed "Evidence" and Belated Arguments ................................................................... 5

III.    LEGAL STANDARD ......................................................................... 6

IV.     ARGUMENT ..................................................................................... 7

        A.      Defendants' Attempt to Relitigate Statements J and K Fails as a Matter of Law and Fact ............................................................. 7

                1.      Defendants' Motion Is Nothing More than an Improper Motion for Reconsideration ................................................. 7

                2.      The Law of the Case Doctrine Independently Precludes Re-Litigation .............................................................. 9

                3.      Defendants' Manufactured Table Is an Improper Attempt to Litigate Facts at the Pleading Stage ..................... 10

                4.      Defendants' Factual Arguments Collapse and Their Own Admissions Confirm Falsity .................................... 15

                        a.      Defendants' Admissions Conclusively Establish Falsity ......................................................... 15

                        b.      Defendants' "Total Share" Counter-Narrative Is a Fallacy ......................................................... 15

                        c.      Even if Considered, Defendants' Own Table Establishes Falsity ............................................... 18

                5.      Defendants' "Literal Truth" Defense Is Legally Baseless and Factually Wrong ....................................... 18

        B.      Teri Lawver Is Liable Under §20(a) as a Control Person of Dexcom .................................................................................... 20

V.      CONCLUSION ............................................................................... 25

1

# TABLE OF AUTHORITIES

2
**Page**

3
**CASES**

4
*Abdo v. Fitzsimmons,*
5
  2017 WL 6994539 (N.D. Cal. 2017) ................................................................ 24

6
*Arthur Child.'s Tr. v. Keim,*
7
  994 F.2d 1390 (9th Cir. 1993) ........................................................................ 22

8
*Berson v. Applied Signal Tech., Inc.,*
  527 F.3d 982 (9th Cir. 2008) .......................................................................... 16
9

10
*Brand Tarzana Surgical Inst., Inc. v. Aetna Life Ins. Co.,*
  2019 WL 12381185 (C.D. Cal. 2019) .............................................................. 12
11

12
*Brendon v. Allegiant Travel Co.,*
  412 F. Supp. 3d 1244 (D. Nev. 2019) .............................................................. 22

13
*Camran v. S.D. Youth Servs.,*
14
  2025 WL 2084926 (S.D. Cal. 2025) .................................................................. 9

15
*Crossfirst Bank v. Vieste SPE LLC,*
16
  2021 WL 2517855 (D. Ariz. 2021) .................................................................... 9

17
*Eichman v. Fotomat Corp.,*
18
  880 F.2d 149 (9th Cir. 1989) .......................................................................... 10

19
*Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. HP Inc.,*
  2021 WL 4199273 (N.D. Cal. 2021) ................................................................ 20
20

21
*Fallon v. Dudek,*
  135 F.4th 831 (9th Cir. 2025) ........................................................................... 9
22

23
*Fate Therapeutics, Inc. v. Shoreline Biosciences, Inc.,*
  2023 WL 3028089 (S.D. Cal. 2023) .................................................................. 9

24
*Flood v. Miller,*
25
  35 F. App'x 701 (9th Cir. 2002) ................................................................. 21, 22

26
*Gay v. Esquetini,*
27
  2016 WL 11521906 (C.D. Cal. 2016) .............................................................. 13

28

4930-1431-1798.v1

**Page**

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
896 F.2d 1542 (9th Cir. 1990) ................................................................. 6

*Hammerlord v. Elliott*,
2023 WL 5055472 (S.D. Cal. 2023) ....................................................... 8

*Hefler v. Wells Fargo & Co.*,
2018 WL 1070116 (N.D. Cal. 2018) ...................................................... 22

*Hollinger v. Titan Cap. Corp.*,
914 F.2d 1564 (9th Cir. 1990) ............................................................... 24

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) ......................................................... 21, 23

*In re AGS, Inc. Sec. Litig.*,
2024 WL 581124 (D. Nev. 2024),
*aff'd sub nom. Okla. Police Pension & Ret. Sys. v.*
*PlayAGS, Inc.*, 2025 WL 927296 (9th Cir. 2025) ................................... 8

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) ......................................................... 20, 21, 24

*In re Apple Comput., Inc. Sec. Litig.*,
243 F. Supp. 2d 1012 (N.D. Cal. 2002) ................................................ 12

*In re BofI Holding, Inc. Sec. Litig.*,
2017 WL 2257980 (S.D. Cal. 2017) ...................................................... 24

*In re ChinaCast Educ. Corp. Sec. Litig.*,
809 F.3d 471 (9th Cir. 2015) ................................................................ 24

*In re Countrywide Fin. Corp. Sec. Litig.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ................................................ 22

*In re Cylink Sec. Litig.*,
178 F. Supp. 2d 1077 (N.D. Cal. 2001) ................................................ 23

*In re Facebook, Inc. Sec. Litig.*,
87 F.4th 934 (9th Cir. 2023) .......................................................... 19, 20

24-cv-1485-RSH-VET

1
2                                                                          **Page**
3
4   *In re Fed Ex Corp. Sec. Litig.*,
       517 F. Supp. 3d 216 (S.D.N.Y. 2021) ................................................................ 19
5
6   *Kennard v. Lamb Weston Holdings, Inc.*,
       2019 WL 4278940 (N.D. Cal. 2019) ...................................................................... 7
7
8   *Khoja v. Orexigen Therapeutics, Inc.*,
       899 F.3d 988 (9th Cir. 2018) ..................................................................... *passim*
9
10  *Kindle v. Vanderlande Indus., Inc.*,
       2024 WL 3330908 (C.D. Cal. 2024) ..................................................................... 13
11
12  *Kmiec v. Powerwave Techs., Inc.*,
       2014 WL 12567781 (C.D. Cal. 2014) ................................................................. 6, 7
13
14  *Krist v. Arizona*,
       2018 WL 1570260 (D. Ariz. 2018) ....................................................................... 14
15
16  *Lee v. Sec. Life of Denv. Ins. Co.*,
       2025 WL 2964013 (C.D. Cal. 2025) ..................................................................... 11
17
18  *Leventhal v. Chegg, Inc.*,
       721 F. Supp. 3d 1003 (N.D. Cal. 2024) ........................................................ 24, 25
19
20  *Lloyd v. CVB Fin. Corp.*,
       811 F.3d 1200 (9th Cir. 2016) ............................................................................. 19
21
22  *Loc. 272 Labor-Mgmt. Pension Fund v. Walt Disney Co.*,
       2025 WL 2428897 (C.D. Cal. 2025) ....................................................................... 7
23
24  *MacDonald v. Grace Church Seattle*,
       457 F.3d 1079 (9th Cir. 2006) ....................................................................... 6, 10
25
26  *Malka v. Mercedes-Benz, LLC*,
       2024 WL 4804096 (E.D. Cal. 2024) ..................................................................... 14
27
28  *Marble Voip Partners LLC v. Zoom Video Commc'ns, Inc.*,
       2024 WL 86859 (N.D. Cal. 2024) ........................................................................... 9

In re Fed Ex Corp. Sec. Litig., 517 F. Supp. 3d 216 (S.D.N.Y. 2021) — 19
Kennard v. Lamb Weston Holdings, Inc., 2019 WL 4278940 (N.D. Cal. 2019) — 7
Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988 (9th Cir. 2018) — passim
Kindle v. Vanderlande Indus., Inc., 2024 WL 3330908 (C.D. Cal. 2024) — 13
Kmiec v. Powerwave Techs., Inc., 2014 WL 12567781 (C.D. Cal. 2014) — 6, 7
Krist v. Arizona, 2018 WL 1570260 (D. Ariz. 2018) — 14
Lee v. Sec. Life of Denv. Ins. Co., 2025 WL 2964013 (C.D. Cal. 2025) — 11
Leventhal v. Chegg, Inc., 721 F. Supp. 3d 1003 (N.D. Cal. 2024) — 24, 25
Lloyd v. CVB Fin. Corp., 811 F.3d 1200 (9th Cir. 2016) — 19
Loc. 272 Labor-Mgmt. Pension Fund v. Walt Disney Co., 2025 WL 2428897 (C.D. Cal. 2025) — 7
MacDonald v. Grace Church Seattle, 457 F.3d 1079 (9th Cir. 2006) — 6, 10
Malka v. Mercedes-Benz, LLC, 2024 WL 4804096 (E.D. Cal. 2024) — 14
Marble Voip Partners LLC v. Zoom Video Commc'ns, Inc., 2024 WL 86859 (N.D. Cal. 2024) — 9

