COOLEY LLP
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
HEATHER M. SPEERS (305380)
(hspeers@cooley.com)
DYLAN K. SCOTT (332796)
(dscott@cooley.com)
CRISTINA M. FERRUOLO (339442)
(cferruolo@cooley.com)
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone: +1 858 550 6000
Facsimile: +1 858 550 6420

*Attorneys for Defendants Dexcom, Inc., Kevin Sayer, Jereme Sylvain, and Teri Lawver*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN RE: DEXCOM, INC. CLASS ACTION SECURITIES LITIGATION

Lead Case No. 24-cv-01485-RSH-VET

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**

Ctrm: 3B, 3rd Floor
Judge: Honorable Robert S. Huie
Hearing: November 14, 2025

PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........ 1
II. ARGUMENT ........ 2
A. Defendants' Motion Is Proper Under Rule 12(c) ........ 2
B. Teri Lawver Should Be Dismissed. ........ 3
C. The Two Remaining Challenged Statements Should Be Dismissed. ........ 5
III. CONCLUSION ........ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Alphabet, Inc. Securities Litigation*, 1 F.4th 687 (9th Cir. 2021) .......... 3

*In re Apple Inc. Securities Litigation*, 2020 WL 6482014 (N.D. Cal. Nov. 4, 2020) .......... 4

*Blake v. Canoo Inc.*, 2025 WL 2992263 (C.D. Cal. Oct. 22, 2025) .......... 8

*In re BofI Holding, Inc. Securities Litigation*, 2017 WL 2257980 (S.D. Cal. May 23, 2017) .......... 4

*Boilermakers National Annuity Trust Fund v. WaMu Mortgage Pass Through Certificates, Series AR1*, 748 F. Supp. 2d 1246 (W.D. Wash. 2010) .......... 7

*Brecher v. Citigroup Global Markets, Inc.*, 2013 WL 12205124 (S.D. Cal. Mar. 27, 2013) .......... 2, 3

*City of Royal Oak Retirement System v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045 (N.D. Cal. 2012) .......... 4

*In re Cloudera, Inc.*, 2021 WL 2115303 (N.D. Cal. May 25, 2021) .......... 9

*In re Coinstar Inc. Securities Litigation*, 2011 WL 4712206 (W.D. Wash. Oct. 6, 2011) .......... 4

*In re Countrywide Financial Corp. Securities Litigation*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008) .......... 5

*In re Cylink Securities Litigation*, 178 F. Supp. 2d 1077 (N.D. Cal. 2001) .......... 3

*In re Dura Pharmaceuticals, Inc. Securities Litigation*, 452 F. Supp. 2d 1005 (S.D. Cal. 2006) .......... 6

*Electrical Workers Pension Fund, Local 103, I.B.E.W. v. HP Inc.*, 2021 WL 4199273 (N.D. Cal. Sep. 15, 2021) .......... 6

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*In re Energy Recovery Inc. Securities Litigation*,
2016 WL 324150 (N.D. Cal. Jan. 27, 2016) ........................................ 4

*In re Eventbrite, Inc. Securities Litigation*,
2020 WL 2042078 (N.D. Cal. Apr. 28, 2020) ........................................ 5

*In re Fastly, Inc. Securities Litigation*,
2025 WL 2721693 (N.D. Cal. Sep. 24, 2025)........................................ 8

*In re Gupta Corp. Securities Litigation*,
900 F. Supp. 1217 (N.D. Cal. 1994)........................................ 4

*Heraldez v. Bayview Loan Servicin, LLC*,
2016 WL 10834101 (C.D. Cal. Dec. 15, 2016) ........................................ 8

*Khoja v. Orexigen Therapeutics, Inc.*,
99 F.3d 988 (9th Cir. 2018) ........................................ 5, 6

*Leventhal v. Chegg, Inc.*,
721 F. Supp. 3d 1003 (N.D. Cal. 2024)........................................ 5

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008) ........................................ 9

*Mueller v. San Diego Entertainment Partners, LLC*,
2017 WL 3387732 (S.D. Cal. Aug. 7, 2017)........................................ 5

*Murphy v. Precision Castparts Corp.*,
2020 WL 4040827 (D. Or. July 17, 2020) ........................................ 4

