COOLEY LLP
KOJI F. FUKUMURA (189719)
(kfukumura@cooley.com)
HEATHER M. SPEERS (305380)
(hspeers@cooley.com)
DYLAN K. SCOTT (332796)
(dscott@cooley.com)
CRISTINA M. FERRUOLO (339442)
(cferruolo@cooley.com)
10265 Science Center Drive
San Diego, CA 92121-1117
Telephone:  +1 858 550 6000
Facsimile:   +1 858 550 6420

*Attorneys for Defendants Dexcom, Inc., Kevin Sayer, Jereme Sylvain, and Teri Lawver*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: DEXCOM, INC. CLASS ACTION SECURITIES LITIGATION | Lead Case No. 24-cv-01485-RSH-VET |
| | **REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS LEAD PLAINTIFF'S SECOND AMENDED CONSOLIDATED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| | Ctrm:       3B, 3rd Floor<br>Judge:      Honorable Robert S. Huie<br>Hearing:   March 27, 2026 |
| | PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT |

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.   THE SAC FAILS TO PLEAD FALSITY ....................................................... 2

    A.    Plaintiff Cannot Plead Falsity by Re-Writing the Challenged Statements. ................................................................................................ 2

        1.    No "Sweeping Narrative" of "Competitive Success." .............. 2

        2.    Plaintiff Fails to Rehabilitate the "New Patients" Construction the Court Rejected. ............................................. 3

    B.    Plaintiff Cannot Plead Falsity Based on the Purported Admission that Abbott Was Winning 7 of 10 New Prescriptions. ........ 4

    C.    Plaintiff's Subjective Assessment of Dexcom's Market-Share Gains Does Not Support Falsity. ........................................................ 5

    D.    Plaintiff's Omission Theory Fails. ..................................................... 6

    E.    Plaintiff's "Literal Truth" Argument Fails. ....................................... 6

    F.    The Court Should Reject Plaintiff's Attempt to Plead Fraud by Hindsight. .......................................................................................... 7

III.  THE SAC FAILS TO PLEAD SCIENTER .................................................... 8

    A.    Plaintiff Misstates the Effect of the Court's Prior Scienter Holding. .............................................................................................. 8

    B.    The IQVIA Data Does Not Support Scienter. .................................... 8

    C.    Plaintiff's Other Scienter Arguments Fail. ........................................ 9

IV.   THE 10(B) CLAIM AGAINST SAYER AND THE 10(B) AND 20(A) CLAIMS AGAINST LAWVER SHOULD BE DISMISSED ..................... 10

V.    CONCLUSION .............................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re AnaptysBio, Inc.*,
2021 WL 4267413 (S.D. Cal. Sept. 20, 2021) ......................................................6

*Askins v. U.S. Dep't of Homeland Sec.*,
899 F.3d 1035 (9th Cir. 2018) .............................................................................4

*Bondali v. YUM! Brands, Inc.*,
620 Fed. App'x 483 (6th Cir. 2015) ......................................................................2

*City of Royal Oak Ret. Sys. v. Juniper Networks, Inc.*,
880 F. Supp. 2d 1045 (N.D. Cal. 2012) .............................................................10

*In re Cloudera, Inc.*,
121 F.4th 1180 (9th Cir. 2024) ............................................................................2

*Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. HP Inc.*,
2021 WL 4199273 (N.D. Cal. Sept. 15, 2021) .....................................................5

*In re Energy Recovery Inc. Sec. Litig.*,
2016 WL 324150 (N.D. Cal. 2016) ....................................................................10

*Evanston Police Pension Fund v. McKesson Corp.*,
411 F.Supp.3d 580 (N.D. Cal. 2019) ...................................................................8

*In re Intrexon Corp. Sec. Litig.*,
2017 WL 732952 (N.D. Cal. Feb. 24, 2017) ........................................................8

*Jackson v. Loews Hotels, Inc.*,
2019 WL 6721637 (C.D. Cal. July 24, 2019) .......................................................4

*Lloyd v. CVB Fin. Corp.*,
811 F.3d 1200 (9th Cir. 2016) .............................................................................7

