UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

IN RE: DEXCOM, INC. CLASS ACTION SECURITIES LITIGATION

Case No.: 24-cv-1485-RSH-VET

**ORDER ON DEFENDANTS' MOTION TO STRIKE AND MOTION TO DISMISS**

[ECF Nos. 69, 70]

Before the Court are a motion to strike and a motion to dismiss Lead Plaintiff's Second Amended Consolidated Complaint ("SACC"), filed by defendants Dexcom Inc. ("Dexcom"), Kevin Sayer, Jereme Sylvain, and Teri Lawver. ECF Nos. 69, 70. Pursuant to Local Civil Rule 7.1(d)(1), the Court finds the motions presented appropriate for resolution without oral argument. For the reasons below, the Court denies Defendants' motion to strike and grants Defendants' motion to dismiss.

## I. BACKGROUND

Lead Plaintiff National Elevator Industry Pension Fund brings this consolidated putative class action against Dexcom and its current and former senior executives—defendants Sayer (former Chief Executive Officer), Sylvain (Chief Financial Officer) and

Lawver (former Chief Commercial Officer)—on behalf of all persons or entities who purchased or otherwise acquired Dexcom securities between April 28, 2023 and July 25, 2024 ("Class Period").

**A. Factual Background**

The facts of this case are set forth in the Court's September 9, 2025 order on Defendants' motion to dismiss Plaintiff's Consolidated Amended Complaint, which the Court incorporates by reference. ECF No. 47 at 1–4. For completeness, the Court summarizes Plaintiff's allegations as set forth in the SACC below.

Dexcom is a San Diego–based medical device company that designs, develops, and sells continuous glucose monitoring devices ("CGMs"). SACC at ¶¶ 3, 23. Dexcom and its competitor, Abbott Laboratories ("Abbott"), are the principal players in the CGM market. *Id.* at ¶ 5. According to the SACC, Dexcom has traditionally focused on patients with Type 1 diabetes and insulin-intensive Type 2 diabetes, whereas Abbott has held a substantial advantage among Type 2 patients using basal insulin stemming from, amongst other things, its relationship with primary care physicians and its lower out-of-pocket pricing. *Id.* at ¶¶ 5–7, 42, 46–50

In April 2023, the Centers for Medicare & Medicaid Services expanded Medicare coverage for CGMs to include Type 2 basal-insulin patients. *Id.* at ¶ 51. Dexcom promoted the expansion as an opportunity to gain market share in the Type 2 Basal market, citing its sales force and relationships with durable medical equipment suppliers. *Id.* at ¶¶ 52–58. Dexcom's ability to compete with Abbott, however, was allegedly hindered by its lack of established relationships with primary care physicians, absence of a comparable rebate program, and transition to pharmacy fulfillment. *Id.* at ¶¶ 48, 55.

After allegedly losing ground to Abbott, Dexcom expanded and reorganized its sales force. *Id.* ¶¶ 59–62. Plaintiff alleges, however, that Defendants continued to present an unduly favorable picture of Dexcom's performance in the Type 2 Basal market. In particular, defendant Sylvain represented that Dexcom was "taking share" even though contemporaneous IQVIA script-level data showed that Abbott was winning approximately

seven out of ten new basal prescriptions and held approximately 70% of the total basal market in both January and April 2024. *Id.* ¶¶ 243–46, 252–55. Plaintiff further alleges that Dexcom was losing share in the DME channel and lagging behind Abbott among primary care physician prescribers. *Id.* ¶¶ 247–48, 256–57.

In April 2024, Dexcom raised the midpoint of its revenue guidance. *Id.* ¶¶ 70–74. However, only three months later, Dexcom reduced its full-year revenue guidance by $300 million, and its stock price fell by more than 40%. *Id.* ¶¶ 16, 70–82.

### B. Procedural Background

This consolidated action combines three securities class actions against Defendants: *Alonzo v. Dexcom Inc.*, 24cv1485-RSH-VET, *Oakland County Employees' Retirement Systems v. Dexcom Inc.*, 24cv1804-RSH-VET and *Carnes v. Dexcom Inc.*, 24cv1809-RSH-VET ("Related Actions").