**Page**

*Marder v. Lopez*,
   450 F.3d 445 (9th Cir. 2006) .................................................................. 13

*Middlesex Ret. Sys. v. Quest Software Inc.*,
   527 F. Supp. 2d 1164 (C.D. Cal. 2007) ................................................ 24

*Miller v. Thane Int'l, Inc.*,
   519 F.3d 879 (9th Cir. 2008) .................................................................. 19

*Mueller v. S.D. Ent. Partners, LLC*,
   2017 WL 3387732 (S.D. Cal. 2017) ...................................................... 22

*Nevarez v. City of Mesa*,
   2025 WL 2431799 (D. Ariz. 2025) ........................................................ 13

*Pennington v. US Assure Ins. Servs. of Fla., Inc.*,
   2025 WL 1266926 (N.D. Cal. 2025) ...................................................... 13

*Ramsey v. Coronado*,
   2024 WL 1721133 (S.D. Cal. 2024) .................................................. 13, 14

*Ryan v. Salisbury*,
   382 F. Supp. 3d 1031 (D. Haw. 2019) .................................................. 11

*Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*,
   5 F.3d 1255 (9th Cir. 1993) ..................................................................... 8

*Scottsdale Ins. Co. v. Hamerslag*,
   2025 WL 1736873 (S.D. Cal. 2025) .................................................. 6, 20

*SEB Inv. Mgmt. AB v. Wells Fargo & Co.*,
   742 F. Supp. 3d 1003 (N.D. Cal. 2024) ................................................ 22

*SEC v. Todd*,
   642 F.3d 1207 (9th Cir. 2011) ........................................................ 21, 22

*Shakoor-Delgado v. Cornerstone First Mortg., LLC*,
   2025 WL 1160009 (S.D. Cal. 2025) .................................................. 6, 17

4930-1431-1798.v1

**Page**

*Sinatro v. Barilla Am., Inc.*,
635 F. Supp. 3d 858 (N.D. Cal. 2022) ............................................... 14

*Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*,
690 F. Supp. 2d 959 (D. Ariz. 2010) ................................................. 22

*Trammel v. KLN Enters., Inc.*,
2024 WL 2278350 (S.D. Cal. 2024) .................................................... 9

*United States v. Gartenlaub*,
2024 WL 4987258 (9th Cir. 2024) ................................................. 9, 10

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ............................................................ 11

*Vanguard Specialized Funds v. VEREIT Inc.*,
2016 WL 5858735 (D. Ariz. 2016) ................................................... 22

*Venoco, LLC v. Plains Pipeline, L.P.*,
2019 3308759 (C.D. Cal. 2019),
*aff'd*, 814 F. App'x 318 (9th Cir. 2020) ............................................. 8

**STATUTES, RULES, AND REGULATIONS**

15 U.S.C.
§78j(b) ................................................................................................ 21
§78t(a) ............................................................................ 4, 20, 21, 24

Federal Rules of Civil Procedure
Rule 9(b) ............................................................................................ 22
Rule 12 ........................................................................................ 10, 11
Rule 12(b)(6) ............................................................................... 6, 7, 9
Rule 12(c) .................................................................................. *passim*
Rule 12(d) .......................................................................................... 10
Rule 56 .............................................................................................. 10

17 C.F.R.
§230.405 ............................................................................................ 21

4930-1431-1798.v1

## I.    INTRODUCTION

Despite its label as a motion for judgment on the pleadings, Defendants' filing is a transparent attempt to re-litigate issues already decided – in essence, an improper motion for reconsideration.[1]  Having already lost on the merits of their comprehensive motion to dismiss (Doc. No. 39) ("MTD") as to the two false statements at issue, Defendants now return, just one month after this Court's Order, seeking what this Court's local rules and the principles of judicial economy expressly forbid: a "do-over."  This procedural gamesmanship, which wastes the resources of both Plaintiff and this Court, is reason enough for summary denial.

Worse, to justify this improper "third bite at the apple," Defendants have resorted to smuggling new and improper "evidence" into their Answer – a self-serving, unauthenticated table of data they now admit they **possessed, but strategically withheld**, during their MTD.  This tactic, designed to dispute well-pled facts with materials outside the complaint, violates the Ninth Circuit's admonishment in *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018), and is an independent reason to deny the Motion.  Worse still, Defendants have withheld the actual documents underlying their attorney-crafted table and ask the Court to render its decision based on their *ipse dixit* alone.

But the most telling fact is this: even **Defendants' own concocted "data" proves Plaintiff's case**.  Defendants now concede the core allegation that their competitor, Abbott Laboratories ("Abbott"), was winning seven out of ten new basal

---

[1]  "Plaintiff" is Lead Plaintiff National Elevator Industry Pension Fund and "Defendants" are Dexcom, Inc. ("Dexcom" or the "Company"), Kevin R. Sayer Jereme M. Sylvain ("Sylvain"), and Teri Lawyer ("Lawyer").  "Motion" refers to Defendants' Motion for Judgment on the Pleadings (Doc. No. 54), "Order" refers to the Court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss Lead Plaintiff's Consolidated Amended Complaint (Doc. No. 47), "Answer" refers to Defendants' Answer to Lead Plaintiff's Amended Consolidated Complaint for Violations of the Federal Securities Laws (Doc. No. 52), and the "FAC" refers to Plaintiff's First Amended Consolidated Complaint for Violations of the Federal Securities Laws (Doc. No. 37).  Unless otherwise noted, all "¶_" or "¶¶_" references are to the FAC, emphasis is added, and citations are omitted.

4930-1431-1798.v1

scripts. Their new table reveals that Dexcom's gains in its newly invented, self-serving metric – "total active retail basal market share" (whatever that is) – were negligible, representing stagnation rather than growth.[2] This is not "taking share" in any commercially meaningful sense; it is the very definition of a ***misleading half-truth***. Defendants told investors Dexcom was "taking share" based on "script data," while that very data showed the Company was losing the actual competitive battle. It is this precise deception that obscured the Company's true competitive failure, leading directly to a $17 billion loss in market capitalization – a ***more than 40% stock decline*** – when the truth was finally revealed.

Thus, the Rule 12(c) motion fails on every conceivable level. It is procedurally barred, analytically bankrupt, and factually false. ***First***, as a threshold matter, the Motion is barred by the law of the case doctrine. Defendants' arguments were squarely raised, fully considered, and decisively rejected by this Court. This is a thinly veiled and improper motion for reconsideration, a practice barred by the law of the case doctrine and fundamental principles of judicial economy.

***Second***, Defendants' entire Motion hinges on disputed, extrinsic, and manufactured "evidence" that the Court cannot consider at this stage. The only new element is a contrived distinction between market share for "new" versus "total" patients, a theory supported only by a misleading, counsel-created Table embedded in their Answer. This is a ***Trojan horse for a summary judgment argument***, advanced without affording Plaintiff the benefit of even a single document in discovery necessary to rebut it.

***Third***, even if the Court were to ignore these fatal procedural bars, Defendants' arguments fail on their own merits. The "taking share" statements were made in the

---

[2]  Defendants' "Total active retail basal market share per IQVIA" table ("Table"), appears in various iterations in Defendants' Answer and Motion, spanning different time periods. *See* Doc. No. 52, ¶¶56, 258 (summarizing data from August 2023 through April 2024); *id.*, ¶237 (summarizing data from August 2023 through February 2024); Doc. No. 54-1 at 13 (summarizing data from January 2024 to April 2024).

specific context of Dexcom's performance in the newly opened basal market, where success was measured by the capture of these recently covered basal patients. Defendants' *post hoc* attempt to reframe the debate around this new, undisclosed metric is a red herring. And, Defendants' own data, even if considered, confirms the falsity of their statements, showing that Dexcom's share of the market had all but flatlined between January and April 2024.