*Newton v. Parker Drilling Management Services, Inc.*,
2020 WL 1972572 (C.D. Cal. Jan. 29, 2020)........................................ 2

*In re NextCard, Inc. Securities Litigation*,
2005 WL 6342406 (N.D. Cal. Feb. 7, 2005)........................................ 6

*In re NVIDIA Corp. Securities Litigation*,
768 F.3d 1046 (9th Cir. 2014) ........................................ 10

*Oklahoma Firefighters Pension & Retirement System v. Xerox Corp.*,
300 F. Supp. 3d 551 (S.D.N.Y. 2018) ........................................ 9

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Sandoval v. Uphold HQ Inc.*,
2025 WL 1268291 (S.D.N.Y. May 1, 2025) .......... 5

*Sprint Telephony PCS, L.P. v. County of San Diego*,
311 F. Supp. 2d 898 (S.D. Cal. 2004) .......... 3

*Venoco, LLC v. Plains Pipeline, L.P.*,
2019 WL 3308759 (C.D. Cal. Apr. 23, 2019) .......... 2, 3

*Wochos v. Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) .......... 9

*Ziolkowski v. Netflix, Inc.*,
2018 WL 4587515 (N.D. Cal. Sep. 25, 2018) .......... 8

## I. INTRODUCTION[1]

Plaintiff's Opposition confirms why dismissal is warranted.

To start, Plaintiff spends more time trying to keep the Court from reaching Defendants' arguments than trying to rebut them. It labels this Rule 12(c) motion a motion for reconsideration in disguise, yet repeatedly admits Defendants are raising "new" arguments "for the first time." Even without this concession, the fact remains that the prior Order did not address: (i) whether Teri Lawver (Dexcom's former CCO) was a control person; or (ii) the distinction between new prescriptions and market share that renders Plaintiff's allegations for Statements J and K inadequate.

Ms. Lawver should be dismissed with prejudice. There is no dispute she is not the "maker" of either remaining challenged statement and thus cannot be liable under Section 10(b). Nor does she qualify as a control person under Section 20(a) for oral statements made by the CFO in the question-and-answer portion of earnings calls that Plaintiff does not allege Ms. Lawver even attended.

The two remaining challenged statements should also be dismissed because no well-pled allegation contradicts them. Plaintiff relies entirely on statements made by Abbott (Dexcom's competitor) in January and April 2024 to allege that Jereme Sylvain (Dexcom's CFO) lied in February and April 2024 when he said Dexcom was gaining market share in the basal market. But Abbott did not address market share on those calls. Abbott said it was getting 7 out of 10 *new* basal prescriptions. That is an entirely different metric. Plaintiff tries to distract the Court from this fatal fact by focusing on the IQVIA data in Defendants' Answer. But Defendants' arguments do not depend on that data; it merely provides additional proof. It is Plaintiff's allegations—and the Abbott transcripts on which those allegations rely—that fail to plead falsity.

---

[1] Unless otherwise noted, terms herein have the same meaning as in Defendants' Motion for Judgment on the Pleadings (Doc. No. 54-1); "¶" refers to the AC; all emphasis is added and internal citations, quotation marks, and alterations are omitted.

## II. ARGUMENT

### A. Defendants' Motion Is Proper Under Rule 12(c).

Despite Plaintiff's rhetoric that Defendants are merely rehashing arguments already decided, Plaintiff repeatedly and unambiguously concedes the Rule 12(c) arguments are new. *See* Doc. No. 56 at 27–28 ("[A]fter filing two prior motions to dismiss without once challenging Lawver's status as a control person, ***Defendants now raise this argument for the first time***."); *id.* at 10 ("Defendants' attempt to dismiss defendant Lawver rests on a ***new . . . argument*** that she was not a 'control person.'"); *id.* at 13 ("They also contend that defendant Lawver should be dismissed because she did not have control over these specific statements [cite] – ***a new legal theory*** they failed to raise in their two prior motions to dismiss."); *id.* at 22 ("Defendants erect a straw man by mischaracterizing Plaintiff's allegations to fit their ***new*** 'total share' narrative."); *id.* at 23 ("They claim, ***for the first time – after failing to raise this argument in two prior motions to dismiss*** – that Sylvain's statements about 'taking share' actually referred to 'total basal market share.'"); *id.* at 22 (recharacterizing Defendants' arguments as "***new*** factual assertions").