*M & M Hart Living Tr. v. Glob. Eagle Ent., Inc.*,
2017 WL 5635424 (C.D. Cal. Aug. 20, 2017) .....................................................9

*Macquarie Infrastructure Corporation v. Moab Partners, L.P.*,
601 U.S. 257 (2024) ............................................................................................6

*Menon v. Maxeon Solar Techs., Ltd.*,
2025 WL 1223559 (N.D. Cal. 2025) ....................................................................7

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Miller v. Thane Int'l, Inc.*,
519 F.3d 879 (9th Cir. 2008)......................................................................................7

*Okla. Firefighters Pension v. Xerox Corporation*,
300 F. Supp. 3d 551 (S.D.N.Y. 2018).........................................................................2

*Park v. GoPro, Inc.*,
2019 WL 1231175 (N.D. Cal. Mar. 15, 2019)............................................................5

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
2012 WL 1868874 (N.D. Cal. 2012)............................................................................9

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014).....................................................................................6

*Reese v. Malone*,
747 F.3d 557 (9th Cir. 2014).......................................................................................9

*Silveria v. McDonough*,
2022 WL 187839 (9th Cir. Jan. 20, 2022)................................................................10

*In re Vantive Corp. Sec. Litig.*,
110 F.Supp.2d 1209 (N.D. Cal. 2000)....................................................................7, 8

*Williams v. Woodford*,
384 F.3d 567 (9th Cir. 2004).......................................................................................3

*Zucco Partners, LLC v. Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009)...................................................................................8, 9

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iii

**REPLY ISO DEFS' MOTION TO DISMISS SAC
CASE NO. 24-CV-01485-RSH-VET**

## I.    INTRODUCTION[1]

Plaintiff's Opposition describes a company secretly lagging behind its key competitor while publicly advancing a "sweeping narrative" of unbridled "competitive success." But that description is untethered from any well-pled facts. The two remaining challenged statements are not sweeping proclamations of competitive domination; they are circumscribed statements of fact. Each represents that Dexcom was "taking share" in the basal market based on "script data"—nothing more. And Plaintiff's own allegations confirm Dexcom was doing exactly that.

The Opposition attempts to skirt this reality by repackaging Plaintiff's previously-rejected arguments with new labels. But none supports falsity or scienter. For example, Plaintiff switches the source of its "7 of 10 new prescriptions" allegation—originally attributed to Abbott, now recast as a purported admission by Defendants. It adopts the very market share data cited in Defendants' Motion for Judgment on the Pleadings ("MJOP") that it previously urged the Court to disregard. Using that data (and its own hypothetical), Plaintiff reiterates its prior argument that although Dexcom did in fact gain market share, the gains were not "meaningful" enough to count. And across it all, Plaintiff recycles its legally baseless "misimpression" theory—reframing the challenged statements as (i) commentary on Dexcom's share of new prescriptions (supposedly misleading because Abbott won 7 of 10 of such prescriptions) and (ii) sweeping narratives about Dexcom's competitive success (supposedly misleading because Abbott maintained a larger market share). Neither characterization survives scrutiny of the actual words and context of the challenged statements.

The bottom line remains unchanged: when Sylvain said Dexcom was "taking share," the data showed that it was. No amount of repackaging can overcome that fundamental reality. Accordingly, the SAC should be dismissed with prejudice.

---

[1] Unless otherwise noted, terms herein have the same meaning as in Defendants' Motion to Dismiss (Dkt. 70-1); "¶" refers to the SAC; all emphasis is added and internal citations, quotation marks, and alterations are omitted.

## II.   THE SAC FAILS TO PLEAD FALSITY

### A.   Plaintiff Cannot Plead Falsity by Re-Writing the Challenged Statements.

The PSLRA requires Plaintiff to plead specific statements that were false or misleading and to explain why; it does not permit Plaintiff to plead falsity by reference to an amorphous "sweeping narrative." *See In re Cloudera,* 121 F.4th 1180, 1187-88 (9th Cir. 2024) (noting import of analyzing specific words used). Nor does it allow Plaintiff to manufacture falsity by re-writing the challenged statements. *See Okla. Firefighters Pension v. Xerox*, 300 F. Supp. 3d 551, 572 (S.D.N.Y. 2018). Yet that is exactly what Plaintiff attempts to do.