#### ***1. Consolidated Complaint***

On December 13, 2024, the Court consolidated the Related Actions and appointed the National Elevator Industry Pension Fund as Lead Plaintiff and Robbins Geller LLP as Lead Counsel. ECF No. 19 at 15–16. On January 27, 2025, pursuant to the Court's direction, Plaintiff filed a Consolidated Complaint. ECF No. 27. Plaintiff challenged fourteen statements made by the Individual Defendants between April 27, 2023 and June 5, 2024, alleging that they violated Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5. *Id.* at ¶¶ 67–185.

On May 14, 2025, the Court granted Defendants' motion to dismiss with leave to amend, concluding that the Consolidated Complaint failed to clearly identify the statements (or portions of statements) Plaintiff alleged to be false or misleading. *See* ECF No. 36.

#### ***2. Amended Consolidated Complaint***

On May 28, 2025, Plaintiff filed an Amended Consolidated Complaint. ECF No. 37. Defendants filed a motion to dismiss Plaintiff's Amended Consolidated Complaint on June 11, 2025. ECF No. 39. On September 9, 2025, the Court granted in part and denied in part Defendants' motion to dismiss. ECF No. 47. Specifically, the Court concluded Plaintiff

had adequately pleaded falsity and scienter as to portions of two statements—Statements J and K—made by Sylvain representing that Dexcom was "taking share" based on "script data." *Id.* at 26–29, 35. The Court dismissed without leave to amend Plaintiff's claims based on the remaining challenged statements. *Id.* at 36–37.

On October 10, 2025, Defendants moved for judgment on the pleadings as to Statements J and K. ECF No. 54. On January 7, 2026, the Court granted the motion with leave to amend, concluding that Abbott's alleged capture of seven out of ten new prescriptions did not necessarily contradict Sylvain's statements that Dexcom was "taking share" because Dexcom could have increased its overall market share while capturing only a minority of new prescriptions. ECF No. 66 at 5–10. The Court therefore held that Plaintiff had not sufficiently alleged Statements J and K were false or misleading when made and permitted amendment only as to those statements. *Id.* at 10.

#### ***3. Second Amended Consolidated Complaint***

On February 6, 2026, Plaintiff filed its SACC—the operative pleading in this case. ECF No. 68. On February 20, 2026, Defendants filed a motion to strike and, separately, a motion to dismiss the SACC. ECF Nos. 69, 70. Defendants opposed both motions and Plaintiff filed replies. ECF Nos. 71–74.

## **II. LEGAL STANDARD**

### **A. Section 10(b) and Rule 10b-5**

Section 10(b) of the Exchange Act makes it unlawful:

> To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).

///

///

///

One such rule promulgated under the Exchange Act is Rule 10b-5, which declares it unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5; *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989–90 (9th Cir. 2009).

"In a typical § 10(b) private action based on material misrepresentations or omissions, a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Alphabet Sec. Litig., R.I. v. Alphabet, Inc.*, 1 F.4th 687, 699 (9th Cir. 2021) (internal quotation marks omitted); *Curry v. Yelp Inc.*, 875 F.3d 1219, 1224 (9th Cir. 2017).

**B. Pleading Requirements**

Securities fraud complaints "face heightened pleading requirements." *Okla. Firefighters Pension & Ret. Sys. v. Nektar Therapeutics (In re Nektar Therapeutics Sec. Litig.)*, 34 F.4th 828, 835 (9th Cir. 2022). At the pleading stage, a complaint stating claims "under § 10(b) and Rule 10b-5 must satisfy the dual pleading requisites of Federal Rule of Civil Procedure 9(b) and the [Private Securities Litigation Reform Act ("PSLRA")]." *Nat'l Elevator Indus. Pension Fund v. VeriFone Holdings, Inc. (In re VeriFone Holdings, Inc. Sec. Litig.)*, 704 F.3d 694, 701 (9th Cir. 2012). "These requirements present no small hurdle for the securities fraud plaintiff." *Id.*; *see Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 765 (9th Cir. 2023) ("[T]he PSLRA imposes formidable pleading

requirements to properly state a claim and avoid dismissal under Rule 12(b)(6).") (internal quotation marks omitted).

## III. ANALYSIS

### A. Challenged Statements

As noted above, following the Court's September 9, 2025, and January 7, 2026 orders, two statements remain at issue in this case: Statements J and K, both made by defendant Sylvain.