Finally, Defendants' attempt to dismiss defendant Lawver rests on a new, meritless argument that she was not a "control person." As Chief Commercial Officer ("CCO"), Lawver was directly responsible for the very commercial strategy and sales efforts that collapsed. The law does not require her to have personally "controlled" the CFO, only the Company – a primary violator – and, as the executive in charge of the entire failed commercial operation, she plainly did.

The Motion should be denied in its entirety.

## II.    BACKGROUND

### A.    The Court Has Already Sustained the Core of Plaintiff's Case

On May 28, 2025, Plaintiff filed the FAC. Defendants moved to dismiss the FAC, proffering an attorney declaration, two attorney-created appendices, and 29 exhibits totaling 492 pages, which they sought to improperly inject into the case through judicial notice and the incorporation-by-reference doctrine. *See* Defendants' Request for Judicial Notice (Doc. No. 40). Although admittedly in their possession at the time, Defendants strategically did not proffer or attach IQVIA or other third-party data to their MTD and did not argue that such data was incorporated into the FAC. *See* Declaration of Daniel S. Drosman in Support of Lead Plaintiff's Opposition to Defendants' Motion for Judgment on the Pleadings ("Drosman Decl."), ¶¶7-8, filed concurrently herewith.

After considering Plaintiff's 163-page FAC and over 80 pages of briefing, the Court issued the Order. The Court declined to consider Defendants' attorney-created

appendices and "statements made in the declaration of Defendants' counsel, Heather M. Speers, regarding the contents of the [Form] 4 filings." Doc. No. 47 at 10, 12 n.3. While the Court took judicial notice of certain extraneous materials submitted by Defendants, it correctly declined to consider them for the truth of their contents to dispute the FAC's allegations. *Id.* at 10-12.

After rejecting Defendants' procedural maneuvers, the Court sustained two of the alleged misleading statements ("Statements J and K"), that Dexcom was "taking share" in the newly covered Type 2 Basal market, based on the FAC's allegations that Abbott had secured seven out of ten prescriptions in the new Type 2 Basal market in January 2024, and that this share remained unchanged in April 2024. *Id.* at 26-29. The Court also "conclude[d] that Plaintiff has sufficiently alleged facts supporting a strong inference of scienter with respect to Statements J and K." *Id.* at 35. The Court likewise denied Defendants' MTD as to the §20(a) control person claims predicated on these surviving statements. *Id.* at 36.

### B. Defendants Engaged in Procedural Maneuvering to Get a "Do Over"

Having lost the MTD on the core of the case, Defendants charted a new procedural course to circumvent this Court's Order. On September 18, 2025, Defendants' counsel sought an extension of time for filing their Answer, to which Plaintiff's counsel consented. Doc. No. 48. Only after securing that consent did Defendants reveal, for the first time, that they would be filing a Rule 12(c) motion in conjunction with their Answer. *See* Drosman Decl., ¶2. This motion, they claimed, would contain the very IQVIA data they had withheld from their MTD, which they believed warranted judgment on the pleadings on Statements J and K. *Id.*, ¶6. They also opined that, in their view, discovery would now be halted pending its resolution. *See id.*, ¶¶2, 9. On a meet and confer to discuss their threatened Rule 12(c) motion, counsel for Defendants admitted that they had the IQVIA data at the time they filed

their MTD, but strategically withheld it.  *See id.*, ¶¶7-8.  Defendants also indicated that they would seek to have defendant Lawver dismissed.  *Id.*, ¶5.

### C. Defendants' Improper Motion Relies on Flawed "Evidence" and Belated Arguments

On October 7, 2025, Defendants filed their Answer, which embedded their newly invented Table titled, "Total active retail basal market share per IQVIA" (Doc. No. 52, ¶¶56, 237, 258 (emphasis in original)) to which they attached the following revealing footnote description:

> Figures in this table are generated from IQVIA data available to Dexcom as of the date of this filing, and include application of Dexcom-specific definitions for what qualifies as "active retail basal market share."

*Id.*, ¶¶56 n.1, 237 n.2, 258 n.3.

Defendants used their Answer to smuggle this Table into the record, but conspicuously **failed** to attach any underlying IQVIA data or other document to support their calculations.  They did not provide **any** information regarding the source IQVIA data used to generate the Table.  Tellingly, Defendants **fail** to establish that the data it contained – data "available to Dexcom as of the date of this filing" – was the same data available at the time Statements J and K were made.  Nor do they disclose their secretive "***Dexcom-specific definitions*** for what qualifies as 'active retail basal market share,'" or how they were applied through some undisclosed methodology to the withheld IQVIA data.

On October 10, 2025, Defendants filed their Motion, relying entirely on the unauthenticated and inadmissible Table from their Answer.  Doc. No. 54-1. Defendants conceded that "IQVIA data shows Abbott was winning approximately seven out of ten **new** basal scripts in January and April 2024."  *Id.* at 7 (citing Doc. No. 52, ¶258).  They argued, however, that based on figures they generated in their Table, Dexcom's "[t]otal active retail basal market share" purportedly increased fractionally between January and April 2024. *Id.* at 13 (emphasis in original).  On this basis, they now argue that Statements J and K were not misleading because Dexcom

1   was taking "total basal market share" and seek judgment on the pleadings.  *See id.* at

2   11-14.  They also contend that defendant Lawver should be dismissed because she did

3   not have control over ***these specific statements*** (*id.* at 8-10) – a new legal theory they

4   failed to raise in their two prior motions to dismiss.

5   **III.   LEGAL STANDARD**

6   Judgment on the pleadings is improper unless "'the moving party clearly

7   establishes on the face of the pleadings that no material issue of fact remains to be

8   resolved and that it is entitled to judgment as a matter of law.'"  *Scottsdale Ins. Co. v.*

9   *Hamerslag*, 2025 WL 1736873, at *5 (S.D. Cal. 2025) (quoting *Hal Roach Studios,*

10  *Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990)).

11  "An analysis under Rule 12(c) is substantially identical to analysis under Rule

12  12(b)(6) because, under both rules, a court must determine whether the facts alleged in

13  the complaint, taken as true, entitle the plaintiff to a legal remedy."  *Shakoor-Delgado*

14  *v. Cornerstone First Mortg., LLC*, 2025 WL 1160009, at *2 (S.D. Cal. 2025) (cleaned

15  up).  Crucially, in this analysis, ***the Court must "treat as false those allegations in the***

16  ***answer that contradict [the complaint]***."  *MacDonald v. Grace Church Seattle*, 457

17  F.3d 1079, 1081 (9th Cir. 2006).

18  This standard is consistent with the Court's prior Order, which established the

19  standard for considering extraneous documents in this case.  In its Order on the MTD,

20  the Court expressly "decline[d] to consider" exhibits "for the truth of their contents"

21  to dispute the FAC's allegations.  Doc. No. 47 at 10-12.  The Ninth Circuit has

22  likewise warned that a procedural device like incorporation by reference "is not a tool

23  for defendants to short-circuit the resolution of a well-pleaded claim."  *Khoja*, 899

24  F.3d at 1003.

25  Finally, a motion for judgment on the pleadings is not an opportunity to re-

26  litigate issues already raised and decided in a motion to dismiss.  *See Kmiec v.*

27  *Powerwave Techs., Inc.*, 2014 WL 12567781, at *2 & n.2 (C.D. Cal. 2014) (denying a

28

Rule 12(c) motion where the defendants repeated the same arguments rejected on their Federal Rule of Civil Procedure 12(b)(6) motion).

## IV. ARGUMENT

### A. Defendants' Attempt to Relitigate Statements J and K Fails as a Matter of Law and Fact

#### 1. Defendants' Motion Is Nothing More than an Improper Motion for Reconsideration

Defendants' Motion is a procedurally improper motion for reconsideration, masquerading as a Rule 12(c) motion. It merely rehashes the arguments this Court has already considered and rejected.