And the arguments plainly *are* new. They raise issues the Court has not previously considered, even if the requested relief (*i.e.*, dismissal for failure to state a claim) is the same. *See Venoco, LLC v. Plains Pipeline, L.P.*, 2019 WL 3308759, at *4–5 (C.D. Cal. Apr. 23, 2019) (Rule 12(c) motion proper when raising same defense that it had no duty under a contract but for a different reason) *aff'd*, 814 F. App'x 318 (9th Cir. 2020); *Newton v. Parker Drilling Mgmt. Servs., Inc.*, 2020 WL 1972572, at *2–3 (C.D. Cal. Jan. 29, 2020) (similar).

Nor is there any merit to Plaintiff's contention that the Court is barred from ruling on Defendants' new arguments under the law-of-the-case doctrine. That doctrine "is not an inexorable command," but a "discretionary" one that applies "***only*** when the issue in question was ***actually considered and decided***" in a prior order. *Venoco*, 2019 WL 3308759, at *4; *see also Brecher v. Citigroup Glob. Mkts.,*

*Inc.*, 2013 WL 12205124, at *3–4 (S.D. Cal. Mar. 27, 2013) (law of the case did not apply where "Defendants assert[ed] at least some issues that were not previously considered"); *Sprint Telephony PCS, L.P. v. Cnty. of San Diego*, 311 F. Supp. 2d 898, 905 (S.D. Cal. 2004) (law of the case did not apply where the "court previously considered defendants' failure to state a claim *defense* in its earlier order" but not "the *issues* defendants now raise in their motion presently before the court") (emphasis in original). The Court's prior Order contains no discussion of whether Ms. Lawver was a control person, nor of the distinction between new prescriptions and market share that is fatal to Plaintiff's falsity allegations for Statements J and K. *See* Doc. No. 47 at 36 (addressing Section 20(a) claim); *id.* at 26–29 (addressing statements J and K). Because those issues were never decided—"explicitly or by necessary implication"—this is not a motion for reconsideration, and the law-of-the-case doctrine does not apply. *Venoco*, 2019 WL 3308759, at *4.

**B. Teri Lawver Should Be Dismissed.**

There is no basis for Ms. Lawver to remain a defendant. She did not make either of the two remaining challenged statements and exercised no control over them. Plaintiff's arguments to the contrary rest on an attenuated theory of control that has no legal precedent based on the circumstances here.[2]

According to Plaintiff, it only needs to plead that Ms. Lawver had the power to control ***Dexcom***, not Mr. Sylvain. Doc. No. 56 at 29. That may be true where a challenged statement was made in an ***SEC filing***. *See id*. at 30–31 (citing *In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1089 (N.D. Cal. 2001) and *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 706 (9th Cir. 2021), both of which included challenged statements made in SEC filings). It may even be true for a statement in a ***press release*** where the executive could review or approve the statement before publication. *See, e.g.*,

[2] Plaintiff also suggests that the issue of control cannot be resolved at this stage. Doc. No. 56 at 29. That is wrong, as evidenced by the myriad authority cited herein where courts found allegations inadequate to support the element of control at the pleading stage.

*Murphy v. Precision Castparts Corp.*, 2020 WL 4040827, at *25 n.8 (D. Or. July 17, 2020) (distinguishing between statements made on earnings calls versus those made in press releases where the alleged control person "conducted a final review" or "was the one to sign off on it").