#### 1.   No "Sweeping Narrative" of "Competitive Success."

Plaintiff argues that Statements J and K conveyed a "sweeping narrative" of "competitive success." But the words of the challenged statements show otherwise. The only statements at issue are Sylvain's representations that Dexcom was "taking share" in the basal market based on "script data." *See* Dkt. 66. These are concrete statements about specific facts, not sweeping narratives about "competitive success." *See Xerox*, 300 F. Supp. 3d at 572 ("[T]he Court focuses on the statements themselves, not plaintiff's recasting of them.").

Plaintiff's "misimpression" argument fails for the same reasons. *See also Bondali v. YUM! Brands*, 620 F. App'x 483, 491 (6th Cir. 2015) (Courts "do not forego a statement-by-statement analysis of objective falsity in favor of analyzing the overall impression made by a set of statements."). Plaintiff's contention that Defendants "waived" this argument by addressing it in a footnote is meritless.[2] Dkt. 71 at 22. There is nothing to waive because the "misimpression" theory merely duplicates Plaintiff's other falsity arguments. And relying on other arguments to refute an invalid, duplicative theory is not a waiver, regardless of where that cross-

---

[2] Plaintiff is not well positioned to contend that arguments made in footnotes are waived when its Opposition contains *seventeen*.

reference appears. *Williams v. Woodford*, 384 F.3d 567, 587 n.5 (9th Cir. 2004) (holding argument "in a footnote" was not waived).

### 2. Plaintiff Fails to Rehabilitate the "New Patients" Construction the Court Rejected.

In another attempt to re-write the challenged statements, Plaintiff argues Sylvain's "share taking" comments referred to Dexcom's share of new prescriptions, not market share. Dkt. 71 at 16-17. This argument fails for multiple reasons.

*First*, the context of the statements—*i.e.*, the analyst questions that prompted them—confirms they addressed basal market share. While Plaintiff purports to summarize the analyst questions, Defendants quote them directly, and the quotations show that Plaintiff's characterization is wrong. Statement J was made in response to a question about "whether Dexcom was gaining meaningful traction in the Type 2 ***basal market***." ¶243. And Statement K responds directly to a question about "***market share*** within the basal population." ¶252.

*Second*, Plaintiff is wrong when it insists the Court must accept its construction of the challenged statements. Dkt. 71 at 24. The Court already concluded that Plaintiff's construction was not plausible. Dkt. 66 at 7-8. Plaintiff provides no reason to depart from that conclusion. The Opposition fails to identify where, in Statements J or K, Sylvain represents that Dexcom was leading Abbott in "new patients" or "new scripts." And while Plaintiff cites other dismissed statements about "new patients," Dkt. 71 at 24, none says that Dexcom was winning a majority of such patients.

*Third*, the analyst reports that Plaintiff cites as support for its "new patients" construction give no indication that investors shared Plaintiff's interpretation or believed Dexcom was winning a majority of new basal patients. Dkt. 71 at 25. One report notes "strong new patient starts"; it does not say, "more new patients than Abbott." *Id.* Others demonstrate that analysts understood the difference between "market share" and "new patient" numbers and interpreted Sylvain's "share taking" statements as addressing the former. *See id.* (citing ¶259); ¶259(b) (quoting analyst

discussing "***new patient starts***" as a concept distinct from "***market share***"); Dkt. 71 at 20 (citing analyst report that Dexcom was "taking ***basal market share***").[3]

***Fourth***, Plaintiff's "new patients" reframing is undermined by its "inconsistent" allegations in the prior complaint. *See* Dkt. 66 at 8. Plaintiff argues the Court must disregard its prior inconsistent allegations, Dkt. 71 at 17, but this argument has no merit. While Plaintiff is free to make inconsistent allegations, *id.* at 17 n.7, the Court is also free to consider those inconsistencies when deciding a motion to dismiss. *Jackson v. Loews Hotels*, 2019 WL 6721637, at *3 (C.D. Cal. July 24, 2019) (dismissing claim that was undermined by prior allegations).[4]

### B.    Plaintiff Cannot Plead Falsity Based on the Purported Admission that Abbott Was Winning 7 of 10 New Prescriptions.