Statement J was made on February 8, 2024 during a conference call discussing Dexcom's Q4 2023 results:

> [Analyst]: Looking at the domestic performance, there's been a clear acceleration in the back half of '23 on a 2-year stacked basis. And I'm wondering specifically if that's just basal that's helping there. It looks like it's as much as 200, maybe 250 basis points of the acceleration. Is that the primary contributor to the domestic acceleration? What should we think about in terms of basal contribution to the topline this year? And are we inflecting right now as far as basal adoption goes with CGM here in the States?
>
> [Sylvain]: Yes. It's a good question. Let me maybe just give some color as to how we're thinking about the guidance. As you see the performance in the back half of the year, a lot of that has to do with being the most accurate sensor, launching with the G7 form factor and then, of course, having the basal coverage there. And so when you think about it, and you can see the share taking when you look at the script data, we are taking share. And having the sensor – the most advanced sensor on the market is the driver there. So that's taking share.
>
> Now within those spaces, basal is a contributor, no question. As that category expands and we take share within that category, that does contribute to the overall numbers. And so you are right, basal is a contributor, but it has as much to do with us taking share as it does with category expansion. So think about both of those as contributors.
>
> As you think about 2024, we've talked a little bit about the adoption rate, basal in total adopting in this back half of the year around 9% to 10% per year on a per annum basis. The guide assumes about 8% there. And so I think you can assume that was the case. Our long-range plan

> was more like 6% to 7% per year. So we are seeing basal going faster than what was in our long-range plan. And what's great about that is as we continue to take share and the category grows a little faster than expected, that will help contribute over the longer haul.

SACC at ¶¶ 243–45.

Statement K was made on April 25, 2024 during a conference call discussing Dexcom's Q1 2024 results:

> [Analyst]: So wanted to ask on basal, just any visibility you can give on how that's been scaling? Obviously, a record new start quarter this quarter. I would assume basal is contributing nicely to that. But what do the sequential patterns look like the last few quarters? Is it still sequentially growing at a pretty healthy rate, I'd assume, but any color you can provide there?
>
> And also, there's been some debate, obviously, on market share within the basal population here in the U.S. Just would love kind of any insight you can provide on that front as well. Thanks.
>
> [Sylvain]: Yeah. So I can take that one. Thanks, Jeff. I think when we talked about what we expected this year, we really talked about it in the context of basal adoption across the entire population. And we talked about exiting the year right around that 15% adoption across the basal population in the US and the year moving over the course of the year to 23%. So about 8 points of penetration.
>
> So far through the first quarter, things are going as we expected. Record new patients, I think, helps enforce that. And you are correct, a good chunk of our new patients are coming through that basal channel, and we continue to see really well performance in that category. So qualitatively, the things we talked about, the excitement in that channel, those still remain.
>
> In terms of share taking and how we look at that category, we get script data, we look at script data based on pathology. The debate–there's no debate internally to us. We know we're taking share, and we see that data. And I think a lot of you guys see that data. So for what it's worth, that data is out there, you can see the scripts continuing to come our way.

> For the . . . purpose we talked about, when we have coverage and when we compete head-to-head, we've typically won. So I think we maybe disagree with some comments out there, but I think the data is clear. When you look at the script data, I think it will continue to demonstrate where this is going over time. Hope that helps.

*Id.* at ¶¶ 252–53.

**B. Theories of Falsity**

Plaintiff advances four theories as to why the challenged portions of Statements J and K—Sylvain's representations that Dexcom was "taking share" based on "script data"—were false or misleading: (1) contemporaneous IQVIA data showed that Abbott was winning approximately seven of every ten new basal prescriptions; (2) the same data showed that Abbott continued to hold approximately 70% of the total basal market, compared with Dexcom's approximately 30% share; (3) Dexcom was losing market share in the DME channel, which was critical to serving Medicare basal patients; and (4) Dexcom was losing to Abbott among primary care physician prescribers, who treated most Type 2 basal patients. *Id.* ¶¶ 245–48, 254–57. According to Plaintiff, Defendants' failure to disclose these adverse facts rendered Sylvain's statements materially misleading because they created the impression that Dexcom was successfully competing with Abbott in the newly covered Type 2 Basal market. *Id.* at ¶¶ 249, 258.