Defendants advance the identical argument this Court previously rejected, albeit with a "new spin" based on an improperly submitted, litigation-driven Table:

- ***MTD Argument (Rejected)***: In their previous motions to dismiss, Defendants argued that their statements about "taking share" could not be misleading because they were literally true. Doc. No. 39-1 at 22 (arguing that Abbott winning "'seven out of every 10 new scripts for the type 2 Basal population' in early 2024" was "not inconsistent with any challenged statement," and that "someone was taking market share from Abbott[,] [a]nd Plaintiff's own allegations show it was Dexcom"); *see also* Doc. No. 29-1 at 26-27 (same).

- ***Rule 12(c) Motion (Rehashed)***: "Sylvain's statements were true: Dexcom was, in fact, 'taking share' in the basal market in February and April 2024, despite Abbott's relatively consistent win rate on ***new*** basal scripts during this period. . . . Accordingly, the two remaining statements (Statement[s] J and K) should be dismissed with prejudice." Doc. No. 54-1 at 13-14 (emphasis in original).

Because the Motion "requests the Court consider the same arguments for dismissal it previously considered under the motion to dismiss, it is in reality a motion for reconsideration." *See Loc. 272 Labor-Mgmt. Pension Fund v. Walt Disney Co.*, 2025 WL 2428897, at *1 (C.D. Cal. 2025); *see also Kmiec*, 2014 WL 12567781, at *2 & n.2 (denying Rule 12(c) motion and treating it as motion for reconsideration where the defendants repeated arguments from their Rule 12(b)(6) motion); *Kennard v. Lamb Weston Holdings, Inc.*, 2019 WL 4278940, at *2 (N.D. Cal. 2019) (denying

4930-1431-1798.v1

Rule 12(c) motion as "essentially a motion for reconsideration of the Court's order" on the motion to dismiss).[3]

Viewed as a motion for reconsideration, the Motion fails to meet this District's stringent standards. A motion for reconsideration is only justified if the movant can identify "newly discovered evidence, intervening law, clear error, or manifest injustice." *Hammerlord v. Elliott*, 2023 WL 5055472, at *1 (S.D. Cal. 2023) (citing *Sch. Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)); *see also* CivLR 7.1(i)(1) (requiring "an affidavit of a party or witness or certified statement of an attorney setting forth the material facts and circumstances surrounding each prior application, including . . . what new or different facts and circumstances are claimed to exist which did not exist, or were not shown, upon such prior application").

Defendants do not even attempt to make this showing. They do not argue clear error or manifest injustice. They claim no intervening change in law; indeed, they freely admit that the legal standards for their Motion are "'functionally identical'" to the one they already lost. Doc. No. 54-1 at 7. And most importantly, their new evidence – the self-serving Table – is not "newly discovered." As Defendants admitted on the parties' meet and confer, they possessed this information when they filed their prior motion but strategically withheld it. *See* Drosman Decl., ¶¶7-8. This tactical decision to hold evidence in reserve for a "third bite at the apple" is the antithesis of newly discovered evidence.

---

[3]  Defendants' cited authorities (Doc. No. 54-1 at 7) are inapposite, as they addressed situations involving new arguments or issues that had ***not*** previously been ruled on – the exact opposite of the situation here. *See In re AGS, Inc. Sec. Litig.*, 2024 WL 581124, at *2 (D. Nev. 2024) (finding 12(c) motion was not a motion for reconsideration precisely because "[t]he court's prior order did not rule" on the issue), *aff'd sub nom. Okla. Police Pension & Ret. Sys. v. PlayAGS, Inc.*, 2025 WL 927296 (9th Cir. 2025); *Venoco, LLC v. Plains Pipeline, L.P.*, 2019 3308759, at *4 (C.D. Cal. 2019) (deciding motion based on argument that defendant "did not raise" in a prior motion), *aff'd*, 814 F. App'x 318 (9th Cir. 2020).

Defendants are left with nothing but "[m]ere disagreement with a previous order," which "is an insufficient basis for reconsideration." *Crossfirst Bank v. Vieste SPE LLC*, 2021 WL 2517855, at *1 (D. Ariz. 2021). "A motion to reconsider is not another opportunity for the losing party to make its strongest case, reassert arguments, or revamp previously unmeritorious arguments." *Fate Therapeutics, Inc. v. Shoreline Biosciences, Inc.*, 2023 WL 3028089, at *4 (S.D. Cal. 2023) (cleaned up); *see also Camran v. S.D. Youth Servs.*, 2025 WL 2084926, at *2 (S.D. Cal. 2025) (motions for reconsideration are "disfavored" and "[r]ecapitulations of rejected arguments are not adequate bases for reconsideration"). This "'extraordinary remedy'" is "'to be used sparingly in the interests of finality and conservation of judicial resources.'" *Trammel v. KLN Enters., Inc.*, 2024 WL 2278350, at *1 (S.D. Cal. 2024). Defendants offer no valid grounds for their extraordinary request that the Court reverse itself mere weeks after issuing its Order. Defendants' Motion is a meritless affront to those principles and should be denied.

### 2. The Law of the Case Doctrine Independently Precludes Re-Litigation

The law of the case doctrine provides an independent and dispositive basis to deny the Motion. "A Rule 12(c) motion for judgment on the pleadings that raises issues already decided on a prior Rule 12(b)(6) motion to dismiss is subject to the 'law of the case' doctrine." *See Marble Voip Partners LLC v. Zoom Video Commc'ns, Inc.*, 2024 WL 86859, at *2 (N.D. Cal. 2024) (denying Rule 12(c) motion where the defendant raised the same issue previously denied on a motion to dismiss). Pursuant to the law of the case doctrine, "'a court is ordinarily precluded from reexamining an issue previously decided by the same court, or a higher court, in the same case.'" *United States v. Gartenlaub*, 2024 WL 4987258, at *1 (9th Cir. 2024). This rule promotes the finality and efficiency of the judicial process by protecting against the re-litigation of settled issues. *See Fallon v. Dudek*, 135 F.4th 831, 836 (9th Cir. 2025). The doctrine is broad; it "'encompasses a court's explicit decisions as well as those

issues decided by necessary implications.'" *Eichman v. Fotomat Corp.*, 880 F.2d 149, 157 (9th Cir. 1989).

This doctrine squarely bars Defendants' attack on Statements J and K. As detailed *supra*, §IV.A.1., Defendants argued extensively in their prior motions to dismiss that these exact statements were not misleading because they were "not inconsistent" with the FAC's allegations. Doc. No. 39-1 at 22, 27; Doc. No. 29-1 at 26-27. This Court decisively rejected that argument, holding that "Plaintiff has plausibly alleged that Dexcom was not in fact, 'taking share' in the newly covered Type 2 Basal market." Doc. No. 47 at 26-29. That holding is the law of the case, which "'preclude[s]'" this Court from "'reexamining an issue previously decided.'" *Gartenlaub*, 2024 WL 4987258, at *1. Defendants offer no valid reason to depart from this rule, and their prohibited attempt to force the Court to reverse its own binding Order should be rejected.

### 3.    Defendants' Manufactured Table Is an Improper Attempt to Litigate Facts at the Pleading Stage

On a Rule 12(c) motion, the Court's duty is clear: it must "accept as true all allegations in [the plaintiff's] complaint and treat as false those allegations in the answer that contradict [the plaintiff's] allegations." *See, e.g.*, *MacDonald*, 457 F.3d at 1081. The Motion must be decided on the pleadings alone; if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).

Defendants seek to flout this standard. They embed a suspect Table in their Answer – a Table they admit was "generated" by applying undisclosed "Dexcom-specific definitions" to an unspecified cache of IQVIA data – and now ask the Court to treat this Table as true and the FAC's allegations as false. This is a flagrant attempt to defy Rule 12. Even attaching extraneous material to an answer "would effectively convert a 12(c) motion into a pseudo-motion for summary judgment while giving the plaintiff 'no opportunity to respond to the defendant's new version of the facts.'"