That logic, however, does ***not*** apply where—as here—the only surviving challenged statements were made during the ***question-and-answer portion of an earnings call Ms. Lawver did not even attend***. *See, e.g.*, *City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*, 880 F. Supp. 2d 1045, 1071 (N.D. Cal. 2012) (holding plaintiffs allegations support control over contents of SEC filings, but not control over statements made by other defendants on investor calls, describing the "casual chain" in that circumstance "too attenuated to survive a motion to dismiss"); *In re Coinstar Inc. Sec. Litig.*, 2011 WL 4712206, at *11 (W.D. Wash. Oct. 6, 2011) (dismissing control person claims against defendants who neither made the challenged statement on the earnings calls nor exercised control over the *individual* defendant who did); *In re Energy Recovery Inc. Sec. Litig.*, 2016 WL 324150, at *26 (N.D. Cal. Jan. 27, 2016) (dismissing control person claims against Chief Marketing Officer who "did not speak on the Company's behalf during earnings conference calls with investors" and where "[t]here is no allegation that she directed or exercised control over [the individual] who allegedly made the false and misleading statements"); *In re Gupta Corp. Sec. Litig.*, 900 F. Supp. 1217, 1242–43 (N.D. Cal. 1994) (dismissing control person claims based on oral statements made by other defendants). *Cf. In re Apple Inc. Sec. Litig.*, 2020 WL 6482014, at *14 (N.D. Cal. Nov. 4, 2020) ("Although defendants are correct that [CFO] did not control [CEO's] statements, he plausibly controlled [the company's] statements" by "co-host[ing] the [earnings] call where the challenged statements were made, and he could have corrected the record."); *In re BofI Holding, Inc. Sec. Litig.*, 2017 WL 2257980, at *25 (S.D. Cal. May 23, 2017) (officer was a control person where he "participated" in conference calls where misleading statements were made and *also* signed financial

statements: "actual authority over the preparation and presentation to the public of financial statements is sufficient to demonstrate control").[3]

Accordingly, because Ms. Lawver had no control over the two remaining challenged statements, she should be dismissed with prejudice.

**C. The Two Remaining Challenged Statements Should Be Dismissed.**

Two statements remain in this case; neither is actionable based on the allegations in the AC. In February and April 2024, Mr. Sylvain told investors that Dexcom's basal market share was growing. Plaintiff alleged this was false because Abbott purportedly claimed its basal market share was holding steady at 70% during that same period. *See, e.g.*, ¶237 (claiming Abbott's "market share remained the same" from January 2024 to April 2024). Accepting that allegation as true, the Court held that Plaintiff adequately pled falsity. Doc. No. 47 at 27–29.

But the Abbott transcripts on which Plaintiff relies contradict that allegation—and those transcripts control.[4] *See Sandoval v. Uphold HQ Inc.*, 2025 WL 1268291, at *7 (S.D.N.Y. May 1, 2025) ("Where, as here, a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true."); *In re Eventbrite, Inc. Sec. Litig.*, 2020 WL 2042078, at *7 (N.D. Cal. Apr. 28, 2020)

---

[3] Plaintiff's other cases are inapposite as the alleged control person was also primarily liable as a "maker" of a surviving challenged statement. *See Leventhal v. Chegg, Inc.*, 721 F. Supp. 3d 1003, 1018 (N.D. Cal. 2024); *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1201 (C.D. Cal. 2008); *Mueller v. San Diego Ent. Partners, LLC*, 2017 WL 3387732, at *5–6 (S.D. Cal. Aug. 7, 2017).

[4] Plaintiff does not dispute that the February 2024 Abbott transcript is incorporated by reference; it merely argues that it cannot be considered to create a factual dispute. Doc. No. 56 at 19. But using the transcript to show the words that Abbott's executives actually said is not a factual dispute; that is the purpose of the incorporation by reference doctrine. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018) (noting the "doctrine is designed to prevent artful pleading by plaintiffs"). The April 2024 transcript is also incorporated by reference, but the Court need not look to it as the AC already contains the relevant language. ¶¶237, 258.

("*Khoja* does not prevent a defendant from using the doctrines of judicial notice or incorporation by reference to create factual disputes with a plaintiff's *conclusory* allegations.") (emphasis in original). Those transcripts show that Abbott never said it had 70% basal market share. Rather, in January and April 2024, Abbott stated that it was winning 7 out of 10 ***new prescriptions*** for the basal patient segment. Doc. No. 39-15 at 12 (January 2024: "7 out of 10 ***new*** scripts for this patient segment is Libre"); Doc. No. 52 at ¶¶237, 258 (April 2024: "7 out of every 10 ***new*** prescriptions for this basal population…are going to Libre.").