Plaintiff argues that the SAC adequately pleads falsity by alleging that Abbott was winning 7 of 10 new basal prescriptions. This argument fails for two reasons.

***First***, the Court already rejected Plaintiff's "7 of 10" theory, based on simple math. Dkt. 66 at 6-7 ("Dexcom's share of the overall market would increase if it captured 30% of new patients (three of ten) each month, even though Abbott captured the remaining 70%"). Plaintiff offers no basis to revisit that holding.[5]

***Second***, Plaintiff's new hypothetical (Table 1) refutes, rather than supports, falsity.[6] *See* Dkt. 71 at 14. Even accepting Plaintiff's (**incorrect**) numbers, they show

---

[3] Further undercutting the possibility of any confusion is the fact that Abbott had publicly stated it was winning 7 of 10 new scripts. ¶187. Had analysts understood Sylvain's comments as contrary to Abbott's, that surely would have been flagged.

[4] Plaintiff cites *Askins v. U.S. Dep't of Homeland Sec.*, 899 F.3d 1035 (9th Cir. 2018) to argue that Defendants cannot refer to allegations in the FAC. But *Askins* does not support that argument and has no application here. In *Askins*, the district court refused to consider an amended complaint on "law of the case" grounds, and the Ninth Circuit reversed, finding plaintiffs were entitled to a decision on the merits. *Id.* at 1043. Defendants have not invoked "law of the case" nor sought to avoid a merits decision.

[5] Plaintiff's attack on the Court's market-share hypothetical table is misplaced. *See* Dkt. 71 at 13. As the Court already explained, this hypothetical was not meant to be factually accurate; it was meant to illustrate a principle of arithmetic that undercuts Plaintiff's theory of falsity. Dkt. 66 at 8.

[6] Plaintiff's Table 1 does not accurately reflect Dexcom's market share in basal during the period of January to April 2024—the actual data is shown in the portion of the MJOP that Plaintiff incorporated into the SAC. ¶246 (citing Dkt. 54-1 at 7).

that Dexcom was gaining market share. When the percentages are extended by an additional decimal point, it shows Dexcom's basal market share increasing from 28.80% in January 2024 to 28.94% in April 2024. Thus, Plaintiff's hypothetical (just like the MJOP hypothetical before) confirms that Dexcom was doing precisely what Sylvain said it was doing—taking share.

### C. Plaintiff's Subjective Assessment of Dexcom's Market-Share Gains Does Not Support Falsity.

Plaintiff next insists that the Court must accept its characterization of the market-share data and disregard the underlying numbers. That is not the law.

Plaintiff admits the SAC "relies" on market-share figures drawn from Defendants' MJOP—*i.e.,* those reflecting Dexcom's "basal market share between January and April 2024." Dkt. 71 at 18. That admission confirms the Court may consider the actual numbers Plaintiff cites rather than Plaintiff's mischaracterization of them. *See Park v. GoPro*, 2019 WL 1231175, at *11 (N.D. Cal. Mar. 15, 2019) (no falsity where "documents Plaintiffs rely on" contradict their allegations).

Plaintiff's only retort to the actual market-share numbers is its subjective opinion that the share gain is "not meaningful." Dkt. 71 at 20 n.9. But that argument asks the Court to impose a "meaningful" threshold for share-taking that neither the plain language of the challenged statements nor any cited authority supports. *Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. HP Inc.*, 2021 WL 4199273, at *4 (N.D. Cal. Sept. 15, 2021) (market share statements not false where "[m]arket shares did not decrease during the quarters when the alleged misstatements were made").

Notably, analysts viewed similar basis-point increases as meaningful. Dkt. 70-1 at 19 n.6. The Opposition does not explain why it matters that these analysts were "discussing revenue growth, not basal market share." Dkt. 71 at 21 n.9. If 200 basis points of revenue growth *over two years* is meaningful, as the cited analyst found it was, Dkt. 70-1 at 19 n.6, then surely the basal share growth of "50 basis points *month-over-month*," Dkt. 71 at 21 n.9, is also meaningful.