***1. False or Misleading—Standards***

"In the securities fraud context, statements and omissions are actionably false or misleading if they directly contradict what the defendant knew at that time, or create an impression of a state of affairs that differs in a material way from the one that actually exists[.]" *Amalgamated Bank v. Facebook, Inc. (In re Facebook, Inc. Sec. Litig.)*, 84 F.4th 844, 858 (9th Cir. 2023) (internal quotation marks and citations omitted). "Even if a statement is not false, it may be misleading if it omits material information." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1008–09 (9th Cir. 2018). "When defendants tout positive information to the market, they must do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive

information." *Glazer,* 63 F.4th at 765. Nevertheless, "[Section] 10(b) and Rule 10b-5(b) do not create an affirmative duty to disclose any and all material information." *Matrixx*, 563 U.S. at 44. "Disclosure is required under these provisions only when necessary to make . . . statements made, in the light of the circumstances under which they were made, not misleading." *Id.* at 44–45

"The PSLRA has exacting requirements for pleading 'falsity.'" *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1070 (9th Cir. 2008). Under the PLSRA, a plaintiff's complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). "By requiring specificity, [the PLSRA] prevents a plaintiff from skirting dismissal by filing a complaint laden with vague allegations of deception unaccompanied by a particularized explanation stating *why* the defendant's alleged statements or omissions are deceitful." *Metzler*, 540 F.3d at 1061.

***2. Application to Statements J and K***

The Court turns to Plaintiff's theories of falsity. Plaintiff first contends that contemporaneous IQVIA data and Dexcom's performance in the DME distribution and primary care physician prescriber segments contradicted Sylvain's representations that Dexcom was "taking share. SACC at ¶¶ 245–48, 254–57. Defendants respond that the Court already rejected the central premise underlying these theories in its January 7, 2026 order. ECF No. 70-1 at 17–18. The Court agrees with Defendants.

As the Court previously explained in its January 7, 2026 order, Abbott's capture of seven out of ten new basal prescriptions does not necessarily contradict Sylvain's representation that Dexcom was "taking share" based on "script data." Overall market share and new prescriptions are different metrics: a company with a smaller starting position may increase its overall market share even while capturing fewer new customers than its competitor. ECF No. 66 at 6–9. The same reasoning applies to Plaintiff's remaining

theories. A company may increase its overall market share while losing share in a particular distribution channel or underperforming amongst a particular category of prescribers.

The Parties' own hypotheticals illustrate this distinction. Although the Parties dispute the magnitude of Dexcom's increase in total basal market share between January and April 2024, both Parties' hypothetical calculations reflect an increase. Under Plaintiff's hypothetical, Dexcom's share increased from 28.8% to 28.9%, whereas Defendants calculate that it increased from 28.8% to 30.2%. *Compare* ECF No. 54-1 at 13 *with* 71 at 14.[1] Even using Plaintiff's more conservative calculation, Dexcom gained market share—albeit in small measure—even while Abbott retained a substantial majority of the market and captured most new prescriptions.

Plaintiff alternatively contends that, even if literally true, Sylvain's representations in Statements J and K were misleading "half-truths" because he failed to disclose the four adverse facts identified above. ECF No. 71 at 23–24. Plaintiff characterizes the resulting impression Sylvain's statements made in the absence of this information in various ways: that Sylvain's statement gave the impression that Dexcom was "gaining competitive share in the newly-covered basal market" or, even more broadly, that Sylvain was conveying a "sweeping narrative" of "competitive success." SACC ¶¶ 243, 246; ECF No. 71 at 22.

This argument is unpersuasive. At its core, Plaintiff argues Defendants should have provided "a more fulsome report." *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014). But "[t]he securities laws do not demand such reporting." *Id.; see Matrixx*, 563 U.S. at 44. Instead, "Rule 10b-5 . . . prohibit[s] only misleading and untrue statements, not statements that are incomplete." *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002). As the Ninth Circuit has explained, "[o]ften, a statement will not mislead even if it is incomplete or does not include all relevant facts." *Id.* Instead, "[t]o be actionable under the securities laws, an omission must be misleading; in other

---

[1] The Court takes no position on the accuracy of either calculation or the assumptions underlying them.

words it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *Id; see City of Hallandale Beach Police v. LifeLock, Inc. (In re Lifelock Sec. Litig.)*, 690 F. App'x 947, 952 (9th Cir. 2017) ("Plaintiffs focus generically on what they say is missing from [defendant]'s disclosures and argue that if you are going to say something, you must say everything, that your discussion must be 'complete and accurate.' This assertion is not entirely accurate.").