1  *Ryan v. Salisbury*, 382 F. Supp. 3d 1031, 1051 (D. Haw. 2019); *see Lee v. Sec. Life of*

2  *Denv. Ins. Co.*, 2025 WL 2964013, at *2 (C.D. Cal. 2025) (noting that "documents

3  attached to an answer are generally ***not*** considered in a Rule 12(c) motion") (emphasis

4  in original).  But Defendants' conduct is more egregious – they fail to attach actual

5  data, and ask the Court to consider their ***own*** secret analysis of IQVIA data.

6      This is not the first time Defendants have sought to abuse Rule 12.  In their

7  prior motion, Defendants attempted to dispute the FAC's scienter allegations by

8  improperly citing their self-serving explanations in their Forms 4, and then bolstering

9  those explanations with a declaration from counsel summarizing what those

10  documents purported to show.  The Court flatly rejected that maneuver.  Doc. No. 47

11  at 11-12 & n.3.  Defendants now recycle the same failed strategy: they improperly

12  submit a self-serving, counsel-created Table summarizing data they refuse to produce

13  and ask the Court to accept it as fact.  This is precisely the sort of procedural

14  gamesmanship that courts condemn.  *See, e.g.*, *Khoja*, 899 F.3d at 1003.  The Court

15  should reject this tactic just as it did the first time.

16      Defendants incorrectly assert that the incorporation-by-reference doctrine

17  justifies this gamesmanship.  The incorporation-by-reference doctrine allows a

18  "defendant [to] seek to incorporate a ***document*** into the complaint 'if the plaintiff

19  refers extensively to the ***document*** or the ***document*** forms the basis of the plaintiff's

20  claim.'"  *Id.* at 1002; *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.

21  2003) (noting where "the plaintiff refers extensively to the ***document . . . [t]he***

22  ***defendant may offer such a document***").  But Defendants do not seek to incorporate a

23  ***document*** referenced in the FAC.  Rather, they argue that the FAC's general reference

24  to "IQVIA" and audited third-party data entitles them to create their ***own*** Table, from

25  their ***own*** data, using their ***own*** secret definitions, and then use this Table to ***dispute***

26  the FAC's well-pleaded allegations.  *See* Doc. No. 54-1 at 5, 13.  The doctrine

27  provides no such license.  Unsurprisingly, Defendants cite no authority for the

28

illogical proposition that a party can "incorporate" its own counsel-created, argumentative table into its adversary's complaint.[4]

Defendants point to no instance where Dexcom cited "IQVIA" data during the February or April 2024 calls at issue. Instead, they improperly seek to twist the FAC's allegation that Dexcom had cited IQVIA data in 2022 and 2023 (¶178 n.5) into a boundless license to inject any data they choose into the pleadings. *See* Doc. No. 54-1 at 6. The FAC's allegations about these past, unrelated data citations do not form the basis of Plaintiff's claims regarding the 2024 statements and cannot be used to incorporate Defendants' new, manufactured Table.

In addition, Defendants disingenuously twist Plaintiff's prior Opposition to Defendants' Request for Judicial Notice and Incorporation by Reference (Doc. No. 42) ("RJN Opposition"), suggesting that Plaintiff "did not dispute" the incorporation of Abbott's January 2024 transcript and is now barred from challenging its use to dispute the FAC's allegations. Doc. No. 54-1 at 11 n.2. This is a gross mischaracterization. As an initial matter, Defendants never even referenced this transcript in their MTD or reply – it appeared only in an improper Appendix, which Plaintiff opposed, and the Court declined to consider. *See* Doc. No. 42 at 6-8; Doc. No. 47 at 10; *see generally* Doc. No. 39-1. Moreover, Plaintiff's RJN Opposition explicitly opposed precisely what Defendants seek to do here: use incorporated documents "for the improper purpose of prematurely resolving factual disputes . . . at the pleadings stage." Doc. No. 42 at 3 n.2. Plaintiff has never waived its right to oppose such tactics.

---

[4] Defendants' cases (Doc. No. 54-1 at 7-8) are inapplicable, as none involved attempts to "incorporate" something other than a document, as Defendants do here. Indeed, the incorporation-by-reference doctrine does not even apply to summaries of documents, let alone contested self-serving ones. *See, e.g.*, *In re Apple Comput., Inc. Sec. Litig.*, 243 F. Supp. 2d 1012, 1024 n.4 (N.D. Cal. 2002) ("[T]he incorporation by reference doctrine applies to 'documents,' not summaries of documents."); *Brand Tarzana Surgical Inst., Inc. v. Aetna Life Ins. Co.*, 2019 WL 12381185, at *2-*4 (C.D. Cal. 2019) (declining to incorporate "excerpts of 'summary description documents'" where their authenticity and completeness as the "plans governing the claims at issue" were disputed).

But this entire argument is a red herring designed to distract from their manufactured Table. The status of Abbott's January 2024 transcript is irrelevant. It does nothing to support the incorporation of Defendants' own, unrelated, self-serving Table. Defendants' argument is so baseless that they do not even attempt to argue that the other document they cite, Abbott's April 2024 transcript, was incorporated by reference. Doc. No. 54-1 at 11 n.2.

Independently, Defendants' maneuver fails because their Table is unauthenticated, incomplete, and riddled with unexplained infirmities. A document can only be incorporated if "'no party questions the authenticity of the copy attached.'" *Ramsey v. Coronado*, 2024 WL 1721133, at *3 (S.D. Cal. 2024) (quoting *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006)); *see also Kindle v. Vanderlande Indus., Inc.*, 2024 WL 3330908, at *6 (C.D. Cal. 2024) ("the Court cannot consider the exhibits under the incorporation by reference doctrine" where "the parties dispute their authenticity").[5] Plaintiff vigorously disputes the authenticity and accuracy of this manufactured summary, which Defendants' own footnotes admit: (1) was "generated" from an unspecified set of IQVIA data; (2) applies secret, "Dexcom-specific definitions" that are not provided; (3) was prepared in October 2025, 17 months after the statements, with no explanation for how the data was changed, updated, supplemented, or reorganized in the interim; and (4) fails to explain how it was "generated" (*i.e.*, what calculations were made and what data was excluded). Doc. No. 54-1 at 13 n.7; Doc. No. 52, ¶¶56 n.1, 237 n.2, 258 n.3. This is an advocate's

---

[5]    Even if Defendants had produced an actual document instead of a manufactured summary, courts refuse to incorporate mere excerpts or incomplete records when their completeness is disputed – precisely the situation here. *See, e.g.*, *Pennington v. US Assure Ins. Servs. of Fla., Inc.*, 2025 WL 1266926, at *2 (N.D. Cal. 2025) (declining to incorporate purported insurance policy referenced in the complaint where plaintiff objected that it was "an incomplete excerpt"); *Gay v. Esquetini*, 2016 WL 11521906, at *5 (C.D. Cal. 2016) (declining to consider medical records because "Plaintiff's allegations that the records are incomplete is enough to prevent the Court from considering them"); *see also Nevarez v. City of Mesa*, 2025 WL 2431799, at *5 (D. Ariz. 2025) (declining to consider footage because "[a]lthough Plaintiff does not dispute the authenticity of the BWC footage provided by Defendants, she indicates that she possesses only incomplete footage").

1   creation, not an authentic document.  The Court should decline to consider it.  *See*

2   *Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858, 870-71 (N.D. Cal. 2022) (declining

3   to incorporate exhibit created by counsel); *Krist v. Arizona*, 2018 WL 1570260, at *2

4   n.2 (D. Ariz. 2018) (declining to incorporate documents because "Plaintiff

5   objects . . . that they are incomplete or unauthenticated").