A win rate for new prescriptions is not market share. Those are different metrics. There is no well-pled fact that Abbott said anything about its basal ***market share*** during this period. Abbott's statements, therefore, do not contradict Mr. Sylvain's, and do not support falsity. *See Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. HP Inc.*, 2021 WL 4199273, at *4 (N.D. Cal. Sep. 15, 2021) (dismissing alleged misstatements regarding market share increases where plaintiff failed to plead facts that market share did not increase); *In re NextCard, Inc. Sec. Litig.*, 2005 WL 6342406, at *7 (N.D. Cal. Feb. 7, 2005) ("It is Plaintiffs' burden to connect the dots by clearly alleging particularized facts demonstrating why each statement was false or misleading when made.").

Plaintiff makes several arguments in response. None has merit.

**<u>First</u>**, Plaintiff argues that Defendants "speculate without foundation" that the Abbott market share allegations rest on Abbott's January and April 2024 earnings call transcripts. Doc. No. 56 at 23. But if those transcripts are not the source, then Plaintiff has none at all—and its allegations fail outright. The PSLRA mandates that "a securities fraud complaint based on information and belief has to ***state with particularity*** all facts on which a belief is formed, and in so doing, the plaintiff must reveal ***the sources of her information***." *In re Dura Pharms., Inc. Sec. Litig.*, 452 F. Supp. 2d 1005, 1024 (S.D. Cal. 2006); AC at 1 (stating allegations are made "upon information and belief"). Admitting that the AC fails to identify the sources of

information cannot save Plaintiff now; it simply supplies another, independent basis for dismissal.

**Second**, Plaintiff tries to divert attention from the Abbott transcripts by attacking the IQVIA data cited in Defendants' Answer. Doc. No. 56 at 17–21. The Court, however, does not even need to consider the IQVIA data because, as discussed above, ***the Abbott transcripts, alone, demonstrate the flaw in Plaintiff's falsity allegations***. Nonetheless, the IQVIA data confirms that a win rate on new prescriptions does not equate to market share. Doc. No. 52 at ¶¶237, 258. And despite leveling myriad *other* attacks on the data, Plaintiff does not dispute *that* key premise. Instead, Plaintiff complains that IQVIA data only includes retail prescriptions, not DME. Doc. No. 56 at 24–25. But Plaintiff is the one who claimed IQVIA data was the relevant source. *See, e.g.*, ¶¶178, 237 ("IQVIA data cited by Abbott showed Abbott was winning seven of ten of the scripts in the newly covered Type 2 basal population in January 2024."); ¶178 n.5 ("IQVIA data is regularly used within the pharmaceutical and medical device industries as a useful indicator of market trends – including by Defendants themselves, who relied on IQVIA data in their presentations to investors."); ¶258 (In April, "Abbott was getting seven out of ten scripts in the newly insured Type 2 basal population, which matched January 2024 IQVIA data."). Plaintiff cannot retreat from its own allegations merely because the data does not support its story. *See Boilermakers Nat'l Annuity Tr. Fund v. WaMu Mortg. Pass Through Certificates, Series AR1*, 748 F. Supp. 2d 1246, 1258 (W.D. Wash. 2010) (rejecting plaintiffs' attempt to "ignore their own allegations").

**Third**, Plaintiff claims Defendants' mathematical hypothetical is "built on arbitrary assumptions." Doc. No. 56 at 23–24. But the hypothetical was meant only to illustrate how Abbott's win rate on new prescriptions could stay constant while its market share fell (or conversely, while Dexcom's market share increased). Plaintiff

never disputes that basic mathematical point because it cannot.[5] *See Blake v. Canoo Inc.*, 2025 WL 2992263, *14 (C.D. Cal. Oct. 22, 2025) ("Plaintiff's failure to address [defendant's argument] is tantamount to a concession on that issue."); *Heraldez v. Bayview Loan Servicing, LLC*, 2016 WL 10834101, at *2 (C.D. Cal. Dec. 15, 2016) ("Failure to oppose constitutes a waiver or abandonment of the issue.").