### D.     Plaintiff's Omission Theory Fails.

Plaintiff also argues that Statements J and K misleadingly omitted information about Dexcom's DME channel and sales force. Plaintiff is wrong.

***First***, the Court already rejected Plaintiff's attempt to sweep every topic that touches the basal market into an omission claim. *See* Dkt. 47 at 17 ("Plaintiff does not adequately explain how any deficiencies in the state of Dexcom's sales force would have rendered Sylvain's statement false or misleading. Notably, in the challenged statement above, Sylvain did not make any representations regarding PCPs."). That Plaintiff wanted more information on other topics does not give rise to a securities fraud claim. *Macquarie Infrastructure v. Moab Partners,* 601 U.S. 257, 264 (2024) (no "affirmative duty to disclose any and all material information").

***Second***, Plaintiff's own allegations show there was no omission because the facts were disclosed. Dkt. 70-1 at 21.[7] Plaintiff asks the Court to ignore these disclosures, claiming they serve only to support a truth-on-the-market defense. Dkt. 71 at 26-27. That is wrong. Defendants cite the very same documents Plaintiff itself used to allege falsity. Plaintiff cannot wield the documents as a sword and then cry foul when Defendants use them as a shield. *See In re AnaptysBio*, 2021 WL 4267413, at *5 (S.D. Cal. Sept. 20, 2021) ("Omission theories are not viable when the Defendants clearly disclosed material information to investors.").

### E.     Plaintiff's "Literal Truth" Argument Fails.

Plaintiff's "literal truth" argument duplicates its omission arguments and fails for the same reasons. Dkt. 71 at 23-24, 26-27. Moreover, Plaintiff fails to distinguish Defendants' cases holding that statements of accurate historical facts are not actionable misstatements under the securities laws. Dkt. 71 at 21 n.8. For example, Plaintiff acknowledges that in *Intuitive Surgical*, the court found "no actionable omission" where "the statements were factually accurate" yet the plaintiff

---

[7] Plaintiff does not oppose Defendants' request for judicial notice for the purpose of establishing what was disclosed to the market. *See* Dkt. 71 at 15 n.6.

"demanded a more fulsome . . . report." *Id.* (citing *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014)). That is precisely what is happening here. Plaintiff next suggests that *Maxeon Solar* is distinguishable because it addressed "accurately reported historical information, such as sales and profit data . . . 'rarely subject to misinterpretation.'" *Id.* (quoting *Menon v. Maxeon Solar Techs., Ltd.*, 2025 WL 1223559, at \*15 n.8 (N.D. Cal. 2025)). But that description applies squarely to the challenged statements here—they comprised "accurately reported historical information" about Dexcom's market share, based on script data. *See Maxeon Solar,* 2025 WL 1223559, at \*15 n.8. Those decisions control here.[8]

### F.  The Court Should Reject Plaintiff's Attempt to Plead Fraud by Hindsight.

In a last-ditch effort to avoid dismissal, the Opposition falls back on a claim of fraud by hindsight. Plaintiff argues that if Dexcom were truly gaining "meaningful share," in February and April, there "would have been no need to slash guidance" and disclose commercial difficulties in July. Dkt. 71 at 22. But Plaintiff fails to cite anything in those July disclosures (or anywhere else) that shows Defendants' earlier statements were false ***when made***. *In re Vantive Sec. Litig.*, 110 F.Supp.2d 1209, 1217 n.14 (N.D. Cal. 2000) (plaintiff must "point to particular contemporaneous facts that establish the falsity of the statement at the time it was made").