Plaintiff has not adequately alleged how the above omissions create such an impression here. To the extent Plaintiff alleges Sylvain was referencing Dexcom's share of the overall basal market, the alleged impression was accurate: under both Parties' calculations, Dexcom's share increased. While Abbott's continuing lead, its capture of most new prescriptions, and Dexcom's alleged difficulties in particular channels and prescriber segments may have provided additional context, those facts did not negate Sylvain's narrower representation that Dexcom's overall basal market share was increasing. *See Macomb Cnty. Emps.' Ret. Sys. v. Align Tech., Inc.*, 39 F.4th 1092, 1100 (9th Cir. 2022) (rejecting the argument that the disclosure of positive facts imposed a duty to disclose negative facts where the challenged statements did not create a false impression); *Menon v. Maxeon Solar Techs., Ltd.*, No. 24-CV-03869-EMC, 2025 WL 1223559, at *15 (N.D. Cal. Apr. 28, 2025) ("[A]ccurately reported historical information, such as sales and profit data, is not actionable because it is rarely subject to misinterpretation[.]") (internal quotation marks omitted); *Elec. Workers Pension Fund, Loc. 103, I.B.E.W. v. HP Inc.*, No. 20-CV-01260-SI, 2021 WL 4199273, at *4 (N.D. Cal. Sept. 15, 2021) (holding that the plaintiff failed to plead falsity of statements that market share increased where the relevant market shares did not decrease).

To the extent Plaintiff instead construes "taking share" as conveying some particular degree of competitive success beyond an increase in overall market share, the SACC does not plead facts supporting this alternative meaning. Sylvain did not quantify Dexcom's market share gain, represent that Dexcom was winning most new prescriptions, or claim that Dexcom had overtaken Abbott or materially narrowed its lead. He also did not state

that Dexcom was gaining share in every distribution channel or among every category of prescribers. "Where, as here, a plaintiff claims that the words used in a statement have some special or nuanced meaning that differs from what the literal words suggest, the plaintiff must plead facts that will support this crucial premise in order to satisfy the PSLRA's requirement that a private securities plaintiff adequately plead the *reason or reasons* why [a] statement is misleading." *See Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1193–94 (9th Cir. 2021) (internal quotation marks omitted).

Even were the Court to accept Plaintiff's broader interpretation of Sylvain's statements, Plaintiff does not define an objective benchmark against which to determine whether the alleged representation of "competitive success" was false or misleading. The SACC does not allege what share of new prescriptions Dexcom needed to win, how substantially it needed to narrow Abbott's lead, or what increase in market share would qualify as "competitive success"—or explain why a reasonable investor would understand Sylvain's use of "taking share" to convey such a threshold. Plaintiff's newly alleged theory therefore appears to reframe an objectively verifiable statement—that Dexcom's overall market share was increasing—as a subjective assessment of Dexcom's performance. Plaintiff's broader interpretation does not therefore support an actionable theory of falsity. *See Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017) ("To be misleading, a statement must be capable of objective verification.") (internal quotation marks omitted).

For these reasons, the Court concludes Plaintiff's SACC does not sufficiently allege how Statements J and K were false or misleading when made.

## IV. LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a)(2), a court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). This liberal policy, however, is subject to limitations. *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011). In particular, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Id.* (quoting

*Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

Here, the Court has already afforded Plaintiff two opportunities to amend. On May 14, 2025, the Court dismissed the Consolidated Complaint with leave to amend, because it failed to clearly identify the challenged statements and explain why they were false or misleading. ECF No. 36 at 9–10. After Plaintiff amended its pleading, the Court granted judgment on the pleadings as to Statements J and K with leave to amend, because the Amended Consolidated Complaint did not sufficiently allege how those statements were false or misleading when made. ECF No. 66 at 6–10.

The Court finds further amendment would be futile and **DENIES** Plaintiff leave to amend. *See Zucco*, 552 F.3d at 1007 (holding plaintiff's failure to correct deficiencies in its second amended complaint was a "strong indication" that plaintiff had "no additional facts to plead") (internal quotation marks omitted).

## V. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' motion to dismiss as to Statements J and K **WITHOUT LEAVE TO AMEND**. In light of the Court's ruling above, the Court **DENIES** Defendant's motion to strike Plaintiff's SACC as moot. The Clerk of Court is directed to close the case.

**IT IS SO ORDERED.**

Dated: August 27, 2026

Hon. Robert S. Huie
United States District Judge