6       Even if Defendants' Table could somehow be considered, it is axiomatic that it

7   cannot be used to resolve factual disputes.  *See, e.g.*, *Malka v. Mercedes-Benz, LLC*,

8   2024 WL 4804096, at *3 (E.D. Cal. 2024).  The Ninth Circuit "'prohibits courts from

9   considering facts in incorporated documents . . . that are being used as a basis to

10  resolve genuine factual disputes in a complaint.'"  *Ramsey*, 2024 WL 1721133, at *3.

11  Defendants' entire purpose in offering the Table is to resolve a factual dispute in their

12  favor – namely, to prove that "Sylvain's statements were true."  Doc. No. 54-1 at 13.

13  This is prohibited.

14      The Ninth Circuit has emphatically warned against precisely this tactic:

15      Submitting documents not mentioned in the complaint to create a
        defense is nothing more than another way of disputing the factual
16      allegations in the complaint, but with a perverse added benefit: unless the
        district court converts the defendant's motion to dismiss into a motion
17      for summary judgment, the plaintiff receives no opportunity to respond
        to the defendant's new version of the facts.  Without that opportunity to
18      respond, the defendant's newly-expanded version of the complaint –
        accepted as true at the pleading stage – can easily topple otherwise
19      cognizable claims.  Although the incorporation-by-reference doctrine is
        designed to prevent artful pleading by plaintiffs, ***the doctrine is not a***
20      ***tool for defendants to short-circuit the resolution of a well-pleaded***
        ***claim***.

21  *Khoja*, 899 F.3d at 1003.

22      It is evident that Defendants are eager to engage in factual disputes as to basal

23  market share data, and they may do so – at summary judgment, ***after discovery*** has

24  taken place.  But their one-sided proffer of contested, unauthenticated data has no

25  place in a Rule 12(c) analysis.  The Court should decline to consider the Table and

26  Defendants' arguments improperly derived therefrom.

27

28

### 4. Defendants' Factual Arguments Collapse and Their Own Admissions Confirm Falsity

Even if the Court were to improperly consider Defendants' new factual assertions, their Motion would still fail for two independent reasons: (a) their own admissions confirm the FAC's core allegations; and (b) their "new vs. total share" counter-narrative is built on mischaracterizations, flawed logic, and data that proves Plaintiff's case.

### a. Defendants' Admissions Conclusively Establish Falsity

Defendants' Motion and Answer admit the central facts establishing the falsity of Statements J and K. Defendants explicitly concede that "IQVIA data shows Abbott was winning approximately seven out of ten *new* basal scripts in January and April 2024." Doc. No. 54-1 at 7. They also admit that Sylvain knew this at the time he made Statements J and K, pleading that he had "access to, and reviewed IQVIA script-level data." Doc. No. 52, ¶¶253, 274. These admissions are fatal. They directly bolster the FAC's well-pleaded allegations and confirm this Court's determination that Dexcom "was not in fact, 'taking share' in the newly covered Type 2 Basal market," and that Sylvain knew it. Doc. No. 47 at 26-29, 35. Sylvain claimed Dexcom was "taking share" based on "script data," while admittedly knowing that "script data" showed Dexcom's main competitor was winning 70% of all new business. The statements were false when made, and Defendants now effectively concede it.

### b. Defendants' "Total Share" Counter-Narrative Is a Fallacy

Defendants' only response is to invent a *post hoc* distinction between "new basal scripts" and "total basal market share," and then argue Sylvain was only ever referring to the latter. Doc. No. 54-1 at 11-14. This entire narrative is a fiction built on multiple distortions. ***First***, Defendants erect a straw man by mischaracterizing Plaintiff's allegations to fit their new "total share" narrative. They claim the FAC's allegation – that "'Abbott secured seven out of ten prescriptions in the newly covered

4930-1431-1798.v1

Type 2 Basal market in January 2024'" (Doc. No. 54-1 at 11 (citing ¶237)) – pertains only to "new" prescriptions. This is baseless. The phrase "newly covered" plainly refers to the new market (*i.e.*, Centers for Medicare & Medicaid Services' ("CMS") recent decision to cover continuous glucose monitors ("CGMs") for basal patients), not a temporal limitation on the prescriptions. Defendants also speculate without foundation that the FAC's market share allegations are premised entirely on two isolated quotes from extrinsic transcripts (Doc No. 54-1 at 11), neither of which appears in the FAC. Defendants cannot rewrite Plaintiff's allegations through self-selection of sources and self-serving interpretations of isolated quotes to suit their new "total share" narrative.

**Second**, Defendants attempt to rewrite Sylvain's public statements to fit their new narrative. They claim, for the first time – after failing to raise this argument in two prior motions to dismiss – that Sylvain's statements about "taking share" actually referred to "total basal market share." *Id.* at 11-14. But Sylvain never used those words. Nor did anyone else on the calls. To the contrary, his statements were explicitly made in the context of "new patients" and "script data" in the "expanding basal category." ¶¶234-235 (referencing expanding basal category and stating "you can see the share taking when you look at the script data, we are taking share"); ¶¶255-256 (responding to a question about a "record new start quarter," emphasizing "new patients . . . coming through that basal channel," and stating "we get script data . . . [w]e know we're taking share, and we see that data"). Defendants are not permitted to assign their preferred *post hoc* meaning to their own unambiguous statements. *See Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 986 (9th Cir. 2008).

**Third**, Defendants' manufactured hypothetical, which they offer to explain their "critical" new-versus-total distinction, is fatally flawed. Doc. No. 54-1 at 11-12. It is built on arbitrary assumptions, not data. Defendants' entire premise rests on a "10%" starting share, a figure derived by conflating the pre- and post-expansion markets.

Doc. No. 54-1 at 12-13. This attempt to anchor their position to the small, pre-expansion basal market is a deliberate distraction. While Abbott may have served approximately 90% of that niche, legacy market prior to the 2023 CMS coverage expansion, that tiny market bears no resemblance to the new post-expansion basal market consisting of more than three million potential CGM users. *See* ¶¶46, 48. Accordingly, Defendants' suggestion that Dexcom started with a 10% share of the new post-expansion basal market is unfounded. *See* Doc. No. 41 at 25 n.9.

Defendants then compound this error by inventing a "100 patient[]" basal market that grows by "10 new basal patients each month" and plugging in other unsupported assumptions about retention rates. Doc. No. 54-1 at 12 & n.3. This, too, is contradicted by Defendants' own statements. They provide no support for their arbitrary suggestion that the Type 2 Basal market was growing steadily by ten patients (10% of the pre-expansion market) per month – which is what Defendants' hypothetical hinges upon. To the contrary, Defendants themselves described CMS coverage expansion as the "largest expansion of coverage in our company's history," a market they estimated at more than three million new patients, which they stated would lead to an "influx of users." ¶¶48, 313-314, 318.

This chain of favorable inferences – built on a flawed premise and assumptions directly contradicted by Defendants' own words – has no place in a Rule 12(c) motion, which requires the Court to construe all facts in Plaintiff's favor. *See, e.g.*, *Shakoor-Delgado*, 2025 WL 1160009, at *2.

***Fourth***, even if Defendants could rewrite Sylvain's words to mean "total basal market share," their own Table still does not contain this data. Instead, it purports to show "[t]otal active ***retail*** basal market share" – a new, previously unmentioned metric derived from an "application of Dexcom-specific definitions" that they refuse to disclose or explain. Doc. No. 54-1 at 13 n.7 (emphasis in original). Defendants' own terminology reveals the fundamental flaw in their data. By expressly labeling their metric as "retail basal market share," Defendants themselves concede that the

Table excludes the durable medical equipment ("DME") channel, which constitutes the remainder of the basal market. In the DME channel, Dexcom has already admitted it was losing market share to Abbott during that same period. *See* ¶270 ("we've lost market share in the DME channel . . . and that has hurt us" and "growth in the DME channel has trailed our plan"). Thus, even under Defendants' own reframing, their Table omits a channel where they were losing ground. Their "data," therefore, does not demonstrate the truth of their statements, even as they attempt to recast them 17 months later.