**Finally**, Plaintiff tries to rewrite the challenged statements. It now contends that when Mr. Sylvain said Dexcom was "taking share," he was talking about new prescriptions (like Abbott), rather than market share. Doc. No. 56 at 23. Once again, Plaintiff is thwarted by its own allegations, which unequivocally state that Mr. Sylvain was addressing market share. *See* ¶236 ("Sylvain's February 2024 statements were materially false and misleading because they conveyed the impression that Dexcom was gaining meaningful ***share in the basal segment*** . . . In truth, however, Dexcom was losing significant ***market share*** to Abbott."); ¶257 ("Sylvain's April 25, 2024 statements were materially false and misleading because they conveyed the misimpression that Dexcom was successfully capturing ***market share in the Type 2 basal segment*** . . . Dexcom was continuing to lose share to Abbott."). Again, Plaintiff is stuck with its allegations; it cannot advance a new theory via an opposition brief. *See In re Fastly, Inc. Sec. Litig.*, 2025 WL 2721693, at *17 (N.D. Cal. Sep. 24, 2025) ("The theory of falsity that Plaintiffs advance in their opposition is not alleged in the AC. Accordingly, the Court cannot consider it for the purpose of resolving the present motion.").

---

[5] Plaintiff also complains about "unsupported assumptions about retention rates." Doc. No. 56 at 24. But the AC is devoid of *any* allegations at all about retention rates, which again, only undercuts falsity because retention rates are a necessary component for calculating market share. *See Ziolkowski v. Netflix, Inc.*, 2018 WL 4587515, at *4 (N.D. Cal. Sep. 25, 2018) ("Plaintiff also cannot overcome his burden of pleading falsity with the required particularity by arguing [discovery] will provide the particularity the FAC lacks . . . The burden is on Plaintiff to present facts plausibly showing [falsity] and that the Defendants knew as much when they made the challenged statements.").

Plaintiff further argues that even if Dexcom was gaining basal market share—as the IQVIA data clearly shows—the increase was "minimal." Doc. No. 56 at 25–27; *id.* at 9 (claiming the gains were not "meaningful").[6] But Mr. Sylvain never claimed Dexcom was taking a *large* share. Plaintiff cannot manufacture falsity by rewriting Defendants' statements. *See Oklahoma Firefighters Pension & Ret. Sys. v. Xerox Corp.*, 300 F. Supp. 3d 551, 572 (S.D.N.Y. 2018) ("[T]he Court focuses on the statements themselves, not plaintiff's recasting of them."); *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1193 (9th Cir. 2021) (falsity cannot be pled by "rewrit[ing]" the challenged statements). Moreover, as Plaintiff is quick to point out, this time period saw the "largest expansion of coverage" in Dexcom's history—"more than three million new patients." Doc. No. 56 at 24. Thus, even modest gains in market share represented substantial patient gains, refuting Plaintiff's unfounded say-so that Dexcom's market share gains were not meaningful. *See Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064–65 (9th Cir. 2008) ("[W]hile the court assumes that the facts in a complaint are true, it is not required to indulge unwarranted inferences in order to save a complaint from dismissal."); *In re Cloudera, Inc.*, 2021 WL 2115303, at *15 (N.D. Cal. May 25, 2021) (same).

In sum, because the Abbott transcripts Plaintiff relies on to support falsity do not even address the same metric as the two remaining challenging statements, Plaintiff has failed to plead falsity, and Statements J and K should be dismissed. Moreover, because Dexcom was, in fact, gaining share in the basal market in February and April 2024, dismissal should be with prejudice.

---

[6] The Court previously rejected this argument in the context of Statements E and F. *See* Doc. No. 47 at 19 (rejecting Plaintiff's argument that Mr. Sylvain's statement "gave investors the false impression that Dexcom was effectively competing and taking a 'meaningful share' of the Type 2 Basal market away from Abbott."); *id.* at 21 (similar).

## III. CONCLUSION

The AC should be dismissed in full, with prejudice.[7] If any portion survives, Ms. Lawver should, nonetheless, be dismissed with prejudice.

Dated: November 7, 2025

COOLEY LLP

By: */s/ Koji F. Fukumura*
Koji F. Fukumura

*Attorneys for Defendants Dexcom, Inc., Kevin Sayer, Jereme Sylvain, and Teri Lawver*

---

[7] If the Court grants dismissal of the two remaining statements, there is nothing left to support the Section 10(b) or 20(a) claim as to any Defendant. *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1052 (9th Cir. 2014).