Similarly, Plaintiff cites analysts' reactions to the July disclosures as purported evidence of falsity. Dkt. 71 at 20 (citing ¶¶285-86). Notably, the only cited analyst

---

[8] Plaintiff's "literal truth" cases do not support its position. *Miller v. Thane Int'l*, is a § 12 case, "a virtually absolute liability provision," and it addressed an issuer that declined to list its shares on the NASDAQ despite touting the prospect of "greater liquidity" and "listing on the national exchange" in its prospectus. 519 F.3d 879, 886-88 (9th Cir. 2008). *Miller* might have been apposite if, at the time of the challenged statements, Dexcom had been on the cusp of pulling its product from the basal market completely. Plaintiff has alleged no such facts here. In *Lloyd v. CVB Fin. Corp.*, the defendant had represented that "as of December 31, 2009," there were "no serious doubts" about certain loans, while concealing that "serious doubts" about those loans had already arisen (and had arisen within days of December 31, 2009). 811 F.3d 1200, 1209 (9th Cir. 2016) Plaintiff has not alleged any comparable facts here.

commentary about basal market share is a July 2024 report observing that "DXCM is clearly losing the basal wars ***right now***"—*i.e.,* in July, months after the challenged statements were made. That is precisely the kind of after-the-fact observation that cannot sustain a securities fraud claim. *See Vantive*, 110 F.Supp.2d at 1217 n.14.

Finally, Plaintiff claims falsity is demonstrated by the July 2024 stock-drop. Dkt. 71 at 22-23. Not so. It is well established that "[a] plaintiff cannot show that a prior statement was false or misleading merely by pointing to the market reaction upon a subsequent disclosure of information." *In re Intrexon Corp. Sec. Litig*., 2017 WL 732952, at *4 (N.D. Cal. Feb. 24, 2017).

## III.   THE SAC FAILS TO PLEAD SCIENTER

### A.   Plaintiff Misstates the Effect of the Court's Prior Scienter Holding.

Plaintiff argues that the Court is bound by its prior ruling on scienter, which predated the MJOP.[9] Dkt. 71 at 28. Plaintiff is wrong. The prior ruling rested on the since-rejected theory that Sylvain's statements were contradicted by prescription data. Dkt. 47 at 35. The Court has since ruled that this data does not contradict Sylvain's statements. Dkt. 66 at 7-8. Accordingly, it cannot support scienter.

### B.   The IQVIA Data Does Not Support Scienter.

Plaintiff argues that Sylvain's access to IQVIA data supports scienter, but then turns around and claims Defendants' arguments about that same data are not scienter arguments at all. Dkt. 71 at 28-29. Plaintiff is wrong in every respect. Access to data can only support scienter if the data *contradicts* the public statements—and does so to an extent that falsity should have been "patently obvious." *See Zucco Partners, LLC v. Digimarc Corp*., 552 F.3d 981, 1001 (9th Cir. 2009). Here, the data does not contradict Sylvain's statements at all, much less to such a degree that any falsity would have been "patently obvious."

---

[9] *Evanston Police Pension Fund v. McKesson Corp.*, 411 F.Supp.3d 580, 607 (N.D. Cal. 2019), does not support Plaintiff's argument. It states that a disagreement with the court's conclusions "does not warrant a motion for reconsideration." Dkt. 71 at 28 n.10. But this is not a motion for reconsideration—it is a motion to dismiss directed to a new complaint.

### C.    Plaintiff's Other Scienter Arguments Fail.

Plaintiff's remaining allegations fail to support a strong inference of scienter.

**DME Data**. Plaintiff does not dispute that Defendants did not have access to data about performance in the DME channel until "the end of May." This precludes any inference that Sylvain knew of DME share losses when making Statements J and K in February and April, thereby foreclosing any DME-based scienter theory. *Police Ret. Sys. of St. Louis v. Intuitive Surgical*, 2012 WL 1868874, at *19 (N.D. Cal. 2012) (no scienter based on inadequate access to data allegations).

**Temporal Proximity**. Plaintiff fails to distinguish Defendants' authority showing that the three-month gap between the challenged statements and later disclosures is too attenuated to support scienter. Dkt. 71 at 30; Dkt. 70-1 at 23.[10]

**Purported Admissions**. The Opposition does not respond to Defendants' authority that the purported "admissions"—*i.e.*, post-class period statements about the sales force and DME—do not support scienter. Dkt. 71 at 30; Dkt. 70-1 at 23-24.