### c. Even if Considered, Defendants' Own Table Establishes Falsity

Even if the Court ignores this mountain of procedural and logical failures, overlooks the secret definitions, and considers Defendants' improper Table as gospel (it should not), that Table confirms the falsity of Statements J and K. The Table shows Abbott dominating the market, even in Defendants' contrived metric, with Abbott's share never falling below 69.8%. Doc. No. 52, ¶258. Most telling, according to Defendants' own data, between January and February 2024 – the precise period when Sylvain made his "taking share" statements – Dexcom's share grew by only one-half of one percentage point (0.5%). *Id.* Between February and April 2024, it grew by just 0.9%. *Id.* The Table further shows that even these minimal gains were slowing compared to August-December 2023, demonstrating stagnation, not acceleration. *Id.* Such trivial movement – while a single competitor maintains nearly 70% of the market and wins 70% of all new business – is the opposite of "taking share." It is the definition of stagnation. Accordingly, Defendants' own manufactured data, even when taken at face value, demonstrates that Statements J and K were false when made.

### 5. Defendants' "Literal Truth" Defense Is Legally Baseless and Factually Wrong

Defendants' suggestion that their "data" somehow renders Sylvain's statements "true" (Doc. No. 54-1 at 13) misapprehends the federal securities laws. The Ninth

Circuit has established that literal or technical truth is no defense when a statement misleads the market. "Some statements, although literally accurate, can become, through their context and manner of presentation, devices which mislead investors. For that reason, the disclosure required by the securities laws is measured not by literal truth, but by the ability of the material to accurately inform rather than mislead." *Miller v. Thane Int'l, Inc.*, 519 F.3d 879, 886 (9th Cir. 2008) (cleaned up). Even a statement that is "[t]echnically" true is "plainly misleading when made" if it omits material information. *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1209 (9th Cir. 2016); *see also Khoja*, 899 F.3d at 1008-09 ("Even if a statement is not false, it may be misleading if it omits material information.").

Here, when Sylvain told investors that Dexcom was "taking share" based on "script data," he created the unmistakable impression that Dexcom was successfully capturing market share from Abbott in the newly covered Type 2 Basal market – the "largest expansion of coverage" in its history. *See* ¶¶236-237, 257-258, 313-314. In reality, Sylvain knew from the "script data" that Dexcom was losing the competitive battle, with Abbott taking seven of ten new basal patients. And, as even Defendants' Table indicates, Abbott dominated in the "[t]otal active retail basal market." Doc. No. 54-1 at 13 (emphasis in original); *see* Doc. No. 52, ¶¶253, 274.[6] By touting share gains while concealing the disastrous new-patient data, Defendants created "'an impression of a state of affairs that differs in a material way from the one that actually exists.'" *See In re Facebook, Inc. Sec. Litig.*, 87 F.4th 934, 948 (9th Cir. 2023).[7]

---

[6] The FAC also pleads that these statements were misleading for a host of other, independent reasons, all of which concealed the true state of Dexcom's commercial failure. These include Defendants' failure to disclose that their sales force was woefully inadequate and that they were "getting very few prescriptions" from primary care physician offices where they "had no sales people," forcing a frantic sales force expansion and realignment. ¶¶236-251, 257-272.

[7] Defendants' cited cases are inapposite and only highlight the weakness of their position. Doc. No. 54-1 at 13-14. Neither case involved a defendant, like Dexcom, concealing damning market share data while claiming to be "taking share." *In re Fed Ex Corp. Sec. Litig.*, 517 F. Supp. 3d 216, 229 (S.D.N.Y. 2021) (finding no misstatement where company's fulsome disclosures prevented the market from being

4930-1431-1798.v1

The FAC's allegations show the market was, in fact, misled.   Analyst commentary immediately following the February 8, 2024 statement demonstrates that investors accepted the false narrative, reporting that Dexcom was enjoying "competitive wins from ABT Type 2 basal-only patients" and that "they continue to take share from ABT too."  *See* ¶¶61, 252.  Analysts repeated this narrative after the April 25, 2024 call, noting "DXCM taking basal market share" and that management's "highlighted script data . . . points to continuing share growth."  ¶273.

The subsequent market collapse confirms the deception.  When the truth was finally revealed on July 25, 2024 (*i.e.*, that Dexcom was "not doing wonderful in the basal space," had "lost market share in the DME channel," and had "seen our share of new customers fall short of our expectations"), the market reacted in shock, erasing 40% of the Company's stock value.   ¶¶298-300.  This collapse – driven by the market's shock at the "credibility hit" and the realization that "DXCM is clearly losing the basal wars" – demonstrates that investors were misled by Statements J and K.  *Id.*; *see In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703 (9th Cir. 2021) (finding that negative market reaction supported the "materiality of the misleading omission").

In sum, Defendants have failed to "'clearly establish[]'" that "'no material issue of fact remains to be resolved,'" as they are required to do for judgment on the pleadings.  *Scottsdale*, 2025 WL 1736873, at *5.  Their Motion, premised on a prohibited factual challenge, only underscores why this case must proceed to discovery.

## B. Teri Lawver Is Liable Under §20(a) as a Control Person of Dexcom

Defendants' belated attempt to dismiss defendant Lawver fails.  Notably, after filing two prior motions to dismiss without once challenging Lawver's status as a

---

misled); *Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. HP Inc.*, 2021 WL 4199273, at *4 (N.D. Cal. 2021) (dismissing statements where plaintiffs, unlike here, did not allege any information about actual market share during the class period and instead relied on the conclusory allegation that defendants lacked "the capability to calculate market share").

control person, Defendants now raise this argument for the first time.  *See* Doc. No. 29-1 at 32 n.10; Doc. No. 39-1 at 32 n.6.  Defendants' decision to hold this argument in reserve is unsurprising, as it fundamentally misstates the law and the facts.

The Ninth Circuit has made clear that "it is not necessary to show actual participation or the exercise of actual power" to "make out a prima facie case" for control person liability.  *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000); *see also SEC v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011).  It is enough that the defendant had the power to influence or direct the actions of the primary violator.  *Howard*, 228 F.3d at 1065; *Flood v. Miller*, 35 F. App'x 701, 703 (9th Cir. 2002).

Importantly, it is black-letter law that a control person need not be a primary violator themselves to be held liable under §20(a).  The Ninth Circuit has repeatedly held that plaintiffs "'need not show that the defendant was a culpable participant in the [§10(b)] violation.'" *Todd*, 642 F.3d at 1223; *Howard*, 228 F.3d at 1065 (holding that plaintiffs "need not show" the controlling person's scienter or that he or she "culpabl[y] particip[ated]" in the alleged wrongdoing).  Accordingly, courts applying this standard uniformly hold that the existence of *a* primary violation (by *any* defendant, including the corporation itself) and control is sufficient at the pleading stage.

The definition of "control" under the statute is broad: it includes "'the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'" *Alphabet*, 1 F.4th at 702 (quoting 17 C.F.R. §230.405).  This broad definition is reflected in the Ninth Circuit Model Jury Instructions, which define a controlling person as one who "possesses the power to direct the management or policies of a business enterprise or of another person involved in the management or policymaking of the enterprise."  Model Civ. Jury Instr. 9th Cir. 18.1 (2025).

4930-1431-1798.v1

The question of control is "'an intensely factual question'" rarely suitable for resolution on the pleadings, where the Court must accept all factual allegations as true. *See Todd*, 642 F.3d at 1223; *Flood*, 35 F. App'x at 703; *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1183 (C.D. Cal. 2008) ("Whether a defendant is a control person is a fact question rarely appropriate for motion practice."). At the pleading stage, plaintiffs may satisfy the control element through allegations concerning a defendant's title, responsibilities, and involvement in corporate policy. *See SEB Inv. Mgmt. AB v. Wells Fargo & Co.*, 742 F. Supp. 3d 1003, 1024 (N.D. Cal. 2024) (individual defendant's "role as CEO and President and involvement in Wells Fargo's diversity efforts sufficiently allege this 'actual power or control'"); *Mueller v. S.D. Ent. Partners, LLC*, 2017 WL 3387732, at *6 (S.D. Cal. 2017) ("[A]t the motion to dismiss stage, allegations about an individual's title and duties have been found to be sufficient to establish control."); *Brendon v. Allegiant Travel Co.*, 412 F. Supp. 3d 1244, 1265 (D. Nev. 2019) (similar).[8] While officer status alone may not create a presumption of control, the Ninth Circuit has acknowledged that acting as an officer is "a sort of red light" signaling potential control, since "[i]t is not uncommon for control 'to rest with . . . members of the corporation's management.'" *Arthur Child.'s Tr. v. Keim*, 994 F.2d 1390, 1397 (9th Cir. 1993).