**Motive**. Plaintiff contends that "[d]efendants sold millions of dollars while they had access to script data reflecting competitive weakness" and (in a footnote) dismisses Defendants' Rule 10b5-1 trading plans as "an affirmative defense." Dkt. 71 at 31 & n.13. But the SAC itself shows that Sylvain routinely sold stock before the challenged statements were made, and that those sales were executed pursuant to 10b5-1 plans adopted before either challenged statement. ¶¶ 332-334. Those admissions undermine any inference of fraud. *See Zucco*, 552 F.3d at 1005.[11]

**Allegations Not Linked to Statements J and K**. Plaintiff does not respond to

---

[10] Plaintiff's reliance on *Reese* is misplaced. That case acknowledged that a gap of "three to six months" ordinarily would not establish scienter, but found it could in that instance "given the relatively constant, long-term nature of the [disclosed] information"—information about gradual corrosion. *Reese v. Malone*, 747 F.3d 557, 575 (9th Cir. 2014). Unlike in *Reese*, the information about shifting market conditions that Dexcom disclosed in July was not "long-term" or "constant."

[11] Moreover, Plaintiff does not meaningfully respond to Defendants' argument that executive compensation "can hardly be the basis on which an allegation of fraud is predicated." *M & M Hart Living Tr. v. Glob. Eagle Ent.*, 2017 WL 5635424, at *13 (C.D. Cal. Aug. 20, 2017); *Zucco*, 552 F.3d at 1005.

Defendants' arguments about the SAC's "additional" scienter allegations that are not linked to Statements J and K. Dkt. 71 at 30-31; Dkt. 70-1 at 25-26. In the Motion to Strike Opposition, Plaintiff concedes these are not in play. *See* Dkt. 72 at 8 n.3.

## IV.   THE 10(B) CLAIM AGAINST SAYER AND THE 10(B) AND 20(A) CLAIMS AGAINST LAWVER SHOULD BE DISMISSED

Plaintiff does not dispute that the Section 10(b) claim against Sayer and Lawver must be dismissed. Dkt. 71 at 31-32; Dkt. 70-1 at 26.

As to Section 20(a), Plaintiff argues Lawver is liable because the SAC alleges she "exercised operational command over the Company's worldwide commercial organization." Dkt. 71 at 32. But authority over commercial strategy does not establish control over the CFO's statements during earnings calls Lawver did not attend. *Id.* at 26-27; *City of Royal Oak Ret. Sys. v. Juniper Networks*, 880 F. Supp. 2d 1045, 1071 (N.D. Cal. 2012) (holding executive had no control over statements by other defendants on calls and dismissing § 20(a) claim accordingly).

Plaintiff waives away Defendants' control-person cases as "inapposite." Dkt. 71 at 32 n.17. But Plaintiff does not explain why the cases Defendants cite—*Coinstar, Energy Recovery, Middlesex*, and *Royal Oak*—are inapplicable to the facts alleged. Nor could it. In *Energy Recovery*, the court declined to find §20(a) control as to an officer who "did not speak on the Company's behalf during earnings conference calls." *In re Energy Recovery Sec. Litig.*, 2016 WL 324150, at *26 (N.D. Cal. 2016). Plaintiff does not dispute that Lawver did not attend the earnings calls at issue. The Section 20(a) claim against Lawver fails on this basis alone.

## V.   CONCLUSION

The SAC should be dismissed with prejudice. Plaintiff does not request leave to amend, and regardless, leave to amend should be denied because Plaintiff "points to no additional facts that would cure" the SAC's pleading defects. *Silveria v. McDonough*, 2022 WL 187839, at *2 (9th Cir. Jan. 20, 2022).

Dated:        March 20, 2026                COOLEY LLP


                                            By: */s/ Koji F. Fukumura*
                                                Koji F. Fukumura

                                            *Attorneys for Defendants Dexcom, Inc.,
                                            Kevin Sayer, Jereme Sylvain, and Teri
                                            Lawver*

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

**REPLY ISO DEFS' MOTION TO DISMISS SAC
CASE NO. 24-CV-01485-RSH-VET**