In sum, Plaintiff need only plead a primary violation and facts supporting the inference that Lawver had the power to direct or influence Dexcom, a primary violator. Plaintiff is not required to allege Lawver herself was the primary violator, a culpable participant, or engaged in the actual exercise of power, nor is Plaintiff required to rebut affirmative defenses at this stage.

---

[8] Control person claims are subject to Federal Rule of Civil Procedure 8. *Vanguard Specialized Funds v. VEREIT Inc.*, 2016 WL 5858735, at *17 n.19 (D. Ariz. 2016) ("[d]efendants argue the Rule 9(b) pleading standards should apply to . . . controlling person allegations, but they do not"); *see also Hefler v. Wells Fargo & Co.*, 2018 WL 1070116, at *14 (N.D. Cal. 2018); *Teamsters Loc. 617 Pension & Welfare Funds v. Apollo Grp., Inc.*, 690 F. Supp. 2d 959, 969-70 (D. Ariz. 2010) ("[§]20(a) control person claims are subject to . . . [Rule] 8(a)(2)" as the "case law . . . support[s] this" and "adopting a heightened pleading standard . . . would run afoul of the PSLRA").

Plaintiff's allegations easily meet this standard. Contrary to Defendants' claim, the FAC alleges far more than "boilerplate conclusions." Doc. No. 54-1 at 9.

- **Operational Command**: Lawver was the CCO of Dexcom, responsible for leading Dexcom's entire worldwide commercial teams. ¶¶23, 338.

- **Strategic Responsibility**: In this executive-level capacity, she had responsibility over the Company's **commercial strategy and sales efforts**. This responsibility was not generic; it specifically included the commercial strategy for the newly covered Type 2 Basal market – the precise operation that failed and that is the subject of this litigation. ¶338. These are the exact operations Defendants' false statements were intended to obscure.

- **Public-Facing Authority**: Lawver also served as the public face of the Company's commercial efforts, representing Dexcom at its 2023 Investor Day. ¶113.

These are not "boilerplate" allegations; they are specific allegations of executive-level command over the very business unit at the heart of the fraud. They amply demonstrate that Lawver had control over Dexcom. *See In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1089 (N.D. Cal. 2001) (finding sufficient allegations that "'by virtue of their executive and managerial positions [defendants] had the power to control and influence [the defendant corporation], which they exercised'").

Defendants' remaining arguments – that Lawver did not control Sylvain's statements and that they were peers (Doc. No. 54-1 at 10) – misstate the law. The test is not whether Lawver controlled Sylvain or his specific statements. The test is whether she had the power to influence or direct the actions of the primary violator. *Howard*, 228 F.3d at 1065. The primary violator here is Dexcom, the Company. Defendants' suggestion (Doc. No. 54-1 at 9-10) that Dexcom is somehow not a primary violator because Lawver was not on the calls at issue is a *non-sequitur*. It is black-letter law that a corporation is liable as a primary violator for its officers' fraud. "[A] corporation is responsible for a corporate officer's fraud committed 'within the scope of his employment' or 'for a misleading statement made by an employee or other agent who has actual or apparent authority.'" *In re ChinaCast Educ. Corp. Sec.*

*Litig.*, 809 F.3d 471, 476 (9th Cir. 2015).  Defendants do not (and cannot) argue that Sylvain, the CFO, acted outside the scope of his employment when speaking on Dexcom's behalf during official, Dexcom-hosted conference calls.  ¶¶234, 255; *see ChinaCast*, 809 F.3d at 472-73, 475 (holding CEO's fraud "can be imputed to ChinaCast" because he acted with "apparent authority"); *see also Alphabet*, 1 F.4th at 706 (former CEO's scienter "imputed to Alphabet").  Thus, Dexcom is indisputably a primary violator.

Indeed, courts in the Ninth Circuit reject Defendants' flawed theory that a §20(a) defendant must have "the specific ability to control the actionable fraudulent statements." *In re BofI Holding, Inc. Sec. Litig.*, 2017 WL 2257980, at *28 (S.D. Cal. 2017).  That Lawyer was not on the earnings calls (Doc. No. 54-1 at 9-10) is legally irrelevant.  Her liability arises from her control over the Company, not her participation in the fraudulent statements themselves. *Hollinger v. Titan Cap. Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990) (a plaintiff is not required to show "'culpable participation'").[9]

Defendants' "peer" argument is also a red herring.  The law does not require Plaintiff to plead a corporate hierarchy where Lawyer was Sylvain's boss.  It requires only that she had the power to control Dexcom. *See Leventhal v. Chegg, Inc.*, 721 F. Supp. 3d 1003, 1018 (N.D. Cal. 2024) (emphasis in original) (noting the test is "'the requisite power and authority to direct ***the company***'").  As the CCO, with primary responsibility for the Company's entire global commercial strategy and sales operation, Lawyer plainly had "'the requisite power and authority to direct ***the company***.'" *See id.*  Defendants' suggestion that "[t]hose with equal or lower titles do

---

[9]  Defendants' authorities are in accord with the well-settled principle that control over the company satisfies §20(a). *See Middlesex Ret. Sys. v. Quest Software Inc.*, 527 F. Supp. 2d 1164, 1194 (C.D. Cal. 2007) (senior vice president "may still be properly included as a defendant in Plaintiff's §20(a) claim at this early stage because of his control over Quest"); *cf. Abdo v. Fitzsimmons*, 2017 WL 6994539, at *20 (N.D. Cal. 2017) (finding §20(a) allegations insufficient where plaintiffs alleged control over the company but did not bring claims against the company as a primary violator).

1   not control those with equal or higher titles" (Doc. No. 54-1 at 10) is also incorrect.

2   *See Leventhal*, 721 F. Supp. 3d at 1018 (finding control over the company sufficed,

3   but noting it was nevertheless "improbable" that the President of Learning Services

4   did not exercise control over the CEO and CFO).

5   **V.     CONCLUSION**

6         The Court should deny Defendants' Motion in its entirety.

7   DATED:  October 31, 2025                    Respectfully submitted,

8                                               ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
9                                               DANIEL S. DROSMAN
                                                W. MARK CONOVER
10                                              SARAH A. FALLON

11

12                                                      s/ Daniel S. Drosman
                                                      DANIEL S. DROSMAN
13
                                                655 West Broadway, Suite 1900
14                                              San Diego, CA  92101
                                                Telephone:  619/231-1058
15                                              ddrosman@rgrdlaw.com
                                                mconover@rgrdlaw.com
16                                              sfallon@rgrdlaw.com

17                                              ROBBINS GELLER RUDMAN
                                                  & DOWD LLP
18                                              ELIZABETH A. SHONSON
                                                (admitted *pro hac vice*)
19                                              LUKE GOVEAS
                                                (admitted *pro hac vice*)
20                                              225 NE Mizner Boulevard, Suite 720
                                                Boca Raton, FL  33432
21                                              Telephone:  561/750-3000
                                                eshonson@rgrdlaw.com
22                                              lgoveas@rgrdlaw.com

23                                              Lead Counsel for Lead Plaintiff

24
                                                O'DONOGHUE & O'DONOGHUE LLP
25                                              JOHN M. McINTIRE
                                                5301 Wisconsin Avenue, N.W., Suite 800
26                                              Washington, DC  20015
                                                Telephone:  202/362-0041
27                                              jmcintire@odonoghuelaw.com

28                                              Additional Counsel

4930-1431-1798.v1